1  T. Mark Smith, Esq. (SBN 162370)
   CLIFFORD & BROWN
2  A PROFESSIONAL CORPORATION
   661-322-6023
3  Fax: 661-322-3508
   1430 Truxtun Avenue, Suite 900
4  Bakersfield, California 93301
   msmith@clifford-brownlaw.com
5

6  Attorneys for Defendant
   CROP PRODUCTION SERVICES, INC.
7

8

9              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF CALIFORNIA
10                  FRESNO DIVISION

11

12  OILDALE MUTUAL WATER COMPANY,      )    No.  1:13-cv-02054-AWI-JLT
                                       )
13            Plaintiff,               )
                                       )
14  vs.                                )    DEFENDANT CPS' ANSWER TO
                                       )    PLAINTIFF'S COMPLAINT;
15  CROP PRODUCTION SERVICES, INC.,    )    DEMAND FOR TRIAL BY JURY
    Individually and as Successor in Interest to )
16  UAP DISTRIBUTION, INC. (Individually )
    and Doing Business As UNITED AGRI  )
17  PRODUCTS WEST, UAP WEST, and       )
    UNITED AGRI PRODUCTS, and as       )
18  Successor in Interest to UNITED AGRI )
    PRODUCTS FINANCIAL SERVICES,       )
19  INC.); and DOES 1 through 300,     )
    INCLUSIVE,                         )
20                                     )
              Defendants.              )
21  _____ )

22

23        **COMES NOW** Defendant Crop Production Services, Inc. (including UAP Distribution,

   Inc., United Agri Products West, UAP West, United Agri Products, United Agri Products
24

25  Financial Services, Inc.) (Collectively "CPS")[1], by and through their counsel, and for their

   Answer and Affirmative Defenses state as follows:
26

27  _____
    [1] CPS admits at the time of the filing of the Complaint, no CPS-affiliated entity known as UAP Distribution, Inc. existed.  CPS
28  admits UAP Distribution, Inc. was a predecessor of CPS.  CPS admits "United Agri Products West", "UAP West" and "United
    Agri Products" were mere trade names for predecessors of CPS.  CPS admits at the time of the filing of the Complaint, no CPS-
    affiliated entity known as United Agri Products Financial Services, Inc. existed.  CPS admits United Agri Products Financial

1   Throughout the Complaint the Plaintiff makes collective allegations as to "Defendants."
2   CPS answers on its own behalf and on behalf of all of the above named entities collectively
3   referred to as "CPS."   CPS has no knowledge of the unnamed "Doe" defendants, including
4   trucking and railroad defendants or any other unnamed defendants, and nothing in CPS's answer
5   or affirmative defenses should be construed as a denial or admission of unnamed parties' alleged
6   actions or omissions, or of CPS's knowledge of those parties' alleged actions or omissions.   CPS
7   reserves the right to amend its Answer and Affirmative Defenses as more information through
8   investigation, discovery, or the evidence of this case comes to light.

9                                                    **ANSWER**

10      1.      Plaintiff OILDALE MUTUAL WATER COMPANY ("Plaintiff") owns and
11   operates a public water system that provides drinking water to residents and businesses in and
12   around the unincorporated community of Oildale, California, which lies to the north of the City
13   of Bakersfield in Kern County, California.  Plaintiff seeks to recover by this action the substantial
14   costs necessary to protect public health and restore or replace a certain water supply well owned
15   and operated by Plaintiff, known as Well 26, which has become contaminated by dangerously
16   high levels of the toxic chemical nitrate ($NO_3$).

17   **ANSWER:**   CPS admits that Plaintiff filed suit and that the Complaint seeks to recover alleged
18   damages and other relief, to which CPS denies Plaintiff is entitled; CPS denies all allegations of
     Paragraph 1 not specifically admitted herein.

19      2.      Nitrate is an acutely toxic substance in drinking water supplies.   When consumed
20   by humans at levels in excess of regulatory standards, nitrate can produce a condition known as
21   methemoglobinemia, or "blue baby syndrome," which poses a significant threat to infants and
22   pregnant women.

23   **ANSWER:**   CPS admits that under certain circumstances nitrates can be toxic to humans, the
     specifics of which are complex and should be the subject of expert testimony.  However, CPS
24   denies this is relevant to this matter.  CPS denies all allegations of Paragraph 2 not specifically
     admitted herein.
25

26

27   Services, Inc. was a predecessor of CPS.  An existing CPS-affiliated entity has a name that is similar to one of these three trade
     names, United Agri Products, Inc.  This entity has never done business under any of these three trade names.  United Agri Products,
28   Inc. is organized under the laws of Delaware with its principal place of business in Colorado.

3.     Because nitrate poses a significant threat to public health, the State of California has established a Maximum Contaminant Level — which is the maximum concentration of a contaminant permitted in drinking water supplied to the public — of 45 milligrams per liter ("mg/L") for nitrate.

**ANSWER:**    CPS admits that the Maximum Contaminant Level for nitrate in drinking water supplied to the public has been described as 45 milligrams per liter in certain guidance or regulatory materials of one or more state agencies. CPS denies all allegations of Paragraph 3 not specifically admitted herein.

4.     Nitrate is an ingredient, component, and/or constituent in, and/or a degradation byproduct of, certain fertilizers and other agricultural chemical products.  Nitrate, products containing nitrate, and/or substances that break down into nitrate (collectively referred to hereinafter as "Nitrogen Materials") have been leaked, spilled, discharged, disposed of, and/or otherwise released by Defendants in the vicinity of Plaintiff's Well 26.    The nitrate contamination caused by Defendants has migrated through the subsurface and into groundwater, and now contaminates the water pumped by Plaintiff's Well 26.

**ANSWER:**    CPS admits that nitrate is an ingredient in certain fertilizers and agricultural products; CPS denies all allegations of Paragraph 4 not specifically admitted herein.

5.     The Defendants in this lawsuit are manufacturers, formulators, mixers, packagers, handlers, storers, distributors, and/or transporters of Nitrogen Materials, who: (i) did and/or do own and/or operate a fertilizer manufacturing and/or storage terminal at 2010 Norris Road in Bakersfield, California, which is located directly adjacent to Plaintiff's Well 26, and/or (ii) were and/or are otherwise involved in the handling of Nitrogen Materials at and/or in the immediate vicinity of that facility.  Defendants leaked, spilled, discharged, disposed of, and/or otherwise released Nitrogen Materials at or in the immediate vicinity of that facility and, by such negligent, careless, reckless, intentional, and/or ultrahazardous acts and omissions, Defendants have caused the nitrate contamination of Plaintiff's Well 26 and water supply.  Defendants acts and omissions were done knowingly as, at all times relevant to Plaintiff's claims herein, Defendants knew or reasonably should have known that the Nitrogen Materials they released into the environment would break down into nitrate, reach groundwater, pollute drinking water supplies, render those

1    supplies unusable and unsafe, and threaten the public health and welfare — as has occurred with

2    respect to Plaintiff's Well 26 and water supply.

3    **ANSWER:**   CPS admits that it manufactures, formulates, mixes, packages, handles, stores,
     distributes, and/or transports certain Nitrogen Materials at one or more of its facilities around the
4    country, that it does own and/or operate a facility at 2010 Norris Road in the unincorporated area
     of Bakersfield, California, and that CPS is involved in the handling of certain Nitrogen Materials
5    at the facility at 2010 Norris Road, in the unincorporated area of Bakersfield, California.   CPS
     admits that there was evidence of some limited historic materials released at the facility. CPS
6    denies all allegations of Paragraph 5 not specifically admitted herein.

7        6.      Due to Defendants' acts and omissions, Plaintiff's Well 26 has become

8    contaminated with nitrate at levels that violate California's Maximum Contaminant Level.  As a

9    result, Plaintiff has been unable to pump the well into its distribution system since November

10   2010, thereby forcing Plaintiff to purchase costly replacement water and suffer other

11   consequential damages related to its inability to use Well 26, which, due to its location, is of

12   paramount importance to Plaintiff s ability to deliver water and maintain pressure in the

13   northwest section of its service area.

14   **ANSWER:**   CPS denies the allegations in Paragraph 6.

15       7.      Plaintiff files this lawsuit to recover compensatory and punitive damages,

16   injunctive relief, and all other available damages and relief, to ensure: (i) that nitrate is removed

17   from water pumped from Well 26 or that a clean and equivalent replacement water supply is

18   secured; (ii) the protection of public health and the environment; and (iii) that the responsible

19   parties (i.e. Defendants) bear the attendant costs and burdens, rather than Plaintiff and its

20   ratepayers.

21   **ANSWER:**   CPS admits that Plaintiff filed suit and that the Complaint seeks to recover alleged
     damages and other relief, to which CPS denies Plaintiff is entitled; CPS denies all allegations of
22   Paragraph 7 not specifically admitted herein.

23
         8.      Plaintiff is a non-profit mutual water company formed and existing under the laws
24
     of the State of California, with its principal place of business in Oildale, California.  At all times
25
     relevant to this action, Plaintiff has owned and operated a public water system that includes,
26
     among other elements, drinking water production wells that draw from one or more groundwater
27
     aquifers, well sites, associated pumping, storage, treatment, and distribution facilities and
28

1  equipment, all of which will be referred to collectively in this Complaint as Plaintiff's "Water

2  System." Plaintiff's Water System includes the public water supply well known as Well 26 and

3  the real property on which Well 26 is located. Plaintiff provides potable water through its Water

4  System to more than 8,000 residential and commercial service connections, serving a population

5  of approximately 26,000 people in and around Oildale, California. Among other things,

6  Plaintiff's Water System includes the right of Plaintiff to extract and use groundwater from its

7  wells to supply drinking water to the public. At all times relevant to this action, Plaintiff has had

8  a significant property interest in the waters it extracts and uses from its wells, including the water

9  drawn from Well 26. The past, present and continuing nitrate contamination of such waters

10  constitutes physical injury for which Plaintiff is entitled to, and Plaintiff hereby does, seek

11  damages and other appropriate relief.

12  **ANSWER:**   CPS denies the allegations in the final two sentences of Paragraph 8, namely CPS
denies that "At all times relevant to this action, Plaintiff has had a significant property interest in
13  the waters it extracts and uses from its wells, including the water drawn from Well 26. The past,
present and continuing nitrate contamination of such waters constitutes physical injury for which
14  Plaintiff is entitled to, and Plaintiff hereby does, seek damages and other appropriate relief." As
to all remaining allegations in Paragraph 8, CPS lacks sufficient information to admit or deny
15  them and therefore per Rule 8(b)(5) this has the effect of a denial.

16      9.       Defendant CROP PRODUCTION SERVICES, INC., individually and as

17  successor in interest to UAP DISTRIBUTION, INC. (individually and doing business as

18  UNITED AGRI PRODUCTS WEST, UAP WEST, and UNITED AGRI PRODUCTS, and as

19  successor in interest to UNITED AGRI PRODUCTS FINANCIAL SERVICES, INC.)

20  (hereinafter collectively referred to as "CPS")[2] is a Delaware corporation with its principal place

21  of business in Loveland, Colorado, which at all times relevant to this action has been doing

22  business in California. Since at least 1998, CPS has owned and/or operated an agricultural

23  chemical storage and distribution facility known today as the Crop Production Services, Inc.

24  Bakersfield-Oildale Terminal, located at 2010 Norris Road, Bakersfield, California (the "CPS

25  Facility"), where, on information and belief, CPS did and/or does manufacture, formulate, mix,

26

27  [2] An existing CPS-affiliated entity has a name that is similar to one of these three trade names, United Agri Products, Inc. This
entity has never done business under any of these trade names. United Agri Products, Inc. is organized under the laws of
28  Delaware with its principal place of business in Colorado.

1  package, handle, store, distribute, and/or transport Nitrogen Materials.  CPS spilled, leaked,

2  discharged, disposed of and/or otherwise released Nitrogen Materials at and/or from the CPS

3  Facility, and thereby caused or substantially contributed to the nitrate contamination of Plaintiff's

4  Well 26 and water supply.

5  **ANSWER:**   CPS admits at the time of the filing of the Complaint, no CPS-affiliated entity
   known as UAP Distribution, Inc. existed.  CPS admits UAP Distribution, Inc. was a predecessor
6  of CPS.  CPS admits "United Agri Products West", "UAP West" and "United Agri Products"
   were mere trade names for predecessors of CPS.  CPS admits at the time of the filing of the
7  Complaint, no CPS-affiliated entity known as United Agri Products Financial Services, Inc.
   existed.  CPS admits United Agri Products Financial Services, Inc. was a predecessor of CPS.
8  CPS admits that it manufactures, formulates, mixes, packages, handles, stores, distributes, and/or
   transports certain Nitrogen Materials at one or more of its facilities around the country, that it
9  does own and/or operate a facility at 2010 Norris Road in Bakersfield, California, and that this
   facility is involved in the handling of certain Nitrogen Materials at the facility at 2010 Norris
10 Road, Bakersfield, California.  CPS admits that there was evidence of some limited historic
   materials released at the facility. CPS denies all allegations of Paragraph 9 not specifically
11 admitted herein.
12

13       10.    The names and capacities, whether individual, corporate, or otherwise, of

14 Defendants named herein as DOES 1 through 300, inclusive, are unknown at this time to Plaintiff

15 who therefore sues said Defendants by such fictitious names.  Plaintiff will amend the Complaint

16 to show the true names and capacities of said Defendants when their identities and capacities

17 have been ascertained.

18 **ANSWER:**   CPS lacks sufficient information to admit or deny the allegations set forth in
   Paragraph 10, and therefore per Rule 8(b)(5) this has the effect of a denial.
19

20       11.    DOES 1 through 100, inclusive, are (i) prior owners and/or operators of the CPS

21 Facility or the property on which the CPS Facility is located, or (ii) current and/or former owners

22 and/or operators of property in close proximity to Plaintiff's Well 26, who, on information and

23 belief, spilled, leaked, discharged, disposed of and/or otherwise released Nitrogen Materials at or

24 from the CPS Facility, the property on which it is located, and/or property in close proximity to

25 Plaintiff's Well 26, and thereby caused or substantially contributed to the nitrate contamination

26 of Plaintiff's Well 26 and water supply.  DOES 1 through 100, inclusive, along with CPS, are

27 referred to collectively herein as "Property Owner/Operator Defendants."

28 \\\

1   **ANSWER:**   CPS denies that it or anyone on CPS property spilled, leaked, discharged, or disposed of any chemical "in close proximity to Plaintiff's Well 26, and thereby caused or substantially contributed to the nitrate contamination of Plaintiff's Well 26 and water supply." CPS lacks sufficient information to admit or deny all remaining allegations set forth in Paragraph 11, and therefore per Rule 8(b)(5) this has the effect of a denial.

12.   DOES 101 through 200, inclusive, are current and/or former owners and/or operators of the railroad spur that abuts the CPS Facility, who, on information and belief, did and/or do transport, deliver, load, offload and/or handle Nitrogen Materials at, or in the vicinity of, the CPS Facility and/or the property on which it is located and, in carrying out such activities, spilled, leaked, discharged, disposed of and/or otherwise released Nitrogen Materials at, from, or in the vicinity of the CPS Facility and/or the property on which it is located, and thereby caused or substantially contributed to the nitrate contamination of Plaintiff's Well 26 and water supply. DOES 101 through 200, inclusive, are referred to collectively herein as "Railroad Defendants."

**ANSWER:**   CPS denies that it or anyone on CPS property spilled, leaked, discharged, or disposed of any chemical that "thereby caused or substantially contributed to the nitrate contamination of Plaintiff's Well 26 and water supply." CPS lacks sufficient information to admit or deny all remaining allegations set forth in Paragraph 12, and therefore per Rule 8(b)(5) this has the effect of a denial.

13.   DOES 201 through 300, inclusive, are current and/or former owners and/or operators of trucking companies who, on information and belief, did and/or do transport, deliver, load, offload and/or handle Nitrogen Materials at, to, or in the vicinity of the CPS Facility and/or the property on which it is located and, in carrying out such activities, spilled, leaked, discharged, disposed of and/or otherwise released Nitrogen Materials at, from, or in the vicinity of the CPS Facility and/or the property on which it is located, and thereby caused or substantially contributed to the nitrate contamination of Plaintiff's Well 26 and water supply. DOES 201 through 300, inclusive, are referred to collectively herein as "Trucking Defendants."

**ANSWER:**   CPS denies that it or anyone on CPS property spilled, leaked, discharged, or disposed of any chemical that "thereby caused or substantially contributed to the nitrate contamination of Plaintiff's Well 26 and water supply." CPS lacks sufficient information to admit or deny all remaining allegations set forth in Paragraph 13, and therefore per Rule 8(b)(5) this has the effect of a denial.

