# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **OILDALE MUTUAL WATER COMPANY,** | CASE NO. 1:13-CV-2054 AWI JLT |
| Plaintiff | ON DEFENDANT'S MOTION TO DISMISS |
| v. | |
| **CROP PRODUCTION SERVICES, INC., et al.,** | (Doc. No. 4) |
| **Defendants** | |

This is an environmental contamination case brought by Plaintiff Oildale Mutual Water Co. ("Oildale Water") against Defendant Crop Production Services, Inc. ("Crop"). Oildale Water seeks to recover damages under various state law theories for the nitrate contamination of one its public water supply wells. Crop seeks to dismiss the thirteenth cause of action for equitable indemnity and contribution, and the fourteenth cause of action for declaratory relief. For the reasons that follow, Crop's motion will be granted in part and denied in part.

## BACKGROUND

From the Complaint, Crop is the successor in interest of two former agriculture related business entities. Since 1998, Crop has owned and operated an agricultural chemical storage and distribution facility ("the Facility") located in Bakersfield, California, near Oildale, California. At the Facility, Crop manufactures, formulates, mixes, packages, handles, stores, distributes, and transports substances containing the chemical nitrate. Nitrate is an ingredient, component, constituent in, and/or degradation byproduct of various fertilizers and agricultural chemical

1    products.  Nitrate is an acutely toxic substance in drinking water, and the State of California has
2    set a Maximum Contamination Level for nitrate of 45 milligrams per liter.
3        Oildale Water owns and operates a public water system that provides drinking water to the
4    unincorporated community of Oildale, California.  Part of Oildale Water's water system includes
5    Well 26.  Nitrate containing substances have been leaked, spilled, discharged, disposed of, or
6    otherwise released by Crop in the vicinity of Well 26.  Well 26 is now contaminated by
7    dangerously high levels of nitrate that exceed the 45 mg/L limit.  The California Department of
8    Public Health has prohibited Oildale Water from pumping water from Well 26.  Through
9    negligent, reckless, intentional, and/or ultrahazardous acts or omissions, Crop caused the nitrate
10   contamination of Well 26.  Crop knew or should have known that the materials they released into
11   the environment would breakdown into nitrate, and the nitrate would enter the public water
12   drinking supplies and render those supplies unsafe to consume.
13       Through negligence, nuisance, and trespass based causes of action, Oildale Water seek
14   compensatory and punitive damages, injunctive relief, and declaratory relief.  Oildale seeks to
15   ensure that nitrate is removed from Well 26 or that a suitable replacement to Well 26 is secured, to
16   protect public health and the environment, and to ensure that Crop, who is the responsible party,
17   bears the costs and burdens of the nitrate contamination.

### RULE 12(b)(6) FRAMEWORK

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013); Johnson, 534 F.3d at 1121.  However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the

elements of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Dichter-Mad Family Partners. LLP v. United States, 709 F.3d 749, 761 (9th Cir. 2013). The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 n. 4 (9th Cir. 2012); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Dichter-Mad, 709 F.3d at 761. "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013). The Ninth Circuit has distilled the following principles from *Iqbal* and *Twombly*: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012). However, leave to amend need not be granted if amendment would be futile or if the plaintiff has failed to cure deficiencies despite repeated opportunities. See Mueller v. Aulker, 700 F.3d 1180, 1191 (9th Cir. 2012); Telesaurus VPC. LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

## **DEFENDANT'S MOTION**

*Defendant's Argument*

Crop argues that the thirteenth cause of action for equitable contribution and equitable

indemnity requires joint liability and the payment of monies by one party as a result of a judgment or a settlement. Despite these requirements, the Complaint does not allege joint and several liability between Crop and Oildale Water, that a judgment has been rendered against Oildale Water and Crop, or that Oildale Water has suffered a loss through the payment of a judgment or settlement. Without such allegations, no viable claims are stated.