14.   CPS and Defendant DOES 1 through 300. inclusive, are referred to collectively herein as "Defendants."

\\\

**ANSWER:** Paragraph 14 contains no factual allegations and therefore no response is required. However, CPS does not accept or agree to Plaintiff's definition of "Defendants" in this context.

15. When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

**ANSWER:** Paragraph 15 contains no factual allegations and therefore no response is required. However, CPS does not accept or agree to Plaintiff's definitional statements in this context.

16. The California Superior Court has jurisdiction over this action pursuant to California Constitution Article VI, Section 10, which grants the Superior Court "original jurisdiction in all cases except those given by statute to other trial courts." The statutes under which this action is brought do not grant jurisdiction to any other trial court.

**ANSWER:** CPS has properly removed this case to federal court, stripping any state court of jurisdiction; CPS admits that jurisdiction and venue are proper in the United States District Court for the Eastern District of California. CPS denies the remaining allegations of Paragraph 16.

17. This Court has jurisdiction over Defendants because, based on information and belief, each is a corporation or other business that has sufficient minimum contacts in California, is a citizen of California, or otherwise intentionally avails itself of the California market either through: (i) the past and/or present manufacture, formulation, mixing, packaging, handling, storage, distribution, transportation, spillage, leakage, discharge, disposal and/or release of Nitrogen Materials, in California, (ii) by having, formerly and/or currently, a manufacturing, storage, distribution, or other facility located in California, and/or (iii) by having, formerly and/or currently, transportation infrastructure, including locomotives and/or vehicles, located in and/or registered with the State of California, so as to render the exercise of jurisdiction over it by California courts consistent with traditional notions of fair play and substantial justice.

**ANSWER:** CPS has properly removed this case to federal court, stripping any state court of jurisdiction; CPS admits that jurisdiction and venue are proper in the United States District Court for the Eastern District of California. CPS denies the remaining allegations of Paragraph 17.

1      18.    Venue is proper in Kern County Superior Court because Kern County is where the

2  injury at issue in this litigation occurred and continues to occur and where the property interest at

3  issue in this lawsuit is located.

4  **ANSWER:**  CPS has properly removed this case to federal court, stripping any state court of jurisdiction; CPS admits that jurisdiction and venue are proper in the United States District Court

5  for the Eastern District of California. CPS denies the remaining allegations of Paragraph 18.

6      19.    Nitrate ($NO_3$) is an acutely toxic substance in drinking water supplies. Once

7  nitrate is consumed by humans, it converts into nitrite ($NO_2$). Nitrite interferes with the ability of

8  red blood cells to carry oxygen within the body, which can produce a condition known as

9  methemoglobinemia.  Methemoglobinemia, in particular, poses a threat to infants, and is

10  commonly referred to as "blue baby syndrome." Possible complications from

11  methemoglobinemia include headaches, dizziness, fatigue, difficulty in breathing, nausea and, in

12  severe cases, lethargy, brief loss of consciousness, irregular heartbeat, shock, convulsions, coma,

13  and even death. Methemoglobinemia also poses a significant threat to pregnant women, as it can

14  increase their risk of complications such as anemia, abortion, premature labor, or preeclampsia.

15  **ANSWER:**  CPS admits that under certain circumstances nitrates can be toxic to humans, the specifics of which are complex and should be the subject of expert testimony. However, CPS

16  denies this is relevant to this matter. CPS denies all allegations of Paragraph 19 not specifically

17  admitted herein.

18      20.    Nitrate is, among other things, an ingredient in certain agricultural chemicals,

19  including solid and liquid fertilizers. Additionally, nitrate is formed when other agricultural

20  chemicals, including solid and liquid fertilizers, are spilled, leaked, discharged, disposed of,

21  and/or otherwise released into the environment. The majority of anthropogenic nitrate is

22  industrially produced using the Haber-Bosch process, which catalyzes atmospheric nitrogen gas

23  with hydrogen to produce ammonia, which can then further oxidize to produce nitrate. Ammonia

24  contained in fertilizer that is spilled, leaked, discharged, disposed of, and/or otherwise released

25  will convert into nitrate in the presence of oxygen. Nitrate, once released into the environment,

26  can leach into and contaminate groundwater. Thus, high concentrations of nitrate in groundwater

27  are often associated with agricultural chemical releases.

28  \\\

1
2
3
4

**ANSWER:** CPS admits that nitrate, among other things, is an ingredient in certain agricultural chemicals, including certain solid and liquid fertilizers; that nitrate can be formed when certain chemicals, including solid and liquid fertilizers, are spilled, leaked, discharged, disposed of, and/or otherwise released into the environment; that ammonia contained in fertilizer that is spilled, leaked, discharged, disposed of, and/or otherwise released can be converted into nitrate under certain circumstances in the presence of oxygen; and that nitrate, once released into the environment, can under certain circumstances leach into the soil and reach groundwater. CPS denies any remaining factual allegations in Paragraph 20.

5   21.   Nitrate has unique characteristics that cause extensive environmental

6   contamination and a corresponding threat to public health and welfare. Nitrate dissolves rapidly

7   in water and, once dissolved, is extremely difficult and costly to remove. Nitrate is persistent in

8   groundwater and does not readily degrade under typical aquifer conditions. Thus, once nitrate

9   enters groundwater, it can remain for decades. There is no simple, low-cost method to remove

10   nitrate from water. Boiling, softening, and filtration as methods of purifying water do not impact

11   nitrate concentrations. Rather, to remove nitrate from groundwater, wellhead treatment facilities

12   that utilize technology such as ion exchange, reverse osmosis, or electrodialysis are typically

13   recommended; such facilities are costly to build, operate, and maintain. In short, nitrate migrates

14   readily through soil and groundwater, resists natural degradation, and is difficult and costly to

15   remove from groundwater supplies.

16
17
18
19

**ANSWER:** CPS admits that nitrates can dissolve in water, and groundwater containing nitrates can be addressed, if needed, with wellhead treatment facilities, among other techniques, depending upon a wide range of facts and factors. CPS states that any remaining allegations in Paragraph 21 are argumentative and thus do not require a response. To the extent there are any remaining factual allegations, CPS denies them.

20   22.   There is a delay, based on site specific factors, between the time Nitrogen

21   Materials are released into the subsurface environment and the time nitrate accumulates in

22   groundwater in sufficient quantities and locations to contaminate public drinking water resources.

23
24
25

**ANSWER:** If circumstances exist such that nitrates reach groundwater, CPS admits that this process takes varying amounts of time depending upon a large number of factors. CPS states that any remaining allegations in Paragraph 22 are argumentative and thus do not require a response. To the extent there are any remaining factual allegations, CPS denies them.

26   \\\

27   \\\

28

23.     The California Department of Public Health ("CDPH") is the state agency responsible for regulating public water systems in California, including Plaintiff's.

**ANSWER:**     CPS admits that the California Department of Public Health is charged with regulating certain aspects of certain public water systems in the state.  CPS states that any remaining allegations in Paragraph 23 are argumentative and or call for a legal conclusion, and thus do not require a response.  To the extent there are any remaining factual allegations, CPS denies them.

24.     Because nitrate in drinking water poses a significant threat to public health, in 1994, the CDPH adopted a Maximum Contaminant Level of 45 mg/L of nitrate (as $NO_3$), which corresponds to, and is the equivalent of, 10 mg/L of nitrogen (as N).[3]  A public water supplier, such as Plaintiff, may not supply water with nitrate levels that exceed this regulatory standard.

**ANSWER:**     CPS admits that the CDPH adopted a Maximum Contaminant Level of 45 mg/L of nitrate (as $NO_3$), which corresponds to, and is the equivalent of, 10 mg/L of nitrogen (as N). CPS states that any remaining allegations in Paragraph 24 are argumentative and thus do not require a response.  To the extent there are any remaining factual allegations not admitted herein, CPS denies them, including but not limited to the final sentence of Paragraph 24.

25.     The California *Code of Regulations* (22 *CCR* § 64465, Appendix 64465-D) notes that "[i]nfants below the age of six months who drink water containing nitrate in excess of the [Maximum Contaminant Level] may quickly become seriously ill and, if untreated, may die . . . ." Nitrate is therefore considered an acute contaminant; a single Maximum Contaminant Level exceedance can pose a significant threat to public health and, once confirmed, can cause CDPH to require that a well be removed from service unless and until treatment is installed. (*See* 22 *CCR* § 64432.1.)

**ANSWER:**     CPS admits that Plaintiff quoted and paraphrased a portion of an appendix of the state regulation cited in Paragraph 25; CPS states that any remaining allegations in Paragraph 25 are argumentative and thus do not require a response.  CPS denies any remaining factual allegations in Paragraph 25.

\\\

\\\

\\\

---

[3] Hereinafter, unless otherwise indicated, nitrate will be addressed in terms of mg/L of nitrate as $NO_3$.

26.     In 1997, the California Office of Environmental Health Hazard Assessment established a Public Health Goal for nitrate in drinking water of 45 mg/L. Public Health Goals are based solely on health effects and are set at a level that the State has determined, based on the best available data in the scientific literature, does not pose any significant risk to health.

**ANSWER:**     CPS lacks sufficient information to admit or deny all remaining allegations set forth in Paragraph 26, and therefore per Rule 8(b)(5) this has the effect of a denial.

27.     Plaintiff's Water System serves potable water to approximately 8,200 residences and businesses within its service area. Plaintiff's sources of supply include both groundwater production wells and treated surface water purchased from the Kern County Water Agency's Improvement District No. 4 ("ID4"). Plaintiff's service area includes portions of Oildale that lie north of the Kern River and east of Highway 99 (which are within ID4), as well as an area west of Highway 99 and north of Seventh Standard Road, known as the Southeast Shafter Service area (which is outside of ID4).

**ANSWER:**     CPS lacks sufficient information to admit or deny all remaining allegations set forth in Paragraph 27, and therefore per Rule 8(b)(5) this has the effect of a denial.

28.     Plaintiff's Well 26 was constructed in 1966 and is perforated between 300 and 630 feet below ground surface. The real property on which Well 26 sits, which is owned by Plaintiff, is surrounded on all sides by the CPS Facility. The presence of Well 26 and its related infrastructure (including booster pumps and two half-million gallon storage tanks) is, and has been, open and obvious to any individual and/or entity conducting business operations at and/or adjacent to the CPS Facility.

**ANSWER:**     CPS admits that it currently knows of the existence of Well 26. CPS lacks sufficient information to admit or deny all remaining allegations set forth in Paragraph 28, and therefore per Rule 8(b)(5) this has the effect of a denial.

29.     Well 26 is the most important well in Plaintiff's system. It is a large and productive well (approximately 1,220 gallon per minute capacity) that, until the occurrence of the nitrate contamination described herein, pumped high quality water. Because of its location immediately adjacent to the northwestern border of ID4, Well 26 is critical to Plaintiff's ability to distribute water to the Southeast Shafter Service Area. Treated surface water purchased from

ID4 can only be used inside ID4, and groundwater quality in the Southeast Shafter Service Area is generally poor. So, Well 26, with its previously high quality water and optimal location, provided Plaintiff with both the capacity and the needed water pressure to efficiently serve the Southeast Shafter Service Area, where development and demand for water is growing rapidly.

**ANSWER:** CPS denies the allegations in Paragraph 29.

30. Due to Defendants' acts and omissions, Plaintiff's Well 26 has become contaminated with nitrate at levels that violate California's Maximum Contaminant Level. Prior to October 11, 2010, measured nitrate concentrations in Well 26 were at levels below California's 45 mg/L Maximum Contaminant Level. In the seven years preceding 2010, nitrate concentrations in Well 26 averaged 27 mg/L.

**ANSWER:** CPS denies the allegations in Paragraph 30.

31. On November 17, 2010, Plaintiff received the nitrate results from a sample taken from Well 26 on October 11, 2010, and discovered that nitrate levels in Well 26 had risen sharply. In September 2009, during the prior Well 26 nitrate sampling event, the nitrate concentration had been 24 mg/L, a level below the seven year average. However, the nitrate level detected in the October 11, 2010, sample was 47 mg/L, which constituted a Maximum Contaminant Level violation and was nearly twice as high as the level detected the prior year. Since October 2010, the nitrate concentration in Well 26 has remained above the Maximum Contaminant Level, at times reaching a concentration as high as 80 mg/L. No other well in Plaintiff's system, including nearby upgradient wells, has experienced a similar nitrate spike.

**ANSWER:** CPS lacks sufficient information to admit or deny all remaining allegations set forth in Paragraph 31, and therefore per Rule 8(b)(5) this has the effect of a denial.

32. As a result of Well 26's nitrate Maximum Contaminant Level exceedances, since November 2010, Plaintiff has not been permitted by CDPH to pump water from Well 26 into its distribution system, thereby forcing Plaintiff to replace the lost capacity from the well with costly replacement water and suffer other consequential damages related to its inability to use Well 26. Plaintiff has been able to replace the lost capacity from Well 26 on a provisional basis within ID4 by purchasing additional treated surface water, which is significantly more expensive on a per-

1   acre-foot basis than the cost of pumping water from Well 26. But, with the pace of development

2   in the northwestern portion of its service area accelerating, Plaintiff's operational and supply

3   problems associated with the loss of Well 26 will continue to grow increasingly acute.

4   **ANSWER:**   CPS lacks sufficient information to admit or deny the allegations set forth in
    Paragraph 32, and therefore per Rule 8(b)(5) this has the effect of a denial.

5

6       33.   The ongoing presence of nitrate in Well 26 at levels above California's Maximum

7   Contaminant Level has caused, and will continue to cause, significant physical injury to

8   Plaintiff's property, and has caused, and will continue to cause, Plaintiff to sustain significant

9   damages.

10  **ANSWER:**   CPS denies the allegations in Paragraph 33.

11      34.   The injury to Plaintiff's property and resulting damages sustained by Plaintiff

12  caused by Defendants' conduct, as alleged herein, constitute an unreasonable interference with,

13  and physical damage to, the limited subterranean supplies of fresh drinking water on which

14  Plaintiff's Well 26 depends. Plaintiff's interest in protecting the quality of its limited drinking

15  water supplies constitutes a reason personal to the Plaintiff for seeking damages and injunctive

16  relief sufficient to restore such drinking water supplies to their pre-contamination condition.

17  **ANSWER:**   CPS denies the allegations in Paragraph 34.

18      35.   As a proximate cause of Defendants' acts and/or omissions, Plaintiff has suffered

19  and will suffer substantial damages that include, but are not limited to: (i) an interference with

20  Plaintiff's use of its property interest in the water pumped by Well 26 and the real property on

21  which the well is located; (ii) diminution in the value of those property interests; (iii) physical

22  damage to water and real property over which Plaintiff has possessory interests; (iv) the past,

23  current, and future costs associated with Plaintiff's loss of use of Well 26 caused by nitrate

24  contamination and the resulting closure of the Well; (v) the costs of restoring Plaintiff's

25  contaminated water to its pre-contamination condition by, for example, removing or reducing

26  nitrate via wellhead treatment (including both capital and operations and maintenance costs);

27  and/or (vi) alternatively, the costs and risks associated with replacing Well 26 with a new,

28  equivalent well, including but not limited to the costs of destroying Well 26, the costs of locating

1   and constructing a suitable offsite replacement well, and the costs of getting the replacement

2   well's water to a location where it can be effectively distributed to the northern and western

3   portions of Plaintiff's service area.

4   **ANSWER:**   CPS denies the allegations in Paragraph 35.

5        36.   Plaintiff is informed and believes and based thereon alleges that it has suffered

6   damages greatly in excess of $25,000.00.

7   **ANSWER:**   CPS admits that the amount in controversy exceeds $75,000.00, though CPS
    denies that it is liable for Plaintiff's purported damages. CPS denies all remaining allegations in
8   Paragraph 36.

9        37.   On information and belief, at the time Plaintiff's Well 26 was installed at its

10  current location, the CPS Facility did not exist. Defendant CPS (inclusive of its predecessors in

11  interest, as stated *supra*) established the CPS Facility, which surrounds Plaintiff's Well 26, as of

12  at least 1998, and has owned and/or operated the CPS Facility ever since. Despite the obvious

13  attendant risks to public health and safety and Plaintiff's property interests, Defendant CPS

14  elected to locate a dry fertilizer warehouse and liquid fertilizer and pesticide tank farm at the CPS

15  Facility within approximately 50 to 250 feet of Well 26.

16  **ANSWER:**   CPS lacks sufficient information to admit or deny the allegations set forth in the
    first sentence of Paragraph 37, and therefore per Rule 8(b)(5) this has the effect of a denial. CPS
17  states that the remaining allegations in Paragraph 37 are argumentative and thus do not require a
    response. To the extent there are any remaining factual allegations, CPS denies them.
18

19       38.   As of August 2000, in a Risk Management Plan for the CPS Facility, Defendant

20  CPS listed the "primary activity" at the site as "the storage, blending, and sales of fertilizer, in

21  addition to, the sale of prepackaged agricultural chemicals to farmers." Further, CPS noted

22  therein that anhydrous ammonia, a Nitrogen Material, was received by rail car at the site two

23  times per year, then mixed at the facility into commercial fertilizer. On information and belief,

24  Nitrogen Materials, including fertilizer products, were loaded onto trucks at the CPS Facility for

25  transport to off-site locations.