Crop argues that the fourteenth cause of action for declaratory relief should be dismissed because there is no actual controversy for which rights should be declared on a go forward basis. The cause of action is nothing more than an attempt to seek tort remedies for past conduct. Oildale Water is already pursuing the same issues with the same factual allegations under numerous tort causes of action. The harms, if they exist, have already occurred, and any future harms are being caused by the alleged past actions of Crop.

*Plaintiff's Opposition*

Oildale Water argues that it is not seeking contribution and indemnity, rather it is attempting to obtain a declaration that it would be entitled to contribution and indemnity from Crop for future liability. There is a regulatory agency that is investigating the source of the contamination. That investigation may lead to an attempt to obtain response costs from Oildale Water. The declaratory relief sought would settle the question of future liability for such regulatory costs, and would promote judicial efficiency. If declaratory relief is not addressed here, it is likely that multiple lawsuits would need to be filed.

Additionally, Crop is incorrect that the declaratory relief sought seeks only to redress past wrongs or is duplicative of other claims. The declaratory relief sought is prospective and seeks to address a future situation if the regulatory agency attempts to obtain fees and costs. Further, if the contamination is found to be abatable, the jury could find Crop liable under theories of continuing nuisance and trespass. For claims of continuing nuisance and continuing trespass, only damages that have accrued prior to the filing of a complaint are available. Prospective damages must be sought in successive actions as they accrue. A declaration that establishes the parties' continuing rights and responsibilities would reduce the need for future litigation.

4

*Legal Standard*

    a.    Contribution and Indemnity

Under California law, indemnity either imposes the entire loss on one of two or more tortfeasors or apportions it on the basis comparative fault. Coca-Cola Bottling Co. v. Lucky Stores, Inc., 11 Cal.App.4th 1372, 1378 (1992). Contribution is a creature of statute and distributes the loss equally among all tortfeasors. Id. Indemnity requires a determination of fault on the part of the alleged indemnitor, while contribution requires a showing that one of several joint tortfeasor judgment debtors has paid more than a pro rata share of a judgment. Id.

Claims for contribution are created by two statutes: Code of Civil Procedure § 875 and Civil Code § 1432. Section 875 provides that where "a money judgment has been rendered jointly against two or more defendants in a tort action there shall be a right of contribution among them . . .," but "contribution may be enforced only after one tortfeasor has, by payment, discharged the joint judgment or has paid more than his pro rata share thereof." Cal. Code Civ. Pro. § 875(a), (c). Thus, § 875 provides for the distribution of a loss equally among all tortfeasors, but § 875 contribution comes into existence only after the issuance of a judgment declaring more than one defendant jointly liable to the plaintiff. See Coca-Cola, 11 Cal.App.4th at 1378; see also Richards v. Owens-Illinois, Inc., 14 Cal. 4th 985, 993 (1997). Similarly, with limited exception, § 1432 provides that "a party to a joint, or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him." Cal. Civ. Code § 1432. "The right to contribution embodied in [§]1432 'rests upon principles of equity and natural justice.'" Jessup Farms v. Baldwin, 33 Cal. 3d 639, 651 n.7 (1983). That is, § 1432 codifies the right to equitable contribution. Fireman's Fund Ins. Co. v. Maryland Casualty Co., 65 Cal.App.4t h 1279, 1293 & n.3 (1998). Where two or more parties are jointly liable on an obligation and one of them makes payment of more than its share, the one paying comes into possession of a new obligation against the others for their proportion of what it has paid for them. Morgan Creek Residential v. Kemp, 153 Cal.App.4th 675, 684 (2007).