26  **ANSWER:**   CPS lacks sufficient information to admit or deny all remaining allegations set
    forth in Paragraph 38, and therefore per Rule 8(b)(5) this has the effect of a denial.
27

28  \\\

1      39.    As of 2003, Defendant CPS described its business operations at the CPS Facility

2 as "Farm Supplies Wholesaler/Fertilizer Manufacturer (Mixing Only)" and further noted that the

3 facility contained the following equipment: "Dry fertilizer blending & bagging operation

4 including feed hopper/conditioner, bucket elevator & 2 blending lines — each w/a blender, a

5 screener, a bucket elevator — 2 bagging bins & bagging systems; all vented to fabric collectors

6 DC-1 & DC-2."

7 **ANSWER:**   CPS lacks sufficient information to admit or deny the allegations set forth in
Paragraph 39, and therefore per Rule 8(b)(5) this has the effect of a denial.

8

9      40.    As of 2005, Defendant CPS stated in a Spill Prevention, Control, and

10 Countermeasure Plan that operations at the CPS Facility had the potential to discharge liquids,

11 such as oil, into navigable waters of the State of California.

12 **ANSWER:**   CPS admits that it had a Spill Prevention, Control, and Countermeasure Plan in
place in 2005, which speaks for itself. CPS denies the remaining allegations of Paragraph 40.

13

14      41.    According to Defendant CPS, in February 2010, it conducted "Nitrogen

15 Compound Testing" at the CPS Facility, "to determine if nitrogen compounds were present in

16 shallow soil and temporarily ponded surface water at the site." Eleven soil samples and seven

17 surface water samples were collected and evaluated. The soil samples revealed extremely high

18 levels of nitrate (as N), including concentrations (in mg/L) of: >2500, >2500, 2000, 1500, 500,

19 300, 250, 100, and 100. As for the surface water samples, all seven detected nitrate, and all but

20 two found concentrations at levels above the Maximum Contaminant Level. The Nitrogen

21 Compound Testing demonstrated that the highest nitrate concentrations at the site, of the

22 locations sampled, were in soil between the railroad spur and the dry fertilizer warehouse and in

23 soil adjacent to the liquid fertilizer and pesticide tank farm loading pad, all of which are within

24 approximately 50 to 250 feet of Plaintiff's Well 26.

25 **ANSWER:**   CPS admits that in February 2010 it conducted nitrogen compound testing at the
CPS facility, and the test results and any related report speak for themselves. To the extent there

26 are any remaining factual allegations, CPS denies them.

27 \\\

28 \\\

42.     On November 7, 2011, Plaintiff received in the mail a handwritten letter, postmarked from Colorado, stating as follows: "High nitrates and sodium chlorate in your well water on Norris Rd coming from CPS spills. Beware!"

**ANSWER:**   CPS lacks sufficient information to admit or deny the allegations set forth in Paragraph 42, and therefore per Rule 8(b)(5) this has the effect of a denial.

43.     On November 22, 2011 — nearly two years after Defendant CPS detected extremely high nitrate levels in soil and surface water at the CPS Facility and, on information and belief, with no apparent remedial action having been taken in the interim — Defendant CPS's contactor, PSC Environmental Services, LLC ("PSC"), submitted a "Work Plan" to CPS for the CPS Facility.  The stated objective of the Work Plan was to "produce the necessary tools to complete several maintenance issues related to soil excavation, building repair, grading and new concrete placement."  Among other items, the Work Plan:

    a)   Described several locations at the CPS facility that had soil "of concern" that should be excavated, including: (i) contaminated soil between the railroad tracks and dry fertilizer warehouse "that has been placed over the years to combat with drainage, spills, etc."; and (ii) contaminated soil from the area between the liquid fertilizer tank farm and Plaintiff's Well 26, which is adjacent to the truck loading pad.

    b)   Identified the need to improve the drainage system at the CPS facility by installing new drainage infrastructure and re-grading portions of the site.

    c)   Called for paving large areas of the CPS facility and installing a concrete "apron" around the truck loading pad.

**ANSWER:**   CPS admits that its contractor prepared a Work Plan, and it speaks for itself.  CPS states that the remaining allegations in Paragraph 43 are argumentative and thus do not require a response.  To the extent there are any remaining factual allegations, CPS denies them.

44.     On January 9, 2012, Plaintiff received an email alert from USAN.org indicating that work would commence the week of January 11, 2012 (by PSC on behalf of CPS) at the CPS Facility, and that the work would involve "EXC TO REM CONTAMINATED SOIL."  Further, the email alert noted that the excavation work would not be done pursuant to a permit.

**ANSWER:**   CPS admits that PSC performed certain work for it.  As to email Plaintiff did or did not receive from others, CPS lacks sufficient information to admit or deny such allegations, and therefore per Rule 8(b)(5) this has the effect of a denial.  To the extent there are any remaining factual allegations, CPS denies them.

45.     Soon after receiving the email described in Paragraph 44 above, Plaintiff provided a copy of the email to the Central Valley Regional Water Quality Control Board ("RWQCB"), along with, among other things, copies of recent nitrate sampling results from Well 26 and the anonymous note referenced in Paragraph 42 above.  On May 4, 2012, the RWQCB issued to CPS a "Request for Additional Subsurface Investigation, Crop Production Services Facility, 2010 Norris Road, Oildale, Kern County." Therein, the RWQCB: (i) noted that "[e]vidence implicating CPS in the groundwater degradation of [Plaintiff s] Well #26 is the proximity of the CPS facility to Well #26 and the type of business CPS conducts"; (ii) observed that "[s]everal other CPS facilities in California are currently under assessment for nitrate and pesticide impacts to groundwater"; and (iii) directed CPS to submit a historical site summary and work plan to investigate whether past business practices at the site caused soil and groundwater contamination.

**ANSWER:**   CPS admits that it received a letter dated May 4, 2012 from the RWQCB, which speaks for itself.  As to what Plaintiff did or did not provide the RWQCB, CPS lacks sufficient information to admit or deny such allegations, and therefore per Rule 8(b)(5) this has the effect of a denial. To the extent there are any remaining factual allegations, CPS denies them.

46.     On September 30, 2012, Defendant CPS responded to the RWQCB's request by submitting a "Facility Improvement Report" for the CPS Facility.  Among other items, the Report states that:

        a)     "CPS formerly received raw bulk fertilizer and pesticides at the facility, blended and packaged fertilizer products, and sold bulk and packaged fertilizers and pesticides."

        b)     "CPS currently utilizes the facility as a terminal for receiving, storing, and distributing pre-packaged fertilizers and pesticides to other CPS facilities."

        c)     Site "improvements" were performed by PSC in 2012, "which consisted of nitrogen-impacted soil removal, storm water system upgrades, building repair, grading and concrete placement."  Some of the excavated material

1    was "stained soil" and soil to a depth of, at most, three feet was removed

2    from contaminated locations. These "improvements" were supposed "to

3    limit the potential for nitrogen compounds to impact groundwater."

4    d)    "Approximately 230 cubic yards (cyds) of soil were removed from the site,

5    and over 6,000 square feet of concrete was installed to limit surface water

6    infiltration and vertical migration of nitrogen compounds in soil and to

7    provide impermeable areas for facility truck traffic."

8    e)    "If nitrate concentrations in [Well 26] are related to the site, the facility

9    improvements should reduce the concentrations over time."

10   **ANSWER:**    CPS admits that it submitted a Facility Improvement Report to the RWQCB on or
     about September 30, 2012, which speaks for itself. To the extent there are any remaining factual
11   allegations, CPS denies them.

12   47.    In August 2012, CPS submitted a "Hazardous Materials Business Inventory" for

13   the CPS Facility to the Kern County Environmental Health Services Department, which included

14   the following items on its list of "Hazardous Materials" stored at the site: Ammonium Phosphate

15   Solution, Fertilizers-Dry, Fertilizers-Liquid, Fertilizers-LPI inventory (Lokomotive), Potassium

16   Nitrate, and UN Liquid Fertilizer.

17   **ANSWER:**    CPS admits that it submitted a Hazardous Materials Business Inventory to the
     RWQCB on or about August 30, 2012, which speaks for itself. To the extent there are any
18   remaining factual allegations, CPS denies them.

19   48.    Based on the foregoing, and on information and belief, Defendant CPS:

20   a)    Has been responsible, since at least 1998, for multiple and/or routine spills,

21   leaks, discharges, disposals, and/or releases of Nitrogen Materials, at,

22   from, or in the vicinity of the CPS Facility, which have created extensive

23   plumes of nitrate contamination in soil and groundwater and, thereby,

24   fouled the aquifer from which Plaintiff's Well 26 draws its water.

25   b)    Knew as of at least February 2010 that soil and surface water in multiple

26   locations at the CPS Facility was heavily contaminated with nitrate, that

27   this contamination posed a significant threat to Plaintiff's Well 26 and

28   public health, and, yet, took no material steps to remediate the

1  contamination for almost two years.   Thus, CPS knowingly permitted

2  nitrate, which had been spilled, leaked, discharged, disposed of and/or

3  otherwise released at the CPS Facility (by CPS and/or other Defendants) to

4  leach, unabated, from the soil down to the groundwater aquifer, for

5  approximately 23 months, despite the immediate proximity of Plaintiff's

6  Well 26, a public water supply well.

7  c)  Failed to report to the proper authorities known spills, leaks, discharges,

8  disposals and/or releases of waste and/or hazardous substances at the CPS

9  Facility that resulted in contamination of soil and surface water with

10  Nitrogen Materials, which posed a clear, obvious, known, and direct threat

11  to waters of the State of California and, in particular, Plaintiff's Well 26, in

12  violation of, at minimum, the following statutes: California *Water Code*

13  §§ 13260, 13264, and 13271; and California *Health & Safety Code*

14  § 5411.5.

15  d)  Attempted an "improvement" of its CPS Facility, without proper

16  regulatory oversight or consultation, and, in the process, destroyed and/or

17  altered evidence relevant to the cause, nature, extent, and/or duration of the

18  environmental contamination that it has caused at the site.

19  **ANSWER:**   CPS denies the allegations of Paragraph 48 and all of its subparts.

20  49.   DOES 1 through 100, inclusive, either: (i) previously owned and/or operated the

21  CPS Facility or the property on which the CPS facility is located; or (ii) are the current and/or

22  former owners and/or operators of property in close proximity to Plaintiff's Well 26.

23  **ANSWER:**   CPS lacks sufficient information to admit or deny the allegations in Paragraph 49,
and therefore per Rule 8(b)(5) this has the effect of a denial.

24

25  \\\

26  \\\

27  \\\

28  \\\

1    50.    On information and belief, DOES 1 through 100, inclusive, spilled, leaked,

2    discharged, disposed of and/or otherwise released Nitrogen Materials at or from the CPS Facility,

3    the property on which it is located, and/or property in close proximity to Plaintiff's Well 26, and

4    thereby caused or substantially contributed to the nitrate contamination of Plaintiff's Well 26 and

5    water supply.

6    **ANSWER:**    CPS lacks sufficient information to admit or deny the allegations in Paragraph 50,
and therefore per Rule 8(b)(5) this has the effect of a denial.

7

8    51.    On information and belief, Nitrogen Materials, including fertilizers, were

9    delivered to and/or from the CPS Facility via the rail spur on and/or adjacent to the site.

10    **ANSWER:**    CPS admits that Nitrogen Materials, including fertilizers, were delivered to and/or
from the CPS Facility via the rail spur on to the site.  CPS denies any remaining allegations of

11    Paragraph 51.

12    52.    The February 2010 Nitrogen Compound Testing at the CPS Facility found that the

13    highest levels of nitrate contaminated soil were located adjacent to the rail spur.

14    **ANSWER:**    CPS admits the allegations of Paragraph 52.

15    53.    In November 2011, it was noted that soil adjacent to the rail spur was

16    contaminated because there had been "spills" in that area.  Contaminated soil was removed from

17    that location during the remedial work conducted at the CPS Facility in January 2012.

18    **ANSWER:**    CPS admits that in January 2012 it conducted soil excavation and site
improvements at the facility.  CPS lacks sufficient information to admit or deny the remaining

19    allegations in Paragraph 53, and therefore per Rule 8(b)(5) this has the effect of a denial.

20    54.    Thus, on information and belief, the Railroad Defendants transported, delivered,

21    loaded, offloaded and/or handled Nitrogen Materials at, or in the vicinity of, the CPS Facility

22    and/or the property on which it is located and, in carrying out such activities, spilled, leaked,

23    discharged, disposed of and/or otherwise released Nitrogen Materials at, from, or in the vicinity

24    of the CPS Facility and/or the property on which it is located, and thereby caused or substantially

25    contributed to the nitrate contamination of Plaintiff's Well 26 and water supply.

26    **ANSWER:**    CPS lacks sufficient information to admit or deny the allegations in Paragraph 54,
and therefore per Rule 8(b)(5) this has the effect of a denial.

27

28

55. On information and belief, Nitrogen Materials, including fertilizer products, were delivered to and/or from the CPS Facility by the Trucking Defendants and, in the process thereof, Nitrogen Materials were transported, delivered, loaded, offloaded and/or handled at, to, or in the vicinity of the CPS Facility and/or the property on which it is located.

**ANSWER:** CPS lacks sufficient information to admit or deny the allegations in Paragraph 55, and therefore per Rule 8(b)(5) this has the effect of a denial.

56. The February 2010 Nitrogen Compound Testing at the CPS Facility found nitrate contaminated soil and surface water at the site adjacent to both the "truck loading ramp" and "load pad" area around the liquid fertilizer and pesticide tank farm. During the January 2012 remedial work conducted at the site, contaminated soil was excavated from areas adjacent to the load pad and a concrete berm or "apron" was installed around it so run-off from the pad would not continue to contaminate site soil.

**ANSWER:** CPS admits that in February 2010 it conducted nitrogen compound testing at the CPS facility, and the test results and any related report speak for themselves. CPS admits that in January 2012 it conducted soil excavation and site improvements, including the installation of an apron, and any related report speaks for itself. To the extent there are any remaining factual allegations, CPS denies them.

57. Thus, on information and belief, the Trucking Defendants transported, delivered, loaded, offloaded and/or handled Nitrogen Materials at, to, or in the vicinity of the CPS Facility and/or the property on which it is located and, in carrying out such activities, spilled, leaked, discharged, disposed of and/or otherwise released Nitrogen Materials at, from, or in the vicinity of the CPS Facility and/or the property on which it is located, and thereby caused or substantially contributed to the nitrate contamination of Plaintiff's Well 26 and water supply.

**ANSWER:** CPS denies the allegations of Paragraph 57.

58. On information and belief, it has been common knowledge for decades, particularly in the farming and agricultural chemicals industries, that Nitrogen Materials, once released into the environment, can migrate down through the soil, into groundwater aquifers, and contaminate drinking water resources, thereby posing a threat to public health and safety.

**ANSWER:** CPS lacks sufficient information to admit or deny allegations about others' "common knowledge" and therefore per Rule 8(b)(5) this has the effect of a denial.

59. At all times relevant to this action, on information and belief, Defendants, and each of them, knew or should have known that spilling, leaking, discharging, disposing of and/or otherwise releasing Nitrogen Materials into the environment can pose a grave threat to public health and the environment, especially when the release occurs in close proximity to a public water supply well.

**ANSWER:** CPS denies the allegations of Paragraph 59.

60. At all times relevant to this action, on information and belief, Defendants, and each of them, knew or should have known that the risks posed by environmental releases of Nitrogen Materials include, among other things: (i) that nitrate from the Nitrogen Materials would readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, and cause widespread groundwater contamination; (ii) that nitrate would contaminate nearby public and private water supplies; (iii) that nitrate in drinking water poses an acute threat to public health and, especially, to babies and pregnant women; (iv) that nitrate contamination can cause a water supply to be rendered unfit and/or unusable for human consumption; and/or (v) that nitrate contamination burdens public water suppliers and their ratepayers with significant costs, such as costs associated with supply disruption, wellhead treatment to remove contamination (including both capital and operations and maintenance costs), and/or the costs and risks associated with attempting to replace a contaminated well with a new water supply.