The right of indemnity is a development of California case law, and is based upon the principle that everyone is responsible for the consequences of his own wrong. Major Clients

5

Agency v. Diemer, 67 Cal.App.4th 1116, 1126-27 (1998).  "A fundamental prerequisite to an action for partial or total equitable indemnity is an actual monetary loss through payment of a judgment or settlement." Western Steamship Lines, Inc. v. San Pedro Peninsula Hosp., 8 Cal.4th 100, 110 (1994); Forensis Group, Inc. v. Frantz, Townsend, & Foldenauer, 130 Cal.App.4th 14, 28 (2005).  Further, "there can be no indemnity without liability," and "unless the prospective indemnitor and indemnitee are jointly and severally liable to the plaintiff there is no basis for indemnity." Forensis, 130 Cal.App.4th at 22-23; Major Clients, 67 Cal.App.4th at 1126-27.  "It is well settled that a cause of action for implied indemnity does not accrue or come into existence until the indemnitee has suffered actual loss through payment. E.L. White, Inc. v. City of Huntington Beach, 21 Cal.3d 497, 506 (1978); Major Clients, 67 Cal.App.4th at 1127.

  b. Declaratory Relief

  California Code of Civil Procedure § 1060 empowers courts to make declarations *inter alia* concerning the rights or duties of a plaintiff with respect to a defendant.  See Cal. Code Civ. Pro. § 1060.  However, California Code of Civil Procedure permits a court to "refuse to [grant declaratory relief] in any case where its declaration or determination is not necessary or proper at the time under all the circumstances." Cal. Code Civ. Pro. § 1061; Meyer v. Sprint Spectrum L.P., 45 Cal.4th 634, 647 (2009).  "Declaratory relief operates prospectively, serving to set controversies at rest before obligations are repudiated, rights are invaded, or wrongs are committed." Doan v. State Farm General Ins. Co., 195 Cal.App.4th 1082, 1096 (2011); Kirkwood v. California State Automobile Assn. Inter-Ins. Bureau, 193 Cal.App.4th 49, 59 (2011).  That is, "declaratory relief operates prospectively to declare future rights, rather than to redress past wrongs." County of San Diego v. State of Cal., 164 Cal.App.4th 580, 607 (2008).  Thus, one purpose of declaratory judgment is to "serve some practical end in quieting or stabilizing an uncertain or disputed jural relation." Meyer, 45 Cal.4th at 647.  "Another purpose is to liquidate doubts with respect to uncertainties or controversies which might otherwise result in subsequent litigation." Id.; see Doan, 195 Cal.App.4th at 1096; Kirkwood, 193 Cal.App.4th at 59.  Further, § 1060 requires that "an actual controversy" exist as to the rights and duties of the parties. Cal. Code Civ. Pro. § 1060.  An "actual controversy" for purposes of § 1060 is "one which admits of

definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts." Selby Realty Co. v. City of San Buenaventura, 10 Cal.3d 110, 117 (1973). An "actual controversy" encompasses a "probable future controversy" when the probable future controversy becomes "ripe," that is when it has "reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." Environmental Defense Project of Sierra County v. County of Sierra, 158 Cal.App.4th 877, 885 (2008). The remedy of declaratory relief is cumulative and does not restrict other remedies. Doan, 195 Cal.App.4th at 1096. "A court is only justified in refusing a declaration because of the availability of another remedy when it concludes that more effective relief could and should be obtained by another procedure, and for that reason a declaration will not serve a useful purpose." Kirkwood, 193 Cal.App.4th at 59-60.

*Discussion*

As an initial matter, there is no dispute between the parties that stand alone causes of action for equitable indemnity and equitable contribution have not yet accrued. No judgments have been awarded regarding Oildale Water and Crop, and no money has been paid pursuant to a judgment or a settlement. Accordingly, the thirteenth cause of action will be dismissed. See Morgan Creek, 153 Cal.App.4th at 684; Forensis, 130 Cal.App.4th at 22-23; Major Clients, 67 Cal.App.4th at 1126-27; Coca-Cola, 11 Cal.App.4th at 1378.