**ANSWER:** CPS denies the allegations of Paragraph 60.

61. The Defendants, and each of them, had a duty and breached their duty to manufacture, formulate, mix, package, handle, store, distribute, and/or transport Nitrogen Materials in such a way as to eliminate the potential for these materials to be discharged, spilled, leaked, disposed of and/or otherwise released into the environment, especially in close proximity to public water supply wells.

**ANSWER:** CPS denies the allegations of Paragraph 61.

\\\

\\\

62.     On information and belief, the Defendants, and each of them, failed to adequately ensure that the Nitrogen Materials that they manufactured, formulated, mixed, packaged, handled, stored, distributed, and/or transported would not contaminate drinking water.  As a direct, indirect and proximate result of these failures, nitrate has contaminated, and continues to contaminate, the drinking water supply pumped by Plaintiff's Well 26.

**ANSWER:**     CPS denies the allegations of Paragraph 62.

63.     Despite knowing or having reason to know that long-term groundwater contamination, pollution of drinking water supplies, and threats to public health and safety were inevitable consequences of the foreseeable and intended results of their methods of manufacturing, formulating, mixing, packaging, handling, storing, distributing, and/or transporting Nitrogen Materials, the Defendants, and each of them, failed to make the necessary alterations to their operations, facilities and/or transportation infrastructure, and/or take the necessary precautionary measures to avoid causing such harm.

**ANSWER:**     CPS denies the allegations of Paragraph 63.

64.     At all times relevant herein, the Defendants, and each of them, knew or should have known that feasible measures could have been implemented to remove or substantially reduce the potential that their actions or failures to act could result in the discharge, spillage, leakage, disposal, and/or otherwise release of Nitrogen Materials, into the environment, especially in close proximity to a public drinking water well, but failed to implement such measures.

**ANSWER:**     CPS denies the allegations of Paragraph 64.

65.     On information and belief, Defendant CPS acted knowingly, willfully and with oppression, fraud, and/or malice.  As of at least February 2010, CPS had confirmed the presence of extensive nitrate contamination in soil and surface water at the CPS Facility, in close proximity to Plaintiff's Well 26, a public water supply well.  Despite also knowing, as of at least February 2010, that nitrate in drinking water can pose an acute threat to public health and, especially, the health of babies and pregnant women, CPS: (i) failed to take action to remove or otherwise remediate the nitrate contamination at its CPS Facility until January 2012 and,

1   therefore, knowingly and willfully permitted nitrate to leach unabated for 23 months from soil

2   and surface water at its CPS Facility into groundwater and contaminate the water pumped by

3   Plaintiff's Well 26; (ii) failed to notify Plaintiff and the proper regulatory authorities, in violation

4   of State law, when it first became aware that the CPS Facility was contaminated by extremely

5   high levels of nitrate, despite the obvious threat the contamination posed to waters of the State of

6   California and, in particular, water pumped by Well 26; and (iii) attempted to benefit from its

7   failure to report the nitrate contamination at its CPS Facility to Plaintiff and the authorities by

8   destroying, spoiling, covering up, and/or altering evidence at the CPS Facility relevant to the

9   cause, nature, extent, and/or duration of the nitrate contamination that it has caused and continues

10   to cause.  Such conduct is reprehensible, despicable, and was performed by CPS with conscious

11   disregard of Plaintiff's rights and interests and the probable dangerous consequences of that

12   conduct to public health, the environment, and property, in order to maximize profits and avoid

13   the attendant costs and reputational damage associated with causing environmental

14   contamination.

15   **ANSWER:**   CPS denies the allegations of Paragraph 65.

16   66.   On information and belief, at all times relevant to this action:

17   (a)   The Defendants, and each of them, spilled, leaked, discharged, disposed of

18   and/or otherwise released Nitrogen Materials into or onto the CPS facility

19   and/or other lands in the vicinity of Plaintiff's Well 26.  Such spills, leaks,

20   discharges, disposals and/or releases of Nitrogen Materials occurred at

21   various times, in varying quantities and in different locations.

22   (b)   The nitrate contained in, or formed as a byproduct of the release of,

23   Nitrogen Materials takes time to migrate from points of spills, leaks,

24   discharges, disposals and/or releases to locations within the subsurface at

25   which it has an appreciable impact on groundwater.

26   (c)   Due to Defendants acts and omissions, nitrate plumes have over time

27   migrated in the subsurface from various spill, leak, discharge, disposal

28   and/or release points at or near the surface, at the CPS Facility and/or

- 25 -

1  otherwise in the vicinity of Plaintiff's Well 26, causing pollution,
2  contamination, and substantial and continuing damage to that Well and the
3  groundwater that supplies it, causing appreciable injury to Plaintiff and
4  damaging Plaintiff at such times and in amounts to be proved at trial.

5  (d)  The Defendants, and each of them, knew or should have known that their
6  spills, leaks, discharges, disposals and/or releases of Nitrogen Materials at
7  the CPS Facility, and/or otherwise in the vicinity of Plaintiff's Well 26,
8  would threaten public health, contaminate the groundwater that supplies
9  Well 26, and cause significant harm to Plaintiff.

10  **ANSWER:**  CPS denies the allegations of Paragraph 66 and all of its subparts.

11  67.  At all times relevant to this action, Nitrogen Materials spilled, leaked, discharged,
12  disposed of and/or otherwise released by Defendants caused and/or was a substantial factor in
13  causing the nitrate contamination of Plaintiff's Well 26 and water supply.

14  **ANSWER:**  CPS denies the allegations of Paragraph 67.

15  68.  Defendants, and each of them, are jointly and severally liable for the damages
16  alleged herein.

17  **ANSWER:**  CPS denies the allegations of Paragraph 68.

18  69.  In engaging in the acts set forth above, Defendant CPS was guilty of malice,
19  fraud, and/or oppression as defined in California *Civil Code* § 3294, and Plaintiff should recover,
20  in addition to actual damages, damages to make an example of and punish CPS, in an amount to
21  be determined.

22  **ANSWER:**  CPS denies the allegations of Paragraph 69.

23  70.  Plaintiff has incurred and, during the pendency of this action, will incur expenses
24  for attorneys' fees and costs herein. Such attorneys' fees are necessary for the prosecution of this
25  action. The exact sum of such attorneys' fees and costs is presently unascertained and Plaintiff
26  requests the Court's permission to amend this claim for costs and attorneys' fees when the
27  amounts are determined.

28

**ANSWER:**   CPS lacks sufficient information to admit or deny the allegations in Paragraph 70, and therefore per Rule 8(b)(5) this has the effect of a denial. CPS expressly denies that Plaintiff is entitled to recover attorneys' fees in this matter.

### FIRST CAUSE OF ACTION
### (Negligence Against All Defendants)

71.     Plaintiff realleges and incorporates herein by reference the allegations Contained in each of the preceding paragraphs.

**ANSWER:**   CPS incorporates herein by reference all of its answers and responses contained in each of the preceding paragraphs.

72.     Defendants, and each of them, had a duty and breached their duty to use reasonable care in the manufacture, formulation, mixing, packaging, handling, storage, distribution, and/or transportation of Nitrogen Materials.  Defendants, and each of them, had a duty and breached their duty to avoid manufacturing, formulating, mixing, packaging, handling, storing, distributing, and/or transporting Nitrogen Materials in a manner that would cause injury to Plaintiff, the public health, and the environment.

**ANSWER:**   CPS denies the allegations of Paragraph 72.

73.     Defendants, and each of them, negligently, carelessly, and/or recklessly manufactured, formulated, mixed, packaged, handled, stored, distributed, and/or transported Nitrogen Materials and, thereby, breached their duty to use reasonable care to prevent harm to property, the public health and the environment, by spilling, leaking, discharging, disposing of and/or otherwise releasing Nitrogen Materials into or onto land in the vicinity of Plaintiff's Well 26, thus causing the nitrate contamination of Plaintiff's Well 26 and water supply.  In light of the special hazards and environmental risks associated with the handling and release of Nitrogen Materials, Defendants were engaged in extremely dangerous activities where the risk of harm was so great that their failure to use extreme caution, in addition to their failure to use reasonable care, constitutes a breach of their aforementioned duties.

**ANSWER:**   CPS denies the allegations of Paragraph 73.

\\\

74. At all times relevant herein, the contamination of Plaintiff's Well 26 and the groundwater supply on which it relies was a foreseeable consequence of Defendants' acts and omissions, because, among other things, Defendants, and each of them, knew or should have known that: (i) spilling, leaking, discharging, disposing of and/or otherwise releasing Nitrogen Materials into or onto land and/or temporarily ponded surface water creates a risk of nitrate groundwater contamination; (ii) a public drinking water supply well was and is located in the immediate vicinity of the CPS Facility and groundwater underlying the CPS Facility was and is being used as a source of public water supply; and (iii) nitrate contamination of a public water supply can render such water supply unfit and/or unusable for human consumption, pose an acute threat to public health and, especially, to babies and pregnant women, and burden public water suppliers and their ratepayers with significant remedial costs.

**ANSWER:** CPS denies the allegations of Paragraph 74.

75. Despite Defendants' knowledge of the threat posed by nitrate contamination, Defendants, and each of them, negligently, carelessly, and/or recklessly manufactured, formulated, mixed, packaged, handled, stored, distributed, and/or transported Nitrogen Materials, and, in doing so, breached their duty to use reasonable care, by, among other things:

a) Failing to adequately control, manage, and/or maintain their operations, facilities, and/or transportation infrastructure so as to avoid spilling, leaking, discharging, disposing of and/or otherwise releasing Nitrogen Materials into or onto land in the vicinity of Plaintiff's Well 26.

b) Failing to take the necessary precautionary measures and/or make the necessary improvements and/or alterations to their operations, facilities, and/or transportation infrastructure to avoid and/or mitigate against spills, leaks, discharges, disposals, and/or releases of Nitrogen Materials into or onto land in the vicinity of Plaintiff's Well 26.

c) Failing to take measures to investigate (the source and extent of), remove, and/or remediate contamination caused by Nitrogen Materials spilled,

1   |   leaked, discharged, disposed of and/or otherwise released by Defendants
2   |   into or onto land in the vicinity of Plaintiff's Well 26.

3   |   d)   Failing to notify Plaintiff and the proper regulatory authorities when CPS
4   |   became aware that the CPS Facility was contaminated by nitrate, despite
5   |   the obvious and immediate threat that contamination posed and still poses
6   |   to Plaintiff, public health, and the environment.

7   **ANSWER:**   CPS denies the allegations of Paragraph 75 and all of its subparts.

8   76.   As a direct and proximate result of Defendants' negligent acts and omissions as
9   alleged herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and continue to
10   be, contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing
11   significant injury and damage to property in which Plaintiff has a possessory interest. As a direct
12   and proximate result of such injury and damage to Plaintiff's property, Plaintiff has suffered, and
13   will continue to suffer, substantial damages, including but not limited to past, current and future
14   costs and expenses associated with the loss of use, restoration, repair, remediation, and/or
15   replacement of the damaged property, as alleged herein, in an amount to be proved at trial.
16   Defendants, and each of them, are jointly and severally liable for all such damages, and Plaintiff
17   is entitled to recover all such damages in this action.

18   **ANSWER:**   CPS denies the allegations of Paragraph 76.

19   77.   Defendant CPS committed the above-described acts and omissions knowingly,
20   willfully, and with oppression, fraud, and/or malice. Such acts and omissions include, but are not
21   limited to, the following. In February 2010, CPS confirmed the presence of extensive nitrate
22   contamination in soil and surface water at the CPS Facility, in close proximity to Plaintiff's Well
23   26, a public water supply well. Despite also knowing, as of at least February 2010, that nitrate in
24   drinking water can pose an acute threat to public health and, especially, the health of babies and
25   pregnant women, CPS: (i) failed to take action to remove or otherwise remediate the nitrate
26   contamination at its CPS Facility until January 2012 and, therefore, knowingly and willfully
27   permitted nitrate to leach unabated for 23 months from soil and surface water at its CPS Facility
28   into groundwater and contaminate the water pumped by Plaintiff's Well 26; (ii) failed to notify

- 29 -

1  Plaintiff and the proper regulatory authorities, in violation of State law, when it first became
2  aware that the CPS Facility was contaminated by extremely high levels of nitrate, despite the
3  obvious threat the contamination posed to waters of the State of California and, in particular,
4  water pumped by Well 26; and (iii) attempted to benefit from its failure to report the nitrate
5  contamination at its CPS Facility to Plaintiff and the authorities by destroying, spoiling, covering
6  up, and/or altering evidence at the CPS Facility relevant to the cause, nature, extent, and/or
7  duration of the nitrate contamination that it has caused and continues to cause. Such conduct is
8  reprehensible, despicable, and was performed to maximize profits and avoid the attendant costs
9  and reputational damage associated with causing environmental contamination, in conscious
10 disregard of the probable dangerous-consequences of that conduct and its foreseeable impact
11 upon public health, the environment, and property, including the water pumped by Plaintiff's
12 Well 26. Therefore, Plaintiff requests an award of exemplary damages in an amount that is
13 sufficient to punish Defendant CPS and that fairly reflects the aggravating circumstances alleged
14 herein.

15 **ANSWER:**   CPS denies the allegations of Paragraph 77.

16 **WHEREFORE,** Defendant CPS prays that judgment be entered in its favor and against
17 Plaintiff Oildale Mutual Water Company and that Defendant CPS be awarded its costs incurred
18 in defense of Plaintiff's claims and that it be awarded any additional relief that is just and proper.

19                     **SECOND CAUSE OF ACTION**
                   **(Negligence *Per Se* Against All Defendants)**
20

21     78.    Plaintiff realleges and incorporates herein by reference the allegations contained
22 in each of the preceding paragraphs.

23 **ANSWER:**   CPS incorporates herein by reference its answers and responses contained in each
   of the preceding paragraphs.
24

25     79.    Defendants, and each of them, had a duty to comply with, and to refrain from
26 violating, statutes and regulations governing the spillage, leakage, discharge, disposal and/or
27 release of Nitrogen Materials. Defendants, and each of them, violated applicable statutes and
28 regulations and, thereby, failed to exercise reasonable care.

1  **ANSWER:** CPS admits that is has a duty to comply with applicable laws and regulations; CPS

2  denies the remaining allegations of Paragraph 79.

3  80. Defendants, and each of them, negligently, carelessly, and/or recklessly

4  manufactured, formulated, mixed, packaged, handled, stored, distributed, and/or transported

5  Nitrogen Materials and, in the process of so doing, spilled, leaked, discharged, disposed of and/or

6  otherwise released Nitrogen Materials into or onto land in the vicinity of Plaintiff's Well 26, thus

7  causing the nitrate contamination alleged herein.

8  **ANSWER:** CPS denies the allegations of Paragraph 80.

9  81. Defendants' negligent, careless, and/or reckless acts and omissions, which directly

10  and proximately caused the nitrate contamination of Plaintiff s Well 26 and water supply,

11  constitute violations of State statutes and regulations — including but not limited to California

12  *Water Code* §§ 13260, 13264, and 13350; California *Health & Safety Code* § 5411; and

13  California *Fish & Game Code* § 5650 — which set a standard of care or conduct to protect public

14  health and the environment.

15  **ANSWER:** CPS denies the allegations of Paragraph 81.

16  82. Defendants, and each of them, failed to report to the proper authorities their

17  known spills, leaks, discharges, disposals and/or releases of waste and/or hazardous substances

18  that resulted in nitrate contamination, which posed a clear, obvious, known, and direct threat to

19  waters of the State of California and, in particular, Plaintiff's Well 26, in violation of State

20  statutes and regulations, including but not limited to the following: California *Water Code*

21  §§ 13260, 13264, and 13271; and California *Health & Safety Code* § 5411.5. Defendants' failure

22  to comply with these statutes directly and proximately caused and/or contributed to the nitrate

23  contamination of Plaintiff's Well 26 and water supply.

24  **ANSWER:** CPS denies the allegations of Paragraph 82.

25  \\\

26  \\\

27  \\\

28  \\\

83. Based on Defendants' aforementioned statutory and regulatory violations, Defendants' acts and omissions, as alleged herein, constitute negligence *per se*. Plaintiff's investigation and discovery are not yet complete and, therefore, Plaintiff will seek leave of Court to amend the complaint to allege additional violations or, in the alternative, to give notice to Defendants of any additional statutory violations, when determined.