The real dispute between the parties is whether any declaratory relief is appropriate. Paragraph 212 of the Complaint alleges that there is a dispute between the parties regarding obligations and potential obligations for: (a) costs that have been incurred by Oildale Water to the present for investigation and remediation of nitrate in Well 26; (b) the costs that will be incurred for future investigation, characterization, treatment, removal, replacement, and/or remediation activities; (c) prejudgment interest, attorney's fees, and other costs; (d) other and further costs and liabilities as hereafter arise from the presence of nitrate contamination in Well 26. See Complaint ¶ 212. The Court interprets ¶ 212 as requesting declarations that address these four categories.

The first and third categories under ¶ 212 are not the proper subjects of declaratory relief.

1  The first category, costs/damages that have been incurred to the time of filing the Complaint, is
2  not a prospective request.  Costs that have been incurred are by their very nature backward
3  looking, and a method for obtaining compensation for a past injury.  That is, such costs seek to
4  redress a past wrong, which is not the function of a declaratory judgment.  See San Diego, 164
5  Cal.App.4th at 607.  As to the third category, the availability of legal costs and attorney's fees will
6  be a matter of statute.  If a statute provides for legal costs and fees, then they will be awarded if
7  the appropriate criteria are met.  There is nothing to indicate that any applicable statute relating to
8  costs and fees is ambiguous or somehow unenforceable.  The Court sees no purpose in issuing a
9  declaration regarding attorney's fees and legal costs.  See Cal. Code Civ. Pro. § 1061; Meyer, 45
10 Cal.4th at 647.  Without more from Oildale Water, the requests for declarations regarding legal
11 costs and fees and past damages will be dismissed.

12      As discussed above, Oildale Water relies on essentially two arguments in support of the
13 two remaining categories of declaratory relief.  Oildale Water argues that:  (1) there is a
14 controversy regarding possible fees that could be assessed in the future by regulatory agencies,
15 and (2) declaratory relief would alleviate the need for, or aid in obtaining, future relief for
16 continuing nuisances or trespasses.  The Court will address these two arguments separately.

17       First, as to possible future regulatory assessments, the Complaint alleges that Oildale
18 Water sent the Central Valley Regional Water Quality Control Board ("the Board") an e-mail
19 regarding excavations by Crop at its Facility that were intended to remedy contaminated soil.  See
20 Complaint ¶¶ 44, 45.  In May 2012, the Board issued Crop a "Request for Additional Subsurface
21 Investigation" ("the Request") concerning the Facility.  The Request noted that there was evidence
22 implicating Crop in the groundwater degradation of Well #26, several other Crop facilities in
23 California were under assessment for nitrate and pesticide impacts to groundwater, and Crop was
24 directed to submit a historical site summary and work plan to investigate whether past business
25 practices at the Facility caused soil and groundwater contamination.  See id. at ¶ 45.  Crop
26 responded in September 2012 to the Board's Request.  See id. at ¶ 46.  Additionally, in August
27 2012, Crop submitted a "Hazardous Materials Business Inventory" for the Facility to the Kern
28 County Environmental Health Services Department.  See id. at ¶ 47.

The Court is not satisfied that these allegations show that there is a plausible "potential future controversy." Oildale Water's opposition states that there is "some risk" it will be named a potentially responsible party for the nitrate contamination and thus, may have to pay for remediation. What the Complaint does not contain, however, are allegations that quantify or otherwise explain or describe the risk of Oildale Water being held responsible in either a regulatory or judicial proceeding for Well 26's nitrate contamination. As described above, the Complaint's allegations clearly indicate that regulatory agencies are investigating the activities of Crop and the role that Crop may have played in the contamination of Well 26. The Complaint does not indicate that there are or have been any regulatory investigations or inquiries that are directed at Oildale Water. The focus is singularly on Crop. Also, the Complaint alleges that nitrate beyond the 47 mg/L limit has been detected in Well 26 since November 2010.[1] See id. at ¶ 31. Over three years have now passed, yet there are no allegations that Oildale Water is under investigation, has been fined, or has been ordered to conduct remediation for the nitrate contamination. Finally, there are no allegations of any regulatory related activity since September 2012. Well over a year has passed, and no allegations describe further regulatory agency conduct of any kind.