**ANSWER:**   CPS denies the allegations of Paragraph 83.

84. As a direct and proximate result of Defendants' acts and omissions, as alleged herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and continue to be, contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing significant injury and damage to property in which Plaintiff has a possessory interest. As a direct and proximate result of such injury and damage to Plaintiff's property, Plaintiff has suffered, and will continue to suffer, substantial damages, including but not limited to past, current and future costs and expenses associated with the loss of use, restoration, repair, remediation, and/or replacement of the damaged property, as alleged herein, in an amount to be proved at trial. Defendants, and each of them, are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages in this action.

**ANSWER:**   CPS denies the allegations of Paragraph 84.

85. The damage resulting from Defendants' statutory and regulatory violations is of the type the statutes and regulations were designed to prevent. Plaintiff is and has been a member of a class of persons intended to be protected under said statutes and regulations.

**ANSWER:**   CPS denies the allegations of Paragraph 85.

86. For the reasons set forth and specifically alleged in Paragraph 77, Plaintiff is entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish CPS and that fairly reflects the aggravating circumstances alleged herein.

**ANSWER:**   CPS denies the allegations of Paragraph 86.

\\\

\\\

\\\

1      **WHEREFORE**, Defendant CPS prays that judgment be entered in its favor and against

2 Plaintiff Oildale Mutual Water Company and that Defendant CPS be awarded its costs incurred

3 in defense of Plaintiff's claims and that it be awarded any additional relief that is just and proper.

### THIRD CAUSE OF ACTION
**(Continuing Private Nuisance Against All Defendants)**

6     87.    Plaintiff realleges and incorporates herein by reference the allegations contained

7 in each of the preceding paragraphs.

8 **ANSWER:**    CPS incorporates herein by reference its answers and responses contained in each
of the preceding paragraphs.

10     88.    Plaintiff is the owner of land, easements and water rights which permit it to

11 extract groundwater for use in its Water System, including the groundwater it extracts from

12 Well 26.

13 **ANSWER:**    CPS lacks sufficient information to admit or deny the allegations set forth in
Paragraph 88, and therefore per Rule 8(b)(5) this has the effect of a denial.

15     89.    The negligent, reckless, intentional and/or ultrahazardous acts and omissions of

16 Defendants, and each of them, as alleged herein, have resulted in the continuing contamination of

17 Plaintiff's Well 26 and the groundwater that supplies it by nitrate, and constitutes a nuisance

18 under California *Civil Code* §§ 3479 and 3481. Each such Defendant has caused, maintained,

19 assisted and/or participated in such nuisance, and is a substantial contributor to such nuisance.

20 **ANSWER:**    CPS denies the allegations of Paragraph 89.

21     90.    Defendants have caused and/or permitted the nuisance to Plaintiff's Well 26 and

22 water supply as a result of unnecessary, unreasonable, and injurious methods of manufacturing,

23 formulating, mixing, packaging, handling, storing, distributing, and/or transporting Nitrogen

24 Materials at, to, or from the CPS Facility, or otherwise in close proximity to Plaintiff's Well 26.

25 **ANSWER:**    CPS denies the allegations of Paragraph 90.

26     91.    The nuisance caused, contributed to, maintained, assisted in and/or participated in

27 by Defendants, and each of them, has caused substantial injury to Plaintiff's Well 26 and the

28 groundwater that supplies it, in which Plaintiff has a significant, possessory property interest.

1    The nuisance alleged herein has and continues to substantially and unreasonably interfere with,

2    obstruct, and/or disturb Plaintiff's right to extract, use, and enjoy groundwater from its Well 26.

3    **ANSWER:**    CPS denies the allegations of Paragraph 91.

4         92.    Plaintiff did not consent to Defendants' acts and omissions, as alleged herein,

5    which constitute a nuisance.

6    **ANSWER:**    CPS denies the allegations of Paragraph 92.

7         93.    An ordinary person would be reasonably annoyed and/or disturbed if, as has

8    happened to Plaintiff, Defendants' acts and omissions caused his/her/its drinking water supply to

9    become contaminated to the point where it could no longer be used.

10   **ANSWER:**    CPS denies the allegations of Paragraph 93.

11        94.    The contamination of Plaintiff's Well 26 and water supply, as alleged herein, has

12   varied over time and has not yet ceased.  Nitrate continues to migrate into and enter Plaintiff's

13   Well 26 and water supply.  The contamination alleged herein is reasonably abatable.

14   **ANSWER:**    CPS lacks sufficient information to admit or deny the allegations set forth in
     Paragraph 94, and therefore per Rule 8(b)(5) this has the effect of a denial.
15

16        95.    In creating the nuisance alleged herein, Defendants, and each of them, acted with

17   full knowledge of the consequences and damages that would foreseeably be caused by their acts

18   and omissions.

19   **ANSWER:**    CPS denies the allegations of Paragraph 95.

20        96.    As a direct and proximate result of Defendants' acts and omissions as alleged

21   herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and continue to be,

22   contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing

23   significant injury and damage to property in which Plaintiff has a possessory interest.  As a direct

24   and proximate result of such injury and damage to Plaintiff's property, Plaintiff has suffered, and

25   will continue to suffer, substantial damages, including but not limited to past, current and future

26   costs and expenses associated with the loss of use, restoration, repair, remediation, and/or

27   replacement of the damaged property, as alleged herein, in an amount to be proved at trial.

28

1   Defendants, and each of them, are jointly and severally liable for all such damages, and Plaintiff

2   is entitled to recover all such damages in this action.

3   **ANSWER:**   CPS denies the allegations of Paragraph 96.

4           97.     Unless Defendants, and each of them, abate the nuisance that they have caused,

5   through their acts and omissions, Plaintiff will continue to incur harm related to the ongoing

6   nitrate contamination of Plaintiff's Well 26 and water supply.

7   **ANSWER:**   CPS denies the allegations of Paragraph 97.

8           98.     For the reasons set forth and specifically alleged in Paragraph 77, Plaintiff is

9   entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish

10  CPS and that fairly reflects the aggravating circumstances alleged herein.

11  **ANSWER:**   CPS denies the allegations of Paragraph 98.

12          **WHEREFORE,** Defendant CPS prays that judgment be entered in its favor and against

13  Plaintiff Oildale Mutual Water Company and that Defendant CPS be awarded its costs incurred

14  in defense of Plaintiff's claims and that it be awarded any additional relief that is just and proper.

15                              **FOURTH CAUSE OF ACTION**
                    **(Continuing Public Nuisance Against All Defendants)**
16

17          99.     Plaintiff realleges and incorporates herein by reference the allegations contained

18  in each of the preceding paragraphs.

19  **ANSWER:**   CPS incorporates herein by reference its answers and responses contained in each
    of the preceding paragraphs.
20

21          100.    Plaintiff is the owner of land, easements, and water rights which permit it to

22  extract groundwater for use in its Water System, including Well 26.

23  **ANSWER:**   CPS lacks sufficient information to admit or deny the allegations set forth in
    Paragraph 100, and therefore per Rule 8(b)(5) this has the effect of a denial.
24

25          101.    The negligent, reckless, intentional, and/or ultrahazardous acts and omissions of

26  Defendants, and each of them, as alleged herein, have resulted in the continuing contamination of

27  Plaintiff's Well 26 and the groundwater that supplies it by nitrate, and constitutes a nuisance

28  under California *Civil Code* §§ 3479, 3480, and 3493.  Each such Defendant has caused,

                                          - 35 -

1  maintained, assisted and/or participated in such nuisance, and is a substantial contributor to such

2  nuisance.

3  **ANSWER:**   CPS denies the allegations of Paragraph 101.

4      102.   Defendants have caused and/or permitted the nuisance to Plaintiff's Well 26 and

5  water supply as a result of unnecessary, unreasonable, and injurious methods of manufacturing,

6  formulating, mixing, packaging, handling, storing, distributing, and/or transporting Nitrogen

7  Materials at, to, or from the CPS Facility, or otherwise in close proximity to Plaintiff's Well 26.

8  **ANSWER:**   CPS denies the allegations of Paragraph 102.

9      103.   The nuisance caused, contributed to, maintained, assisted in and/or participated in

10  by Defendants, and each of them, affects at the same time an entire community and/or a

11  considerable number of persons, in that, among other things, (i) the nuisance perpetrated by

12  Defendants has caused harm to waters of the State of California, which are a quintessential public

13  resource; and (ii) Defendants' pollution has fouled a source of public drinking water used by as

14  many as 26,000 people with harmful levels of a toxic compound, and thus created a significant

15  risk to public health.

16  **ANSWER:**   CPS denies the allegations of Paragraph 103.

17      104.   The nuisance caused, contributed to, maintained, assisted in and/or participated in

18  by Defendants, and each of them, is especially injurious to Plaintiff, who has suffered harm that

19  is different from the type of harm suffered by others, as the nuisance has contaminated Plaintiff's

20  Well 26 and water supply, in which Plaintiff has a significant, possessory property interest.  The

21  nuisance alleged herein has and continues to substantially and unreasonably interfere with,

22  obstruct and/or disturb Plaintiff's right to extract, use and enjoy groundwater from Well 26.

23  **ANSWER:**   CPS denies the allegations of Paragraph 104.

24      105.   Plaintiff did not consent to Defendants' acts and omissions, as alleged herein,

25  which constitute a nuisance.

26  **ANSWER:**   CPS denies the allegations of Paragraph 105.

27  \\\

28

DEFENDANT CPS' ANSWER TO PLAINTIFF'S COMPLAINT

106. An ordinary person would be reasonably annoyed and/or disturbed if, as has happened to Plaintiff, Defendants' acts and omissions caused his/her/its drinking water supply to become contaminated to the point where it could no longer be used.

**ANSWER:** CPS denies the allegations of Paragraph 106.

107. The contamination of Plaintiff's Well 26 and water supply, as alleged herein, has varied over time and has not yet ceased. Nitrate continues to migrate into and enter Plaintiff's Well 26 and water supply. The contamination alleged herein is reasonably abatable.

**ANSWER:** CPS lacks sufficient information to admit or deny the allegations set forth in Paragraph 107, and therefore per Rule 8(b)(5) this has the effect of a denial.

108. In creating the nuisance alleged herein, Defendants, and each of them, acted with full knowledge of the consequences and damages that would foreseeably be caused by their acts and omissions.

**ANSWER:** CPS denies the allegations of Paragraph 108.

109. As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and continue to be, contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing significant injury and damage to property in which Plaintiff has a possessory interest. As a direct and proximate result of such injury and damage to Plaintiff's property, Plaintiff has suffered, and will continue to suffer, substantial damages, including but not limited to past, current and future costs and expenses associated with the loss of use, restoration, repair, remediation, and/or replacement of the damaged property, as alleged herein, in an amount to be proved at trial. Defendants, and each of them, are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages in this action.

**ANSWER:** CPS denies the allegations of Paragraph 109

110. Unless Defendants, and each of them, abate the nuisance that they have caused, through their acts and omissions, Plaintiff will continue to incur harm related to the ongoing nitrate contamination of Plaintiff's Well 26 and water supply.

**ANSWER:** CPS denies the allegations of Paragraph 110.

111.   For the reasons set forth and specifically alleged in Paragraph 77, Plaintiff is entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish CPS and that fairly reflects the aggravating circumstances alleged herein.

**ANSWER:**   CPS denies the allegations of Paragraph 111.

**WHEREFORE,** Defendant CPS prays that judgment be entered in its favor and against Plaintiff Oildale Mutual Water Company and that Defendant CPS be awarded its costs incurred in defense of Plaintiff's claims and that it be awarded any additional relief that is just and proper.

**FIFTH CAUSE OF ACTION**
**(Continuing Private Nuisance *Per Se* Against All Defendants)**

112.   Plaintiff realleges and incorporates herein by reference the allegations contained in each of the preceding paragraphs.

**ANSWER:**   CPS incorporates herein by reference its answers and responses contained in each of the preceding paragraphs.

113.   Plaintiff is the owner of land, easements and water rights which permit it to extract groundwater for use in its Water System, including Well 26.

**ANSWER:**   CPS lacks sufficient information to admit or deny the allegations set forth in Paragraph 113, and therefore per Rule 8(b)(5) this has the effect of a denial.

114.   The negligent, reckless, intentional and/or ultrahazardous acts and omissions of Defendants, and each of them, as alleged herein, have resulted in the continuing contamination of Plaintiff's Well 26 and the groundwater that supplies it by nitrate, and constitutes a nuisance pursuant to State statutes and regulations — including but not limited to California *Water Code* § 13050(m) and California *Health & Safety Code* § 5410(f) — which set a standard of care or conduct to protect public health and the environment.  Each Defendant has caused, maintained, assisted and/or participated in the aforementioned nuisance *per se*, and is a substantial contributor to such nuisance.

**ANSWER:**   CPS denies the allegations of Paragraph 114.

\\\

\\\

1   115.   Based on Defendants' aforementioned statutory and regulatory violations,
2   Defendants' acts and omissions, as alleged herein, constitute nuisance *per se*.   Plaintiff's
3   investigation and discovery are not yet complete and, therefore, Plaintiff will seek leave of Court
4   to amend the complaint to allege additional violations or, in the alternative, to give notice to
5   Defendants of any additional statutory violations, when determined.

6   **ANSWER:**   CPS denies the allegations of Paragraph 115.

7   116.   The damage resulting from Defendants' statutory and regulatory violations is of
8   the type the statutes and regulations were designed to prevent.   Plaintiff is and has been a
9   member of a class of persons intended to be protected under said statutes and regulations.

10   **ANSWER:**   CPS denies the allegations of Paragraph 116.

11   117.   The nuisance *per se* caused, contributed to, maintained, assisted in and/or
12   participated in by Defendants, and each of them, has caused substantial injury to Plaintiff's Well
13   26 and the groundwater that supplies it, in which Plaintiff has a significant, possessory property
14   interest.   The nuisance *per se* alleged herein has and continues to substantially and unreasonably
15   interfere with, obstruct, and/or disturb Plaintiff's right to extract, use, and enjoy groundwater
16   from its Well 26.   Plaintiff is specially and adversely affected by the nuisance.

17   **ANSWER:**   CPS denies the allegations of Paragraph 117.

18   118.   Plaintiff did not consent to Defendants' acts and omissions, as alleged herein,
19   which constitute a nuisance *per se*.

20   **ANSWER:**   CPS denies the allegations of Paragraph 118.

21   119.   The contamination of Plaintiff's Well 26 and water supply, as alleged herein, has
22   varied over time and has not yet ceased.   Nitrate continues to migrate into and enter Plaintiff's
23   Well 26 and water supply.   The contamination alleged herein is reasonably abatable.

24   **ANSWER:**   CPS lacks sufficient information to admit or deny the allegations set forth in
    Paragraph 119, and therefore per Rule 8(b)(5) this has the effect of a denial.
25

26   120.   In creating the nuisance *per se* alleged herein, Defendants, and each of them, acted
27   with full knowledge of the consequences and damages that would foreseeably be caused by their
28   acts and omissions.

1    **ANSWER:**    CPS denies the allegations of Paragraph 120.

2        121.    As a direct and proximate result of Defendants' acts and omissions as alleged

3    herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and continue to be,

4    contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing

5    significant injury and damage to property in which Plaintiff has a possessory interest. As a direct

6    and proximate result of such injury and damage to Plaintiff's property, Plaintiff has suffered, and

7    will continue to suffer, substantial damages, including but not limited to past, current and future

8    costs and expenses associated with the loss of use, restoration, repair, remediation, and/or

9    replacement of the damaged property, as alleged herein, in an amount to be proved at trial.

10   Defendants, and each of them, are jointly and severally liable for all such damages, and Plaintiff

11   is entitled to recover all such damages in this action.

12   **ANSWER:**    CPS denies the allegations of Paragraph 121.

13       122.    Unless Defendants, and each of them, abate the nuisance *per se* that they have

14   caused, through their acts and omissions, Plaintiff will continue to incur harm related to the

15   ongoing nitrate contamination of Plaintiff's Well 26 and water supply.

16   **ANSWER:**    CPS denies the allegations of Paragraph 122.

17       123.    For the reasons set forth and specifically alleged in Paragraph 77, Plaintiff is

18   entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish

19   CPS and that fairly reflects the aggravating circumstances alleged herein.

20   **ANSWER:**    CPS denies the allegations of Paragraph 123.

21       **WHEREFORE,** Defendant CPS prays that judgment be entered in its favor and against

22   Plaintiff Oildale Mutual Water Company and that Defendant CPS be awarded its costs incurred

23   in defense of Plaintiff's claims and that it be awarded any additional relief that is just and proper.

24                    **SIXTH CAUSE OF ACTION**
            **(Continuing Public Nuisance *Per Se* Against All Defendants)**
25

26       124.    Plaintiff realleges and incorporates herein by reference the allegations contained

27   in each of the preceding paragraphs.