In sum, the Complaint does not demonstrate that the controversy over possible future regulatory assessments or future liability has sufficiently ripened. Without additional allegations, the description and timing of the regulatory agency conduct that has occurred, combined with the time that has passed since nitrate was detected above 45 mg/L, do not plausibly show probable future regulatory assessments against Oildale Water. Therefore, the allegations do not show an "actual controversy." Because the allegations do not demonstrate an "actual controversy," the claims for declaratory relief based on possible future regulatory assessments will be dismissed. See Selby, 10 Cal.3d at 117; Environmental Defense, 158 Cal.App.4th at 885.

Second, as to future liability for continuing violations, "California law classifies nuisances and trespasses as either continuing or permanent." McCoy v. Gustafson, 180 Cal.App.4th 56, 63

---

[1] A water sample for Well 26 was taken in October 2010, but Oildale Water did not receive notification of those results until November 2010. See Complaint ¶ 31.

(2009). "Whether contamination by toxic waste is a permanent or continuing injury . . . turn[s] on the nature and extent of the contamination." Mangini v. Aerojet-Gen. Corp., 12 Cal.4th 1087, 1097 (1996); McCoy, 180 Cal.App.4th at 84. "[T]he crucial test of the permanency of a trespass or nuisance is whether the trespass or nuisance can be discontinued or abated." Mangini, 12 Cal.4th at 1097; McCoy, 180 Cal.App.4th at 84. If the nuisance or trespass is abatable, then the nuisance or trespass is continuing in nature. Gehr v. Baker Hughes Oil Field Operations, Inc., 165 Cal.App.4th 660, 668 (2008); Starrh, 153 Cal.App.4th at 592. The term "abatable" has been defined to mean that the nuisance or trespass "can be remedied at a reasonable cost by reasonable means." Mangini, 12 Cal.4th at 1103; McCoy, 180 Cal.App.4th at 84; see also Starrh & Starrh Cotton Growers v. Aera Energy LLC, 153 Cal.App.4th 583, 594 (2007). When a nuisance or trespass is permanent, "the injured party is entitled to claim all current and future damages, but must do so in one action and plaintiffs must bring suit for permanent nuisance within three years of obtaining notice of the contamination of their property." McCoy, 180 Cal.App.4th at 84; see also Starrh, 153 Cal.App.4th at 592-93. When a nuisance or trespass is continuing, "the injured party is entitled to bring a series of successive actions, each seeking damages for new injuries occurring within three years of the filing of the action, which damages do not include decrease in the property's market value." McCoy, 180 Cal.App.4th at 84; see also Starrh, 153 Cal.App.4th at 592. Trespass and nuisance claims may include wrongful entry, invasion, or migration of pollutants onto land, including the surface and subsurface of the land. Starrh, 153 Cal.App.4th at 593; Martin Marietta Corp. v. Insurance Co. of N. Am., 40 Cal.App.4th 1113, 1132 (1995).

Here, the Court finds merit to Oildale Water's position. It is possible that a jury could find a continuing trespass or nuisance. If that is the case, recovery would be limited to past damages; future damages would not be obtainable. Shamsian v. Atlantic Richfield Co., 107 Cal.App.4th 967, 982 (2003). If damages continue to occur, i.e. if abatable nitrate contamination continues after the verdict, then Oildale Water would be forced to file successive lawsuits. See McCoy, 180 Cal.App.4th at 84; Starrh, 153 Cal.App.4th at 592. Declaratory relief may be useful in order to avoid or streamline possible future litigation over continuing trespasses or nuisances from nitrate contamination. Cf. SPPI-Somersville, Inc. v. TRC Cos., 2009 U.S. Dist. LEXIS 71463, *25 n.12