28   \\\

1  **ANSWER:**   CPS incorporates herein by reference its answers and responses contained in each
2  of the preceding paragraphs.

3       125.   Plaintiff is the owner of land, easements and water rights which permit it to
4  extract groundwater for use in its Water System, including Well 26.

5  **ANSWER:**   CPS lacks sufficient information to admit or deny the allegations set forth in
   Paragraph 125, and therefore per Rule 8(b)(5) this has the effect of a denial.
6

7       126.   The negligent, reckless, intentional and/or ultrahazardous acts and omissions of
8  Defendants, and each of them, as alleged herein, have resulted in the continuing contamination of
9  Plaintiff's Well 26 and the groundwater that supplies it by nitrate, and constitutes a nuisance
10  pursuant to State statutes and regulations — including but not limited to California *Water Code*
11  § 13050(m) and California *Health & Safety Code* § 5410(f) — which set a standard of care or
12  conduct to protect public health and the environment.  Each Defendant has caused, maintained,
13  assisted and/or participated in the aforementioned nuisance *per se*, and is a substantial contributor
14  to such nuisance.

15  **ANSWER:**   CPS denies the allegations of Paragraph 126.

16       127.   Based on Defendants' aforementioned statutory and regulatory violations,
17  Defendants' acts and omissions, as alleged herein, constitute nuisance *per se*.   Plaintiff's
18  investigation and discovery are not yet complete and, therefore, Plaintiff will seek leave of Court
19  to amend the complaint to allege additional violations or, in the alternative, to give notice to
20  Defendants of any additional statutory violations, when determined.

21  **ANSWER:**   CPS denies that it has done or failed to do anything constituting nuisance per se,
   and therefore CPS denies all allegations of Paragraph 127.  To the extent Plaintiff obtains leave
22  of Court and amends its Compliant, CPS will respond, as appropriate, at that time.

23       128.   The damage resulting from Defendants' statutory and regulatory violations is of
24  the type the statutes and regulations were designed to prevent.   Plaintiff is and has been a
25  member of a class of persons intended to be protected under said statutes and regulations.

26  **ANSWER:**   CPS denies the allegations of Paragraph 128.

27  \\\

28  \\\

-41-

1    129.   The nuisance *per se* caused, contributed to, maintained, assisted in and/or
2    participated in by Defendants, and each of them, affects at the same time an entire community
3    and/or a considerable number of persons, in that, among other things, (i) the nuisance perpetrated
4    by Defendants has caused harm to waters of the State of California, which are a quintessential
5    public resource; and (ii) Defendants' pollution has fouled a source of public drinking water used
6    by as many as 26,000 people with harmful levels of a toxic compound, and thus created a
7    significant risk to public health.

8    **ANSWER:**   CPS denies the allegations of Paragraph 129.

9    130.   The nuisance *per se* caused, contributed to, maintained, assisted in and/or
10   participated in by Defendants, and each of them, is especially injurious to Plaintiff, who has
11   suffered harm that is different from the type of harm suffered by others, as the nuisance has
12   contaminated Plaintiff's Well 26 and the groundwater that supplies it, in which Plaintiff has a
13   significant, possessory property interest. The nuisance *per se* alleged herein has and continues to
14   substantially and unreasonably interfere with, obstruct and/or disturb Plaintiff's right to extract,
15   use and enjoy groundwater from Well 26.

16   **ANSWER:**   CPS denies the allegations of Paragraph 130.

17   131.   Plaintiff did not consent to Defendants' acts and omissions, as alleged herein,
18   which constitute a nuisance *per se*.

19   **ANSWER:**   CPS denies the allegations of Paragraph 131.

20   132.   The contamination of Plaintiff's Well 26 and water supply, as alleged herein, has
21   varied over time and has not yet ceased. Nitrate continues to migrate into and enter Plaintiff's
22   Well 26 and water supply. The contamination alleged herein is reasonably abatable.

23   **ANSWER:**   CPS lacks sufficient information to admit or deny the allegations set forth in
24   Paragraph 132, and therefore per Rule 8(b)(5) this has the effect of a denial.

25   133.   In creating the nuisance *per se* alleged herein, Defendants, and each of them, acted
26   with full knowledge of the consequences and damages that would foreseeably be caused by their
27   acts and omissions.

28

1    **ANSWER:**    CPS denies the allegations of Paragraph 133.

2        134.    As a direct and proximate result of Defendants' acts and omissions as alleged

3    herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and continue to be,

4    contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing

5    significant injury and damage to property in which Plaintiff has a possessory interest. As a direct

6    and proximate result of such injury and damage to Plaintiff's property, Plaintiff has suffered, and

7    will continue to suffer, substantial damages, including but not limited to past, current and future

8    costs and expenses associated with the loss of use, restoration, repair, remediation, and/or

9    replacement of the damaged property, as alleged herein, in an amount to be proved at trial.

10   Defendants, and each of them, are jointly and severally liable for all such damages, and Plaintiff

11   is entitled to recover all such damages in this action.

12   **ANSWER:**    CPS denies the allegations of Paragraph 134.

13       135.    Unless Defendants, and each of them, abate the nuisance *per se* that they have

14   caused, through their acts and omissions, Plaintiff will continue to incur harm related to the

15   ongoing nitrate contamination of Plaintiff's Well 26 and water supply.

16   **ANSWER:**    CPS denies the allegations of Paragraph 135.

17       136.    For the reasons set forth and specifically alleged in Paragraph 77, Plaintiff is

18   entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish

19   CPS and that fairly reflects the aggravating circumstances alleged herein.

20   **ANSWER:**    CPS denies the allegations of Paragraph 136.

21       **WHEREFORE,** Defendant CPS prays that judgment be entered in its favor and against

22   Plaintiff Oildale Mutual Water Company and that Defendant CPS be awarded its costs incurred

23   in defense of Plaintiff's claims and that it be awarded any additional relief that is just and proper.

24                              **SEVENTH CAUSE OF ACTION**
                         **(Continuing Trespass Against All Defendants)**
25

26       137.    Plaintiff realleges and incorporates herein by reference the allegations contained

27   in each of the preceding paragraphs.

28   \\\

1   **ANSWER:**   CPS incorporates herein by reference its answers and responses contained in each
2   of the preceding paragraphs.

3       138.   Plaintiff is the owner and actual possessor of its Water System, which includes
4   drinking water production wells, including Plaintiff's Well 26.  Plaintiff owns, possesses and
5   actively exercises rights to extract and use groundwater drawn from Well 26.

6   **ANSWER:**   CPS lacks sufficient information to admit or deny the allegations set forth in
7   Paragraph 138, and therefore per Rule 8(b)(5) this has the effect of a denial.

8       139.   Defendants, and each of them, negligently, recklessly and/or intentionally failed to
9   properly manufacture, formulate, mix, package, handle, store, distribute, and/or transport
10  Nitrogen Materials, such that they proximately caused nitrate to enter, invade, intrude upon, and
11  injure Plaintiff's possession of property, by contaminating Plaintiff's Well 26 and water supply.

12  **ANSWER:**   CPS denies the allegations of Paragraph 139.

13      140.   Plaintiff has not consented to, and does not consent to, the contamination alleged
14  herein.  Defendants, and each of them, knew or reasonably should have known that Plaintiff
15  would not consent to this trespass.

16  **ANSWER:**   CPS lacks sufficient information to admit or deny the allegations set forth in
17  Paragraph 140, and therefore per Rule 8(b)(5) this has the effect of a denial.

18      141.   The trespass caused, contributed to, maintained, assisted in and/or participated in
19  by Defendants, and each of them, has caused substantial injury to Plaintiff's Well 26 and the
20  groundwater that supplies it, in which Plaintiff has a significant, possessory property interest.
21  The trespass alleged herein constitutes a physical invasion of Plaintiff's property and has and
22  continues to substantially and unreasonably interfere with, obstruct and/or disturb Plaintiff's
23  property interest in the groundwater drawn by Well 26.

24  **ANSWER:**   CPS denies the allegations of Paragraph 141.

25      142.   The contamination of Plaintiff's Well 26 and water supply, as alleged herein, has
26  varied over time and has not yet ceased.  Nitrate continues to migrate into and enter Plaintiff's
27  Well 26 and water supply.  The contamination alleged herein is reasonably abatable.

28  \\\

1  **ANSWER:**   CPS denies that is has contributed to Plaintiff's alleged contamination; CPS lacks
2  sufficient information to admit or deny as to Plaintiff's alleged contamination and whether it
   could be abated, and therefore per Rule 8(b)(5) this has the effect of a denial.
   CPS denies the remaining allegations of Paragraph 142.
3

4  143.   In creating the trespass alleged herein, Defendants, and each of them, acted with
5  full knowledge of the consequences and damages that would foreseeably be caused by their acts
6  and omissions.

7  **ANSWER:**   CPS denies the allegations of Paragraph 143.

8  144.   As a direct and proximate result of Defendants' acts and omissions as alleged
9  herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and continue to be,
10  contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing
11  significant injury and damage to property in which Plaintiff has a possessory interest.  As a direct
12  and proximate result of such injury and damage to Plaintiff's property, Plaintiff has suffered, and
13  will continue to suffer, substantial damages, including but not limited to past, current and future
14  costs and expenses associated with the loss of use, restoration, repair, remediation, and/or
15  replacement of the damaged property, as alleged herein, in an amount to be proved at trial.
16  Defendants, and each of them, are jointly and severally liable for all such damages, and Plaintiff
17  is entitled to recover all such damages in this action.

18  **ANSWER:**   CPS denies the allegations of Paragraph 144.

19  145.   Unless Defendants, and each of them, abate the trespass that they have caused,
20  through their acts and omissions, Plaintiff will continue to incur harm related to the ongoing
21  nitrate contamination of Plaintiff's Well 26 and water supply.

22  **ANSWER:**   CPS denies the allegations of Paragraph 145.

23  146.   Due to Defendants' trespass, as alleged herein, Plaintiff is entitled to damages
24  pursuant to California *Civil Code* § 3334, which include the value of the use of the property at
25  issue for the duration of the wrongful occupation, the reasonable cost of repair or restoration of
26  the property to its original condition, and the costs, if any, of recovering the possession.

27  \\\

28  \\\

1  **ANSWER:**   CPS denies that it has committed trespass as alleged in the first clause of
Paragraph 146; the remainder of Paragraph 146 calls for legal conclusions to which no response
2  is necessary; insofar as any response is necessary, CPS denies all remaining allegations of
Paragraph 146.
3

4  147.   For the reasons set forth and specifically alleged in Paragraph 77, Plaintiff is

5  entitled to an award of exemplary damages against Defendants that is sufficient to punish these

6  Defendants and that fairly reflects the aggravating circumstances alleged herein.

7  **ANSWER:**   CPS denies the allegations of Paragraph 147.

8  **WHEREFORE,** Defendant CPS prays that judgment be entered in its favor and against

9  Plaintiff Oildale Mutual Water Company and that Defendant CPS be awarded its costs incurred

10  in defense of Plaintiff's claims and that it be awarded any additional relief that is just and proper.

11  **EIGHTH CAUSE OF ACTION**
**(Permanent Private Nuisance Against All Defendants)**
12

13  148.   Plaintiff realleges and incorporates herein by reference the allegations contained

14  in Paragraphs 1 through 86 above.

15  **ANSWER:**   CPS incorporates herein by reference its answers and responses contained in
Paragraphs 1 through 86 above.
16

17  149.   Plaintiff is the owner of land, easements and water rights which permit it to

18  extract groundwater for use in its Water System, including Well 26.

19  **ANSWER:**   CPS lacks sufficient information to admit or deny regarding what Plaintiff may or
may not have consented to, and therefore per Rule 8(b)(5) this has the effect of a denial.  CPS
20  denies the remaining allegations of Paragraph 149.

21  150.   The negligent, reckless, intentional and/or ultrahazardous acts and omissions of

22  Defendants, and each of them, as alleged herein, have resulted in the permanent contamination of

23  Plaintiff's Well 26 and the groundwater that supplies it by nitrate, and constitutes a nuisance

24  under California *Civil Code* §§ 3479 and 3481.   Each such Defendant has caused, maintained,

25  assisted and/or participated in such nuisance, and is a substantial contributor to such nuisance.

26  **ANSWER:**   CPS denies the allegations of Paragraph 150.

27  151.   Defendants have caused and/or permitted the nuisance to Plaintiff's Well 26 and

28  water supply as a result of unnecessary, unreasonable, and injurious methods of manufacturing,

1   formulating, mixing, packaging, handling, storing, distributing, and/or transporting Nitrogen

2   Materials at, to, or from the CPS Facility, or otherwise in close proximity to Plaintiff's Well 26.

3   **ANSWER:**   CPS denies the allegations of Paragraph 151.

4   152.   The nuisance caused, contributed to, maintained, assisted in and/or participated in

5   by Defendants, and each of them, has caused substantial injury to Plaintiff's Well 26 and the

6   groundwater that supplies it, in which Plaintiff has a significant, possessory property interest.

7   The nuisance alleged herein has and will permanently, substantially and unreasonably interfere

8   with, obstruct, and/or disturb Plaintiff's right to extract, use, and enjoy groundwater from its

9   Well 26.

10   **ANSWER:**   CPS denies the allegations of Paragraph 152.

11   153.   Plaintiff did not consent to Defendants' acts and omissions, as alleged herein,

12   which constitute a nuisance.

13   **ANSWER:**   CPS denies the allegations of Paragraph 153.

14   154.   An ordinary person would be reasonably annoyed and/or disturbed if, as has

15   happened to Plaintiff, Defendants' acts and omissions caused his/her/its drinking water supply to

16   become contaminated to the point where it could no longer be used.

17   **ANSWER:**   CPS denies the allegations of Paragraph 154.

18   155.   The contamination of Plaintiff's Well 26 and water supply, as alleged herein, is

19   not capable of being reasonably abated.  Defendants have not and cannot provide assurances of

20   abatement of the nitrate contamination of Plaintiff's Well 26 and water supply or that the past,

21   present, or future harm to Plaintiff, caused by their acts and omissions, can or will be abated.

22   **ANSWER:**   CPS lacks sufficient information to admit or deny the allegations whether the
23   alleged contamination is or is not capable of being reasonably abated as set forth in Paragraph
     155, and therefore per Rule 8(b)(5) this has the effect of a denial.  CPS denies the remaining
24   allegations of Paragraph 155.

25   156.   In creating the nuisance alleged herein, Defendants, and each of them, acted with

26   full knowledge of the consequences and damages that would foreseeably be caused by their acts

27   and omissions.

28   **ANSWER:**   CPS denies the allegations of Paragraph 156.

1    157.   As a direct and proximate result of Defendants' acts and omissions as alleged

2   herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and are permanently,

3   contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing

4   significant injury and damage to property in which Plaintiff has a possessory interest.  As a direct

5   and proximate result of such permanent injury and damage to Plaintiff's property, Plaintiff has

6   suffered, and will continue to suffer, substantial damages, including but not limited to past,

7   current and future costs and expenses associated with the loss of use and replacement of the

8   damaged property, as alleged herein, in an amount to be proved at trial.  Defendants, and each of

9   them, are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all

10   such damages in this action.

11   **ANSWER:**   CPS denies the allegations of Paragraph 157.

12    158.   For the reasons set forth and specifically alleged in Paragraph 77, Plaintiff is

13   entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish

14   CPS and that fairly reflects the aggravating circumstances alleged herein.

15   **ANSWER:**   CPS denies the allegations of Paragraph 158.

16    **WHEREFORE,** Defendant CPS prays that judgment be entered in its favor and against

17   Plaintiff Oildale Mutual Water Company and that Defendant CPS be awarded its costs incurred

18   in defense of Plaintiff's claims and that it be awarded any additional relief that is just and proper.

19                    **NINTH CAUSE OF ACTION**
                 **(Permanent Public Nuisance Against All Defendants)**
20

21    159.   Plaintiff realleges and incorporates herein by reference the allegations contained

22   in Paragraphs 1 through 86 and 148 through 158 above.

23   **ANSWER:**   CPS incorporates herein by reference its answers and responses contained in
     Paragraphs 1 through 86 and 148 through 158 above.
24

25    160.   Plaintiff is the owner of land, easements and water rights which permit it to

26   extract groundwater for use in its Water System, including Well 26.

27   **ANSWER:**   CPS lacks sufficient information to admit or deny the allegations set forth in
     Paragraph 160, and therefore per Rule 8(b)(5) this has the effect of a denial.
28

1  161.   The negligent, reckless, intentional and/or ultrahazardous acts and omissions of
2  Defendants, and each of them, as alleged herein, have resulted in the permanent contamination of
3  Plaintiff's Well 26 and the groundwater that supplies it by nitrate, and constitutes a nuisance
4  under California *Civil Code* §§ 3479, 3480, and 3493.   Each such Defendant has caused,
5  maintained, assisted and/or participated in such nuisance, and is a substantial contributor to such
6  nuisance.