(N.D. Cal. Aug. 3, 2009) (denying summary judgment on declaratory relief claims for future costs/damages that were tied to causes of action for continuing nuisance and continuing trespass);[2] cf. also Amador Valley Investors v. City of Livermore, 43 Cal.App.3d 483, 495 (1974) (affirming a declaration regarding future liability as to property that suffered a continuing injury from the release of fluids from a sewage treatment plant). It is unknown whether Oildale Water will recover on any theory, much less that they will recover on any of the continuing trespass and nuisance claims. However, the potential for recovery for continuing trespass or continuing nuisance is present. Because of that possibility, and in the absence of any contrary and on point case authority, it is improper to dismiss these claims for declaratory relief at this time.[3]

## CONCLUSION

Dismissal of the thirteenth cause of action is appropriate because claims for either equitable indemnity or equitable contribution have not yet accrued. The Court recognizes that it is possible that facts may develop in the future that would make claims for equitable indemnity and/or equitable contribution appropriate. If such facts develop, Oildale Water at that time may file a motion to amend its complaint.

Dismissal of the fourteenth cause of action for declaratory relief is appropriate in part. A declaration regarding ¶ 212(a), for past costs/expenses incurred regarding nitrate contamination, is not appropriate. Such a request is not prospective in nature, rather it is an improper attempt to seek redress for past conduct. Dismissal of that claim will be without leave to amend. Also, a declaration regarding ¶ 212(c), for the availability of attorney's fees and legal costs, would not serve a useful purpose. Dismissal of that claim will be without leave to amend. Finally, to the

---

[2] The Court takes judicial notice of the Master Complaint in *SPPI*, which is Doc. No. 181 at ¶¶ 173-176 in case 3:04-cv-2648 SI of the Northern District of California. See Fed. R. Evid. 201. The relief requested in the *SPPI* master complaint is similar to the relief rested in Oildale Water's Complaint and the relief described in Oildale Water's opposition. The *SPPI* court accepted that the declaratory relief requested by SPPI was connected to the claims of continuing nuisance and continuing trespass. See SPPI, 2009 U.S. Dist. LEXIS 2648 at *25 n.12.

[3] Oildale Water has pled claims for both continuing and permanent nuisance and trespass. The Federal Rules of Civil Procedure permit a party to plead alternative and inconsistent theories. See Fed. R. Civ. Pro. 8(d)(2), (3); MB Bin. Grp., Inc. v. United States Postal Serv., 545 F.3d 814, 819 (9th Cir. 2008); Independent Enters. V. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1175 (3d Cir. 1997). Tying the declaratory relief claims to some but not all of the causes of action alleged is also within the scope of Rules 8(d)(2) and 8(d)(3).

extent that equitable contribution and/or equitable indemnity is sought, a declaration is improper at this time because Oildale Water has not adequately alleged a ripe actual controversy regarding future regulatory assessments. It is possible that Oildale Water is in possession of additional facts that show a ripe actual controversy, or that such facts will develop in the future. If Oildale Water is currently in possession of such facts, then amendment of the fourteenth cause of action will be permitted. If such facts develop in the future, Oildale Water at that time may file a motion to amend its complaint. Dismissal of the remaining requests for declaratory relief is inappropriate at this time because the requests relate to the claims for continuing nuisance and continuing trespass.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion to dismiss the thirteenth cause of action is GRANTED and that cause of action is DISMISSED;
2. Defendant's motion to dismiss the fourteenth cause of action is GRANTED in part and the requests for declaratory relief at Complaint Paragraphs 212(a) and 212(c), as well as declarations regarding equitable indemnity and equitable contribution, are DISMISSED;
3. Defendant's motion to dismiss the fourteenth cause of action is otherwise DENIED;
4. Plaintiff may file an amended complaint that is consistent with the analysis of this order within fourteen (14) days of service of this order, or Plaintiff may file a motion to amend at a later time once necessary facts become existent; and
5. If Plaintiff does not file an amended complaint, Defendant shall file an answer within twenty (20) days of service of this order

IT IS SO ORDERED.

Dated:  February 28, 2014

SENIOR DISTRICT JUDGE