7  **ANSWER:**   CPS denies the allegations of Paragraph 161.

8  162.   Defendants have caused and/or permitted the nuisance to Plaintiff's Well 26 and
9  water supply as a result of unnecessary, unreasonable, and injurious methods of manufacturing,
10  formulating, mixing, packaging, handling, storing, distributing, and/or transporting Nitrogen
11  Materials at, to, or from the CPS Facility, or otherwise in close proximity to Plaintiff's Well 26.

12  **ANSWER:**   CPS denies the allegations of Paragraph 162.

13  163.   The nuisance caused, contributed to, maintained, assisted in and/or participated in
14  by Defendants, and each of them, affects at the same time an entire community and/or a
15  considerable number of persons, in that, among other things, (i) the nuisance perpetrated by
16  Defendants has caused harm to waters of the State of California, which are a quintessential public
17  resource; and (ii) Defendants' pollution has fouled a source of public drinking water used by as
18  many as 26,000 people with harmful levels of a toxic compound, and thus created a significant
19  risk to public health.

20  **ANSWER:**   CPS denies the allegations of Paragraph 163.

21  164.   The nuisance caused, contributed to, maintained, assisted in and/or participated in
22  by Defendants, and each of them, is especially injurious to Plaintiff, who has suffered harm that
23  is different from the type of harm suffered by others, as the nuisance has contaminated Plaintiff's
24  Well 26 and the groundwater that supplies it, in which Plaintiff has a significant, possessory
25  property interest.   The nuisance alleged herein has and will permanently, substantially and
26  unreasonably interfere with, obstruct and/or disturb Plaintiff's right to extract, use and enjoy
27  groundwater from Well 26.

28  **ANSWER:**   CPS denies the allegations of Paragraph 164.

1     165.    Plaintiff did not consent to Defendants' acts and omissions, as alleged herein,
2  which constitute a nuisance.

3  **ANSWER:**    CPS denies the allegations of Paragraph 165.

4     166.    An ordinary person would be reasonably annoyed and/or disturbed if, as has
5  happened to Plaintiff, Defendants' acts and omissions caused his/her/its drinking water supply to
6  become contaminated to the point where it could no longer be used.

7  **ANSWER:**    CPS denies the allegations of Paragraph 166.

8     167.    The contamination of Plaintiff's Well 26 and water supply, as alleged herein, is
9  not capable of being reasonably abated.  Defendants have not and cannot provide assurances of
10  abatement of the nitrate contamination of Plaintiff's Well 26 and water supply or that the past,
11  present, or future harm to Plaintiff, caused by their acts and omissions, can or will be abated.

12  **ANSWER:**    CPS lacks sufficient information to admit or deny the allegations whether the
    alleged contamination is or is not capable of being reasonably abated as set forth in Paragraph
13  167, and therefore per Rule 8(b)(5) this has the effect of a denial.  CPS denies the remaining
    allegations of Paragraph 167.
14

15     168.    In creating the nuisance alleged herein, Defendants, and each of them, acted with
16  full knowledge of the consequences and damages that would foreseeably be caused by their acts
17  and omissions.

18  **ANSWER:**    CPS denies the allegations of Paragraph 168.

19     169.    As a direct and proximate result of Defendants' acts and omissions as alleged
20  herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and will permanently
21  be, contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing
22  significant injury and damage to property in which Plaintiff has a possessory interest.  As a direct
23  and proximate result of such permanent injury and damage to Plaintiff's property, Plaintiff has
24  suffered, and will continue to suffer, substantial damages, including but not limited to past,
25  current and future costs and expenses associated with the loss of use and replacement of the
26  damaged property, as alleged herein, in an amount to be proved at trial.  Defendants, and each of
27  them, are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all
28  such damages in this action.

1    **ANSWER:**    CPS denies the allegations of Paragraph 169.

2        170.    For the reasons set forth and specifically alleged in Paragraph 77, Plaintiff is

3    entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish

4    CPS and that fairly reflects the aggravating circumstances alleged herein.

5    **ANSWER:**    CPS denies the allegations of Paragraph 170.

6        **WHEREFORE,** Defendant CPS prays that judgment be entered in its favor and against

7    Plaintiff Oildale Mutual Water Company and that Defendant CPS be awarded its costs incurred

8    in defense of Plaintiff's claims and that it be awarded any additional relief that is just and proper.

9                          **TENTH CAUSE OF ACTION**
                  **(Permanent Private Nuisance *Per Se* Against All Defendants)**
10

11       171.    Plaintiff realleges and incorporates herein by reference the allegations contained

12   in Paragraphs 1 through 86 and 148 through 170 above.

13   **ANSWER:**    CPS incorporates herein by reference its answers and responses contained in
     Paragraphs 1 through 86 and 148 through 170 above.
14

15       172.    Plaintiff is the owner of land, easements and water rights which permit it to

16   extract groundwater for use in its Water System, including Well 26.

17   **ANSWER:**    CPS lacks sufficient information to admit or deny the allegations set forth in
     Paragraph 172, and therefore per Rule 8(b)(5) this has the effect of a denial.
18

19       173.    The negligent, reckless, intentional and/or ultrahazardous acts and omissions of

20   Defendants, and each of them, as alleged herein, have resulted in the permanent contamination of

21   Plaintiff's Well 26 and the groundwater that supplies it by nitrate, and constitutes a nuisance

22   pursuant to State statutes and regulations — including but not limited to California *Water Code*

23   § 13050(m) and California *Health & Safety Code* § 5410(f) — which set a standard of care or

24   conduct to protect public health and the environment.  Each Defendant has caused, maintained,

25   assisted and/or participated in the aforementioned nuisance *per se*, and is a substantial contributor

26   to such nuisance.

27   **ANSWER:**    CPS denies the allegations of Paragraph 173.

28   \\\

1    174.    Based on Defendants' aforementioned statutory and regulatory violations,

2    Defendants' acts and omissions, as alleged herein, constitute nuisance *per se*.    Plaintiff s

3    investigation and discovery are not yet complete and, therefore, Plaintiff will seek leave of Court

4    to amend the complaint to allege additional violations or, in the alternative, to give notice to

5    Defendants of any additional statutory violations, when determined.

6    **ANSWER:**    CPS denies the allegations of Paragraph 174.

7    175.    The damage resulting from Defendants' statutory and regulatory violations is of

8    the type the statutes and regulations were designed to prevent.    Plaintiff is and has been a

9    member of a class of persons intended to be protected under said statutes and regulations.

10   **ANSWER:**    CPS denies the allegations of Paragraph 175.

11   176.    The nuisance *per se* caused, contributed to, maintained, assisted in and/or

12   participated in by Defendants, and each of them, has caused substantial injury to Plaintiff's

13   Well 26 and the groundwater that supplies it, in which Plaintiff has a significant, possessory

14   property interest. The nuisance *per se* alleged herein has and will permanently, substantially and

15   unreasonably interfere with, obstruct and/or disturb Plaintiff's right to extract, use and enjoy

16   groundwater from Well 26.

17   **ANSWER:**    CPS denies the allegations of Paragraph 176.

18   177.    Plaintiff did not consent to Defendants' acts and omissions, as alleged herein,

19   which constitute a nuisance *per se*.

20   **ANSWER:**    CPS denies the allegations of Paragraph 177.

21   178.    The contamination of Plaintiff's Well 26 and water supply, as alleged herein, is

22   not capable of being reasonably abated.  Defendants have not and cannot provide assurances of

23   abatement of the nitrate contamination of Plaintiff's Well 26 and water supply or that the past,

24   present, or future harm to Plaintiff, caused by their acts and omissions, can or will be abated.

25   **ANSWER:**    CPS lacks sufficient information to admit or deny the allegations whether the
     alleged contamination is or is not capable of being reasonably abated as set forth in Paragraph
26   178, and therefore per Rule 8(b)(5) this has the effect of a denial.  CPS denies the remaining
     allegations of Paragraph 178.
27

28   \\\

179.    In creating the nuisance *per se* alleged herein, Defendants, and each of them, acted with full knowledge of the consequences and damages that would foreseeably be caused by their acts and omissions.

**ANSWER:**    CPS denies the allegations of Paragraph 179.

180.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and will permanently be, contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing significant injury and damage to property in which Plaintiff has a possessory interest.  As a direct and proximate result of such permanent injury and damage to Plaintiff's property, Plaintiff has suffered, and will continue to suffer, substantial damages, including but not limited to past, current and future costs and expenses associated with the loss of use and replacement of the damaged property, as alleged herein, in an amount to be proved at trial.  Defendants, and each of them, are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages in this action.

**ANSWER:**    CPS denies the allegations of Paragraph 180.

181.    For the reasons set forth and specifically alleged in Paragraph 77, Plaintiff is entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish CPS and that fairly reflects the aggravating circumstances alleged herein.

**ANSWER:**    CPS denies the allegations of Paragraph 181.

**WHEREFORE,** Defendant CPS prays that judgment be entered in its favor and against Plaintiff Oildale Mutual Water Company and that Defendant CPS be awarded its costs incurred in defense of Plaintiff's claims and that it be awarded any additional relief that is just and proper.

## ELEVENTH CAUSE OF ACTION
### (Permanent Public Nuisance *Per Se* Against All Defendants)

182.    Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 86 and 148 through 181 above.

**ANSWER:**    CPS incorporates herein by reference its answers and responses contained in Paragraphs 1 through 86 and 148 through 181 above.

183.   Plaintiff is the owner of land, easements and water rights which permit it to extract groundwater for use in its Water System, including Well 26.

**ANSWER:**   CPS lacks sufficient information to admit or deny the allegations set forth in Paragraph 183, and therefore per Rule 8(b)(5) this has the effect of a denial.

184.   The negligent, reckless, intentional and/or ultrahazardous acts and omissions of Defendants, and each of them, as alleged herein, have resulted in the permanent contamination of Plaintiff's Well 26 and the groundwater that supplies it by nitrate, and constitutes a nuisance pursuant to State statutes and regulations — including but not limited to California *Water Code* § 13050(m) and California *Health & Safety Code* § 5410(f) — which set a standard of care or conduct to protect public health and the environment. Each Defendant has caused, maintained, assisted and/or participated in the aforementioned nuisance *per se*, and is a substantial contributor to such nuisance.

**ANSWER:**   CPS denies the allegations of Paragraph 184.

185.   Based on Defendants' aforementioned statutory and regulatory violations, Defendants' acts and omissions, as alleged herein, constitute nuisance *per se*.   Plaintiff's investigation and discovery are not yet complete and, therefore, Plaintiff will seek leave of Court to amend the complaint to allege additional violations or, in the alternative, to give notice to Defendants of any additional statutory violations, when determined.

**ANSWER:**   CPS denies the allegations of Paragraph 185.

186.   The damage resulting from Defendants' statutory and regulatory violations is of the type the statutes and regulations were designed to prevent.   Plaintiff is and has been a member of a class of persons intended to be protected under said statutes and regulations.

**ANSWER:**   CPS denies the allegations of Paragraph 186.

187.   The nuisance *per se* caused, contributed to, maintained, assisted in and/or participated in by Defendants, and each of them, affects at the same time an entire community and/or a considerable number of persons, in that, among other things, (i) the nuisance perpetrated by Defendants has caused harm to waters of the State of California, which are a quintessential public resource; and (ii) Defendants' pollution has fouled a source of public drinking water used

1  by as many as 26,000 people with harmful levels of a toxic compound, and thus created a

2  significant risk to public health.

3  **ANSWER:**   CPS denies the allegations of Paragraph 187.

4  188.   The nuisance *per se* caused, contributed to, maintained, assisted in and/or

5  participated in by Defendants, and each of them, is especially injurious to Plaintiff, who has

6  suffered harm that is different from the type of harm suffered by others, as the nuisance has

7  contaminated Plaintiff's Well 26 and the groundwater that supplies it, in which Plaintiff has a

8  significant, possessory property interest.   The nuisance *per se* alleged herein has and will

9  permanently, substantially and unreasonably interfere with, obstruct and/or disturb Plaintiff's

10  right to extract, use and enjoy groundwater from Well 26.

11  **ANSWER:**   CPS denies the allegations of Paragraph 188.

12  189.   Plaintiff did not consent to Defendants' acts and omissions, as alleged herein,

13  which constitute a nuisance *per se*.

14  **ANSWER:**   CPS denies the allegations of Paragraph 189.

15  190.   The contamination of Plaintiff's Well 26 and water supply, as alleged herein, is

16  not capable of being reasonably abated.   Defendants have not and cannot provide assurances of

17  abatement of the nitrate contamination of Plaintiff's Well 26 and water supply or that the past,

18  present, or future harm to Plaintiff, caused by their acts and omissions, can or will be abated.

19  **ANSWER:**   CPS lacks sufficient information to admit or deny the allegations whether the
alleged contamination is or is not capable of being reasonably abated as set forth in Paragraph
20  190, and therefore per Rule 8(b)(5) this has the effect of a denial.   CPS denies the remaining
allegations of Paragraph 190.
21

22  191.   In creating the nuisance *per se* alleged herein, Defendants, and each of them, acted

23  with full knowledge of the consequences and damages that would foreseeably be caused by their

24  acts and omissions.

25  **ANSWER:**   CPS denies the allegations of Paragraph 191.

26  192.   As a direct and proximate result of Defendants' acts and omissions as alleged

27  herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and will permanently

28  be, contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing

1  significant injury and damage to property in which Plaintiff has a possessory interest. As a direct

2  and proximate result of such permanent injury and damage to Plaintiff's property, Plaintiff has

3  suffered, and will continue to suffer, substantial damages, including but not limited to past,

4  current and future costs and expenses associated with the loss of use and replacement of the

5  damaged property, as alleged herein, in an amount to be proved at trial. Defendants, and each of

6  them, are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all

7  such damages in this action.

8  **ANSWER:**   CPS denies the allegations of Paragraph 192.

9      193.   For the reasons set forth and specifically alleged in Paragraph 77, Plaintiff is

10  entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish

11  CPS and that fairly reflects the aggravating circumstances alleged herein.

12  **ANSWER:**   CPS denies the allegations of Paragraph 193.

13      **WHEREFORE,** Defendant CPS prays that judgment be entered in its favor and against

14  Plaintiff Oildale Mutual Water Company and that Defendant CPS be awarded its costs incurred

15  in defense of Plaintiff's claims and that it be awarded any additional relief that is just and proper.

16                    **TWELFTH CAUSE OF ACTION**
                     **(Permanent Trespass Against All Defendants)**
17

18      194.   Plaintiff realleges and incorporates herein by reference the allegations contained

19  in Paragraphs 1 through 86 and 148 through 193 above.

20  **ANSWER:**   CPS incorporates herein by reference its answers and responses contained in
    Paragraphs 1 through 86 and 148 through 193 above.
21

22      195.   Plaintiff is the owner and actual possessor of its Water System, which includes

23  drinking water production wells, including Plaintiff's Well 26. Plaintiff owns, possesses and

24  actively exercises rights to extract and use groundwater drawn from Well 26.

25  **ANSWER:**   CPS lacks sufficient information to admit or deny the allegations set forth in
    Paragraph 195, and therefore per Rule 8(b)(5) this has the effect of a denial.
26

27  \\\

28  \\\

1   196.   Defendants, and each of them, negligently, recklessly and/or intentionally failed to

2   properly manufacture, formulate, mix, package, handle, store, distribute, and/or transport

3   Nitrogen Materials, such that they proximately caused nitrate to enter, invade, intrude upon and

4   injure Plaintiff's possession of property, by contaminating Plaintiff's Well 26 and water supply.

5   **ANSWER:**   CPS denies the allegations of Paragraph 196.

6   197.   Plaintiff has not consented to, and does not consent to, the contamination alleged

7   herein.  Defendants, and each of them, knew or reasonably should have known that Plaintiff

8   would not consent to this trespass.

9   **ANSWER:**   CPS denies the allegations of Paragraph 197.

10  198.   The trespass caused, contributed to, maintained, assisted in and/or participated in

11  by Defendants, and each of them, has caused substantial injury to Plaintiff's Well 26 and the

12  groundwater that supplies it, in which Plaintiff has a significant, possessory property interest.

13  The trespass alleged herein constitutes a physical invasion of Plaintiff's property and has and will

14  permanently, substantially and unreasonably interfere with, obstruct and/or disturb Plaintiff's

15  property interest in the groundwater drawn by Well 26.

16  **ANSWER:**   CPS denies the allegations of Paragraph 198.

17  199.   The contamination of Plaintiff's Well 26 and water supply, as alleged herein, is

18  not capable of being reasonably abated.  Defendants have not and cannot provide assurances of

19  abatement of the nitrate contamination of Plaintiff's Well 26 and water supply or that the past,

20  present, or future harm to Plaintiff, caused by their acts and omissions, can or will be abated.

21  **ANSWER:**   CPS lacks sufficient information to admit or deny the allegations whether the
    alleged contamination is or is not capable of being reasonably abated as set forth in Paragraph
22  199, and therefore per Rule 8(b)(5) this has the effect of a denial.  CPS denies the remaining
    allegations of Paragraph 199.
23

24  200.   In creating the trespass alleged herein, Defendants, and each of them, acted with

25  full knowledge of the consequences and damages that would foreseeably be caused by their acts

26  and omissions.

27  **ANSWER:**   CPS denies the allegations of Paragraph 200.

28  \\\

DEFENDANT CPS' ANSWER TO PLAINTIFF'S COMPLAINT

1    201.    As a direct and proximate result of Defendants' acts and omissions as alleged

2    herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and will permanently

3    be, contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing

4    significant injury and damage to property in which Plaintiff has a possessory interest.  As a direct

5    and proximate result of such permanent injury and damage to Plaintiff's property, Plaintiff has

6    suffered, and will continue to suffer, substantial damages, including but not limited to past,

7    current and future costs and expenses associated with the loss of use and replacement of the

8    damaged property, as alleged herein, in an amount to be proved at trial.  Defendants, and each of

9    them, are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all

10   such damages in this action.

11   **ANSWER:**    CPS denies the allegations of Paragraph 201.

12   202.    Due to Defendants' trespass, as alleged herein, Plaintiff is entitled to damages

13   pursuant to California *Civil Code* § 3334, which include the value of the use of the property at

14   issue for the duration of the wrongful occupation.

15   **ANSWER:**    CPS denies the allegations of Paragraph 202.

16   203.    For the reasons set forth and specifically alleged in Paragraph 77, Plaintiff is

17   entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish

18   CPS and that fairly reflects the aggravating circumstances alleged herein.

19   **ANSWER:**    CPS denies the allegations of Paragraph 203.

20   **WHEREFORE,** Defendant CPS prays that judgment be entered in its favor and against

21   Plaintiff Oildale Mutual Water Company and that Defendant CPS be awarded its costs incurred

22   in defense of Plaintiff's claims and that it be awarded any additional relief that is just and proper.

23
                          **THIRTEENTH CAUSE OF ACTION**
                  **(Equitable Indemnity and Contribution Against All Defendants)**
24

25   CPS makes no answer at this time to the allegations contained in Count Thirteenth of the

26   Complaint because contemporaneously with the filing of this Answer and Affirmative Defenses

27   CPS is filing a motion to dismiss pursuant to *Federal Rule of Civil Procedure*, Rule 12.  To the

28

1  extent such motion is subsequently denied, CPS denies each and every allegation of Count

2  Thirteenth of the Complaint.

3  ### FOURTEENTH CAUSE OF ACTION
### (Declaratory Relief Against All Defendants)

4

5  CPS makes no answer at this time to the allegations contained in Count Fourteenth of the

6  Complaint because contemporaneously with the filing of this Answer and Affirmative Defenses

7  CPS is filing a motion to dismiss pursuant to *Federal Rule of Civil Procedure*, Rule 12.  To the

8  extent such motion is subsequently denied, CPS denies each and every allegation of Count

9  Fourteenth of the Complaint.

10 ### FIFTEENTH CAUSE OF ACTION
### (Preliminary and Permanent Injunction and
### Abatement of Nuisance Against All Defendants)

11

12 214.   Plaintiff realleges and incorporates herein by reference the allegations contained

13 in Paragraphs 1 through 147 and 204 through 213 above.

14 **ANSWER:**   CPS incorporates herein by reference its answers and responses contained in
Paragraphs 1 through 147 and 204 through 213 above.

15

16 215.   To date, the Nitrogen Materials that Defendants spilled, leaked, discharged,

17 disposed of and/or otherwise released at the CPS facility and/or otherwise in the immediate

18 vicinity of Well 26, which have caused the nitrate contamination alleged herein, have not been

19 removed or the property at issue remediated, and the nuisance has not been abated by the

20 Defendants.

21 **ANSWER:**   CPS denies the allegations of Paragraph 215.

22 216.   Plaintiff is informed and believes, and based thereon alleges, that Defendants, and

23 each of them, will not abate such nuisance unless affirmatively required to do so by an order of

24 this Court requiring such abatement or by preliminary or permanent injunction herein.

25 **ANSWER:**   CPS denies the allegations of Paragraph 216.

26 \\\

27 \\\

28 \\\

217.   Unless Defendants, and each of them, are so ordered by this Court, nitrate that Defendants released into the subsurface will continue to leach into the aquifer that supplies Plaintiff's Well 26 for years and/or decades to come, substantially increasing Plaintiff s long-term treatment costs and other damages.

**ANSWER:**   CPS denies the allegations of Paragraph 217.

218.   Plaintiff has no plain, speedy, or adequate remedy at law, and injunctive relief is expressly authorized by *Code of Civil Procedure* §§ 526 and 731. Accordingly, Plaintiff requests that the Court issue an injunction directing Defendants, and each of them, to abate the nuisance that they have caused, as alleged herein.

**ANSWER:**   CPS denies that injunction relief is available to Plaintiff.   CPS denies the remaining allegations of Paragraph 218.

**WHEREFORE,** Defendant CPS prays that judgment be entered in its favor and against Plaintiff Oildale Mutual Water Company and that Defendant CPS be awarded its costs incurred in defense of Plaintiff's claims and that it be awarded any additional relief that is just and proper.

**SIXTEENTH CAUSE OF ACTION**
**(Unlawful Business Practices Pursuant to *Business & Professions Code* §§ 17200 et seq.)**

219.   Plaintiff realleges and incorporates herein by reference the allegations contained in each of the preceding paragraphs.

**ANSWER:**   CPS incorporates herein by reference its answers and responses contained in each of the preceding paragraphs.

220.   Plaintiff has standing to pursue this claim because Plaintiff has suffered injury in fact and has suffered damage to its property as a result of Defendants' unlawful business practices.

**ANSWER:**   CPS denies the allegations of Paragraph 220.

221.   By spilling, leaking, discharging, disposing of, and/or otherwise releasing Nitrogen Materials into or onto land in the vicinity of Plaintiff's Well 26, and/or failing to properly report such spills, leaks, discharges, disposals, and/or releases of Nitrogen Materials, Defendants, and each of them, violated California statutes and regulations, including but not

1   limited to the following: California *Water Code* §§ 13050(m), 13260, 13264, 13271, and 13350;

2   California *Health & Safety Code* §§ 5410(f), 5411, and 5411.5; and California *Fish & Game*

3   *Code* § 5650.  All such violations have occurred in connection with and/or as a result of the

4   Defendants' normal business activities, rendering them unlawful business practices within the

5   meaning of California's Unfair Competition Laws, pursuant to California *Business & Professions*

6   *Code* §§ 17200 et seq.

7   **ANSWER:**   CPS denies the allegations of Paragraph 221.

8       222.   As a direct, proximate, and foreseeable result of Defendants' wrongful conduct, as

9   alleged herein, Defendants' business acts, omissions, and/or practices have caused injury to

10   Plaintiff and the public, and Plaintiff is entitled to relief.

11   **ANSWER:**   CPS denies the allegations of Paragraph 222.

12       223.   As a result of the violation by the Defendants, and each of them, of California's

13   Unfair Competition Laws, Plaintiff is entitled to injunctive relief: (i) directing Defendants to fully

14   comply with applicable California statutes and regulations relating to Defendants' unlawful and

15   improper spillage, leakage, discharge, disposal and/or release of Nitrogen Materials into or onto

16   land in the vicinity of Plaintiff's Well 26, and Defendants' attendant unlawful and improper

17   failure to report such releases; and/or (ii) enjoining similar future unlawful acts, omissions,

18   and/or practices by Defendants, as alleged herein.

19   **ANSWER:**   CPS denies the allegations of Paragraph 223

20       **WHEREFORE,** Defendant CPS prays that judgment be entered in its favor and against

21   Plaintiff Oildale Mutual Water Company and that Defendant CPS be awarded its costs incurred

22   in defense of Plaintiff's claims and that it be awarded any additional relief that is just and proper.

23                               **AFFIRMATIVE DEFENSES**

24                               **Affirmative Defense No. 1**

25       Plaintiff pled inconsistent and mutually exclusive facts that cannot be simultaneously

26   true, namely simultaneously claiming (1) continuing and permanent causes of action and (2)

27   public and private causes of action.  Plaintiff must elect its theories and assert facts that are not

28   contradicting of one another at a reasonable point in time.

**Affirmative Defense No. 2**

No judicial controversy exists that would allow for a declaration of rights between the parties going forward.

**Affirmative Defense No. 3**

The facts do not support a granting of the injunctive relief Plaintiff seeks, preliminarily or permanently.

**Affirmative Defense No. 4**

Plaintiff's claim for punitive damages cannot be sustained because an award of punitive damages under California law would violate CPS's procedural and substantive Due Process and Equal Protection rights under the Fifth and Fourteenth Amendments to the United States Constitution and CPS's Due Process and Equal Protection rights under corresponding provisions of the California Constitution, and would be improper under the common law and public policies of the United States and California.

**Affirmative Defense No. 5**

Plaintiff has suffered no discernible injury in fact that would provide for an action under the California *Business and Professions Code* §§17200 et seq., and as a private company Plaintiff does not otherwise have standing to sue.

**Affirmative Defense No. 6**

Plaintiff has not pled facts providing for circumstances sufficient or appropriate for any sort of injunctive relief or declaratory relief.

**Affirmative Defense No. 7**

Each and every alleged cause of action is barred by the doctrine of laches.

**Affirmative Defense No. 8**

Each and every alleged cause of action is barred by the doctrine of waiver.

**Affirmative Defense No. 9**

Each and every alleged cause of action is barred by the doctrine of estoppel.

\\\

\\\

**Affirmative Defense No. 10**

Each and every alleged equitable cause of action is barred by the doctrine of unclean hands.

**Affirmative Defense No. 11**

If the Plaintiff sustained any loss or damage as Plaintiff alleged, then such losses and damages were proximately caused by the negligence of Plaintiff, thereby barring or reducing any recovery by Plaintiff herein.

**Affirmative Defense No. 12**

If Plaintiff sustained any loss or damage as Plaintiff alleged, then such losses and damages were proximately caused by the negligence and fault of persons and parties other than CPS, thereby barring or reducing any recovery by Plaintiff herein.

**Affirmative Defense No. 13**

If Plaintiff suffered or sustained any loss or damage as alleged in Plaintiff's Complaint, then such loss or damage was legally caused or contributed to by the negligence or wrongful conduct of other parties, persons or entities, and that such negligence or wrongful conduct was an intervening and superseding cause of the loss or damage of which Plaintiff complains.

**Affirmative Defense No. 14**

Plaintiff is barred from recovery by reason of Plaintiff's assumption of the risk of whatever loss or damages were sustained.

**Affirmative Defense No. 15**

Each cause of action of the Complaint is barred by §§ 338 and 343 of the California *Code of Civil Procedure* and § 17208 of the California *Business and Professions Code* and any and all other applicable statutes of limitations.

**Affirmative Defense No. 16**

Plaintiff lacks capacity and standing to sue for some or all of the claims it has asserted.

**Affirmative Defense No. 17**

Plaintiff is barred from recovery herein by reason of its failure to join indispensable and necessary parties.

DEFENDANT CPS' ANSWER TO PLAINTIFF'S COMPLAINT

**Affirmative Defense No. 18**

In the event nitrates, nitrogen materials, or other alleged substances were stored, received, released, transported, treated, mixed, or disposed of by CPS, the volume and toxicity of such were *de minimis* and therefore were insufficient as a matter of law to give rise to liability.

**Affirmative Defense No. 19**

Each and every alleged cause of action fails to state a claim upon which relief may be granted.

**Affirmative Defense No. 20**

Plaintiff is barred from recovery of any damages or relief by reason of its failure to take reasonable actions to mitigate the damages alleged in this action.

**Affirmative Defense No. 21**

CPS's conduct was not the proximate cause of the conditions or contamination alleged in the Complaint, nor has its conduct necessitated the incurrence of any abatement, response or remediation costs or damages with respect thereto.

**Affirmative Defense No. 22**

Should CPS have any liability to Plaintiff, which liability is denied, then such liability can be premised only upon CPS's proportionate share of liability, if any, and not premised upon any joint and several liability with any other parties named, unnamed, or to be named in this lawsuit.

**Preservation of Further Affirmative Defenses**

CPS reserves its right to raise additional Affirmative Defenses and amend its Answer on grounds as may be established through discovery, further investigation, and by the evidence in this case.

\\\
\\\
\\\
\\\
\\\
\\\

- 64 -

1   **WHEREFORE**, Defendant CPS prays that judgment be entered in its favor and against

2   Plaintiff Oildale Mutual Water Company and that Defendant CPS be awarded its costs incurred

3   in defense of Plaintiff's claims and that it be awarded any additional relief that is just and proper.

4

5   DATED:  December 19, 2013

6                                                           RESPECTFULLY SUBMITTED,

7

8                                                           __/s/  T. Mark Smith__
                                                            T. Mark Smith

9                                                           Attorneys for Defendant
                                                            CROP PRODUCTION SERVICES, INC.

10

11

12                                          **DEMAND FOR JURY TRIAL**

13          Defendant Crop Production Services, Inc. (including UAP Distribution, Inc., United Agri

14   Products West, UAP West, United Agri Products, United Agri Products Financial Services, Inc.)

15   hereby demands a jury trial on all issues in Plaintiffs' Complaint and Affirmative Defenses thereto.

16   DATED:  December 19, 2013

17                                                          RESPECTFULLY SUBMITTED,

18

19                                                          __/s/  T. Mark Smith__
                                                            T. Mark Smith

20                                                          Attorneys for Defendant
                                                            CROP PRODUCTION SERVICES, INC.

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE (C.C.P. §1013a, 2015.5)

2

*Oildale Mutual Water Company v. Crop Production Services, Inc., et al.*
*United States District Court, Eastern District of California, Fresno Division*

3

*Case No.*

4

    I am employed in the County of Kern, State of California.  I am over the age of 18 and not a

5

party to the within action; my business address is 1430 Truxtun Avenue, Bakersfield, CA 93301.

6

    On December 19, 2013, I served the foregoing document(s) entitled:

7

## DEFENDANT CPS' ANSWER TO PLAINTIFF'S COMPLAINT; DEMAND FOR TRIAL BY JURY

8

9

  —    by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

10

11

  —    by placing _ the original, _ a true copy thereof, enclosed in a sealed enveloped addressed as follows:

12

Todd E. Robins, Esq.

13

Jed J. Borghei, Esq.
Robins & Borghei, LLP

14

649 Mission Street, Suite 500
San Francisco, CA 94105

15

Tel:   (415) 848-8850
Fax:  (415) 974-6745

16

17

  —    **BY MAIL**

18

      —    I deposited such envelope in the mail at Bakersfield, California, with postage thereon fully prepaid.

19

20

      —    I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Bakersfield, California in the ordinary course of business.  The above sealed envelopes were placed for collection and mailing on the above date following ordinary business practice.

21

22

23

24

  —    **BY EXPRESS MAIL**
I deposited such envelopes in a facility regularly maintained by the U.S. Postal Service for receipt of Express Mail, as specified in C.C.P. §1013(c), with Express Mail postage prepaid.

25

26

1

__X__    **BY ELECTRONIC MAIL**
Where notice may be served by electronic service and any accompanying documents may be authorized when a party has agreed to accept service electronically in that action. Electronic service is complete at the time of transmission.

___    **BY OVERNIGHT DELIVERY** (other than Express Mail)
I deposited such envelopes in an envelope or package designated by the express service carrier with delivery fees paid or provided;

___    and deposited such envelope or package in a facility regularly maintained by the express service carrier.

___    delivered such envelope or package to an authorized courier or driver authorized by the express service carrier to receive documents.

___    **BY PERSONAL SERVICE**
I caused such envelope to be hand delivered to the offices of the addressee(s).

___    **BY FACSIMILE**
I transmitted the above-referenced documents by facsimile to the interested parties as listed below.

Executed on December 19, 2013, at Bakersfield, California.

___    (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

__X__    (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

*Nanette Maxey*

NANETTE MAXEY
35810-6