Todd E. Robins, SBN 191853
Jed J. Borghei, SBN 257049
Genevieve M. Coyle, SBN 287058
ROBINS BORGHEI LLP
649 Mission Street, Suite 500
San Francisco, CA 94105
Telephone: (415) 848-8850
Facsimile: (415) 974-6745

Attorneys for Plaintiff OILDALE MUTUAL WATER COMPANY

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
### FRESNO DIVISION

| | |
|---|---|
| OILDALE MUTUAL WATER COMPANY, | CASE NO. 1:13-cv-02054-AWI-JLT |
| Plaintiff, | FIRST AMENDED COMPLAINT FOR DAMAGES, EQUITABLE, AND OTHER RELIEF: |
| vs. | |
| CROP PRODUCTION SERVICES, INC., Individually and as Successor in Interest to UAP DISTRIBUTION, INC. (Individually and Doing Business As UNITED AGRI PRODUCTS WEST, UAP WEST, and UNITED AGRI PRODUCTS, and as Successor in Interest to UNITED AGRI PRODUCTS FINANCIAL SERVICES, INC.); ALEXANDER TRUCKING INC.; SAN JOAQUIN VALLEY RAILROAD CO.; and DOES 1-100, 102-200, and 202-300, INCLUSIVE, | (1) NEGLIGENCE (MULTIPLE CLAIMS); (2) NUISANCE (MULTIPLE CLAIMS); (3) TRESPASS (MULTIPLE CLAIMS); (4) DECLARATORY RELIEF; (5) PRELIMINARY AND PERMANENT INJUNCTION AND ABATEMENT OF NUISANCE; AND (6) UNLAWFUL BUSINESS PRACTICES. |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff OILDALE MUTUAL WATER COMPANY hereby alleges as follows, based on information and belief and investigation of counsel:

# I.   SUMMARY OF THE CASE

1.      Plaintiff OILDALE MUTUAL WATER COMPANY ("Plaintiff") owns and operates a public water system that provides drinking water to residents and businesses in and around the unincorporated community of Oildale, California, which lies to the north of the City of Bakersfield in Kern County, California.  Plaintiff seeks to recover by this action the substantial costs necessary to protect public health and restore or replace a certain water supply well owned and operated by Plaintiff, known as Well 26, which has become contaminated by dangerously high levels of the toxic chemical nitrate ($NO_3$).

2.      Nitrate is an acutely toxic substance in drinking water supplies.  When consumed by humans at levels in excess of regulatory standards, nitrate can produce a condition known as methemoglobinemia, or "blue baby syndrome," which poses a significant threat to infants and pregnant women.

3.      Because nitrate poses a significant threat to public health, the State of California has established a Maximum Contaminant Level – which is the maximum concentration of a contaminant permitted in drinking water supplied to the public – of 45 milligrams per liter ("mg/L") for nitrate.

4.      Nitrate is an ingredient, component, and/or constituent in, and/or a degradation byproduct of, certain fertilizers and other agricultural chemical products.  Nitrate, products containing nitrate, and/or substances that break down into nitrate (collectively referred to hereinafter as "Nitrogen Materials") have been leaked, spilled, discharged, disposed of, and/or otherwise released by Defendants in the vicinity of Plaintiff's Well 26.  The nitrate contamination caused by Defendants has migrated through the subsurface and into groundwater, and now contaminates the water pumped by Plaintiff's Well 26.

5.      The Defendants in this lawsuit are manufacturers, formulators, mixers, packagers, handlers, storers, distributors, and/or transporters of Nitrogen Materials, who: (i) did and/or do own and/or operate a fertilizer manufacturing and/or storage terminal at 2010 Norris Road in Bakersfield, California, which is located directly adjacent to Plaintiff's Well 26, and/or (ii) were

and/or are otherwise involved in the handling of Nitrogen Materials at and/or in the immediate vicinity of that facility.  Defendants leaked, spilled, discharged, disposed of, and/or otherwise released Nitrogen Materials at or in the immediate vicinity of that facility and, by such negligent, careless, reckless, intentional, and/or ultrahazardous acts and omissions, Defendants have caused the nitrate contamination of Plaintiff's Well 26 and water supply.  Defendants acts and omissions were done knowingly as, at all times relevant to Plaintiff's claims herein, Defendants knew or reasonably should have known that the Nitrogen Materials they released into the environment would break down into nitrate, reach groundwater, pollute drinking water supplies, render those supplies unusable and unsafe, and threaten the public health and welfare – as has occurred with respect to Plaintiff's Well 26 and water supply.

6.      Due to Defendants' acts and omissions, Plaintiff's Well 26 has become contaminated with nitrate at levels that violate California's Maximum Contaminant Level.  As a result, Plaintiff has been unable to pump the well into its distribution system since November 2010, thereby forcing Plaintiff to purchase costly replacement water and suffer other consequential damages related to its inability to use Well 26, which, due to its location, is of paramount importance to Plaintiff's ability to deliver water and maintain pressure in the northwest section of its service area.

7.      Plaintiff files this lawsuit to recover compensatory and punitive damages, injunctive relief, and all other available damages and relief, to ensure: (i) that nitrate is removed from water pumped from Well 26 or that a clean and equivalent replacement water supply is secured; (ii) the protection of public health and the environment; and (iii) that the responsible parties (i.e. Defendants) bear the attendant costs and burdens, rather than Plaintiff and its ratepayers.

## II.  THE PARTIES

8.      Plaintiff is a non-profit mutual water company formed and existing under the laws of the State of California, with its principal place of business in Oildale, California.  At all times relevant to this action, Plaintiff has owned and operated a public water system that includes,

among other elements, drinking water production wells that draw from one or more groundwater aquifers, well sites, associated pumping, storage, treatment, and distribution facilities and equipment, all of which will be referred to collectively in this Complaint as Plaintiff's "Water System."  Plaintiff's Water System includes the public water supply well known as Well 26 and the real property on which Well 26 is located.  Plaintiff provides potable water through its Water System to more than 8,000 residential and commercial service connections, serving a population of approximately 26,000 people in and around Oildale, California.  Among other things, Plaintiff's Water System includes the right of Plaintiff to extract and use groundwater from its wells to supply drinking water to the public.  At all times relevant to this action, Plaintiff has had a significant property interest in the waters it extracts and uses from its wells, including the water drawn from Well 26.  The past, present and continuing nitrate contamination of such waters constitutes physical injury for which Plaintiff is entitled to, and Plaintiff hereby does, seek damages and other appropriate relief.

9.      Defendant CROP PRODUCTION SERVICES, INC., individually and as successor in interest to UAP DISTRIBUTION, INC. (individually and doing business as UNITED AGRI PRODUCTS WEST, UAP WEST, and UNITED AGRI PRODUCTS, and as successor in interest to UNITED AGRI PRODUCTS FINANCIAL SERVICES, INC.) (hereinafter collectively referred to as "CPS")  is a Delaware corporation with its principal place of business in Loveland, Colorado, which at all times relevant to this action has been doing business in California.  Since November 1996, CPS has owned and operated an agricultural chemical storage and distribution facility known today as the Crop Production Services, Inc. Bakersfield-Oildale Terminal, located at 2010 Norris Road, Bakersfield, California (the "CPS Facility"), where, on information and belief, CPS did and/or does manufacture, formulate, mix, package, handle, store, distribute, and/or transport Nitrogen Materials.  CPS spilled, leaked, discharged, disposed of and/or otherwise released Nitrogen Materials at and/or from the CPS Facility, and thereby caused or substantially contributed to the nitrate contamination of Plaintiff's Well 26 and water supply.

1    10.    Defendant SAN JOAQUIN VALLEY RAILROAD CO., originally sued herein as

2  DOE No. 101, is a California corporation with its principal place of business in Exeter,

3  California.

4    11.    Defendant ALEXANDER TRUCKING INC., originally sued herein as DOE No.

5  201, is a California corporation with its principal place of business in Earlimart, California.

6    12.    The names and capacities, whether individual, corporate, or otherwise, of

7  Defendants named herein as DOES 1-100, 102-200, and 202-300, inclusive, are unknown at this

8  time to Plaintiff who therefore sues said Defendants by such fictitious names.  Plaintiff will

9  amend the Complaint to show the true names and capacities of said Defendants when their

10  identities and capacities have been ascertained.

11    13.    DOES 1 through 100, inclusive, are (i) prior owners and/or operators of the CPS

12  Facility or the property on which the CPS Facility is located, or (ii) current and/or former owners

13  and/or operators of property in close proximity to Plaintiff's Well 26, who, on information and

14  belief, spilled, leaked, discharged, disposed of and/or otherwise released Nitrogen Materials at or

15  from the CPS Facility, the property on which it is located, and/or property in close proximity to

16  Plaintiff's Well 26, and thereby caused or substantially contributed to the nitrate contamination

17  of Plaintiff's Well 26 and water supply.  DOES 1 through 100, inclusive, along with CPS, are

18  referred to collectively herein as "Property Owner/Operator Defendants."

19    14.    Defendant SAN JOAQUIN VALLEY RAILROAD CO. (formerly DOE No. 101)

20  and DOES 102 through 200, inclusive, are current and/or former owners and/or operators of the

21  railroad spur that abuts the CPS Facility, who, on information and belief, did and/or do transport,

22  deliver, load, offload and/or handle Nitrogen Materials at, or in the vicinity of, the CPS Facility

23  and/or the property on which it is located and, in carrying out such activities, spilled, leaked,

24  discharged, disposed of and/or otherwise released Nitrogen Materials at, from, or in the vicinity

25  of the CPS Facility and/or the property on which it is located, and thereby caused or substantially

26  contributed to the nitrate contamination of Plaintiff's Well 26 and water supply.  SAN

27

28

1   JOAQUIN VALLEY RAILROAD CO. and DOES 102 through 200, inclusive, are referred to

2   collectively herein as "Railroad Defendants."

3         15.     Defendant ALEXANDER TRUCKING INC. (formerly DOE No. 201) and DOES

4   202 through 300, inclusive, are current and/or former owners and/or operators of trucking

5   companies who, on information and belief, did and/or do transport, deliver, load, offload and/or

6   handle Nitrogen Materials at, to, or in the vicinity of the CPS Facility and/or the property on

7   which it is located and, in carrying out such activities, spilled, leaked, discharged, disposed of

8   and/or otherwise released Nitrogen Materials at, from, or in the vicinity of the CPS Facility

9   and/or the property on which it is located, and thereby caused or substantially contributed to the

10  nitrate contamination of Plaintiff's Well 26 and water supply.  ALEXANDER TRUCKING INC.

11  and DOES 202 through 300, inclusive, are referred to collectively herein as "Trucking

12  Defendants."

13        16.     CPS, ALEXANDER TRUCKING INC., SAN JOAQUIN VALLEY RAILROAD

14  CO., and Defendant DOES 1-100, 102-200, and 202-300, inclusive, are referred to collectively

15  herein as "Defendants."

16        17.     When reference is made in this Complaint to any act or omission of any of the

17  Defendants, it shall be deemed that the officers, directors, agents, employees or representatives

18  of the Defendants committed or authorized such act or omission, or failed to adequately

19  supervise or properly control or direct their employees while engaged in the management,

20  direction, operation or control of the affairs of Defendants, and did so while acting within the

21  scope of their duties, employment or agency.

22                    **III.    JURISDICTION AND VENUE**

23        18.     The California Superior Court has jurisdiction over this action pursuant to

24  California Constitution Article VI, Section 10, which grants the Superior Court "original

25  jurisdiction in all cases except those given by statute to other trial courts."  The statutes under

26  which this action is brought do not grant jurisdiction to any other trial court.

27        19.     The California Superior Court has jurisdiction over Defendants because, based on

28

FIRST AMENDED COMPLAINT FOR DAMAGES, EQUITABLE & OTHER RELIEF; Case No. 1:13-cv-02054-AWI-JLT

1   information and belief, each is a corporation or other business that has sufficient minimum

2   contacts in California, is a citizen of California, or otherwise intentionally avails itself of the

3   California market either through: (i) the past and/or present manufacture, formulation, mixing,

4   packaging, handling, storage, distribution, transportation, spillage, leakage, discharge, disposal

5   and/or release of Nitrogen Materials, in California, (ii) by having, formerly and/or currently, a

6   manufacturing, storage, distribution, or other facility located in California, and/or (iii) by having,

7   formerly and/or currently, transportation infrastructure, including locomotives and/or vehicles,

8   located in and/or registered with the State of California, so as to render the exercise of

9   jurisdiction over it by California courts consistent with traditional notions of fair play and

10  substantial justice.

11       20.     Venue is proper in Kern County Superior Court because Kern County is where

12  the injury at issue in this litigation occurred and continues to occur and where the property

13  interest at issue in this lawsuit is located.

14       **IV.   ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION**

15  **A.     The Contaminant: Nitrate.**

16       21.     Nitrate ($NO_3$) is an acutely toxic substance in drinking water supplies.  Once

17  nitrate is consumed by humans, it converts into nitrite ($NO_2$).  Nitrite interferes with the ability

18  of red blood cells to carry oxygen within the body, which can produce a condition known as

19  methemoglobinemia.  Methemoglobinemia, in particular, poses a threat to infants, and is

20  commonly referred to as "blue baby syndrome."  Possible complications from

21  methemoglobinemia include headaches, dizziness, fatigue, difficulty in breathing, nausea and, in

22  severe cases, lethargy, brief loss of consciousness, irregular heartbeat, shock, convulsions, coma,

23  and even death.  Methemoglobinemia also poses a significant threat to pregnant women, as it can

24  increase their risk of complications such as anemia, abortion, premature labor, or preeclampsia.

25       22.     Nitrate is, among other things, an ingredient in certain agricultural chemicals,

26  including solid and liquid fertilizers.  Additionally, nitrate is formed when other agricultural

27  chemicals, including solid and liquid fertilizers, are spilled, leaked, discharged, disposed of,

28

FIRST AMENDED COMPLAINT FOR DAMAGES, EQUITABLE & OTHER RELIEF; Case No. 1:13-cv-02054-AWI-JLT

1   and/or otherwise released into the environment.  The majority of anthropogenic nitrate is

2   industrially produced using the Haber-Bosch process, which catalyzes atmospheric nitrogen gas

3   with hydrogen to produce ammonia, which can then further oxidize to produce nitrate. Ammonia

4   contained in fertilizer that is spilled, leaked, discharged, disposed of, and/or otherwise released

5   will convert into nitrate in the presence of oxygen.  Nitrate, once released into the environment,

6   can leach into and contaminate groundwater.  Thus, high concentrations of nitrate in

7   groundwater are often associated with agricultural chemical releases.

8         23.     Nitrate has unique characteristics that cause extensive environmental

9   contamination and a corresponding threat to public health and welfare.  Nitrate dissolves rapidly

10  in water and, once dissolved, is extremely difficult and costly to remove. Nitrate is persistent in

11  groundwater and does not readily degrade under typical aquifer conditions.  Thus, once nitrate

12  enters groundwater, it can remain for decades.  There is no simple, low-cost method to remove

13  nitrate from water.  Boiling, softening, and filtration as methods of purifying water do not impact

14  nitrate concentrations.  Rather, to remove nitrate from groundwater, wellhead treatment facilities

15  that utilize technology such as ion exchange, reverse osmosis, or electrodialysis are typically

16  recommended; such facilities are costly to build, operate, and maintain.  In short, nitrate migrates

17  readily through soil and groundwater, resists natural degradation, and is difficult and costly to

18  remove from groundwater supplies.

19        24.     There is a delay, based on site specific factors, between the time Nitrogen

20  Materials are released into the subsurface environment and the time nitrate accumulates in

21  groundwater in sufficient quantities and locations to contaminate public drinking water

22  resources.

23  **B.     Regulatory Standards Applicable To Nitrate.**

24        25.     The California Department of Public Health ("CDPH") is the state agency

25  responsible for regulating public water systems in California, including Plaintiff's.

26        26.     Because nitrate in drinking water poses a significant threat to public health, in

27  1994, the CDPH adopted a Maximum Contaminant Level of 45 mg/L of nitrate (as $NO_3$), which

28

corresponds to, and is the equivalent of, 10 mg/L of nitrogen (as N).[1]  A public water supplier, such as Plaintiff, may not supply water with nitrate levels that exceed this regulatory standard.

27.     The California Code of Regulations (22 CCR § 64465, Appendix 64465-D) notes that "[i]nfants below the age of six months who drink water containing nitrate in excess of the [Maximum Contaminant Level] may quickly become seriously ill and, if untreated, may die . . . ."  Nitrate is therefore considered an acute contaminant; a single Maximum Contaminant Level exceedance can pose a significant threat to public health and, once confirmed, can cause CDPH to require that a well be removed from service unless and until treatment is installed.  (*See* 22 CCR § 64432.1.)

28.     In 1997, the California Office of Environmental Health Hazard Assessment established a Public Health Goal for nitrate in drinking water of 45 mg/L.  Public Health Goals are based solely on health effects and are set at a level that the State has determined, based on the best available data in the scientific literature, does not pose any significant risk to health.

**C.      The Impact of Nitrate on Plaintiff's Well 26 and Plaintiff's Damages.**

29.     Plaintiff's Water System serves potable water to approximately 8,200 residences and businesses within its service area.  Plaintiff's sources of supply include both groundwater production wells and treated surface water purchased from the Kern County Water Agency's Improvement District No. 4 ("ID4").  Plaintiff's service area includes portions of Oildale that lie north of the Kern River and east of Highway 99 (which are within ID4), as well as an area west of Highway 99 and north of Seventh Standard Road, known as the Southeast Shafter Service area (which is outside of ID4).

30.     Plaintiff's Well 26 was constructed in 1966 and is perforated between 300 and 630 feet below ground surface.  The real property on which Well 26 sits, which is owned by Plaintiff, is surrounded on all sides by the CPS Facility.  The presence of Well 26 and its related

---

[1] Hereinafter, unless otherwise indicated, nitrate will be addressed in terms of mg/L of nitrate as $NO_3$.

1     infrastructure (including booster pumps and two half-million gallon storage tanks) is, and has

2     been, open and obvious to any individual and/or entity conducting business operations at and/or

3     adjacent to the CPS Facility.

4         31.     Well 26 is the most important well in Plaintiff's system. It is a large and

5     productive well (approximately 1,220 gallon per minute capacity) that, until the occurrence of

6     the nitrate contamination described herein, pumped high quality water.  Because of its location

7     immediately adjacent to the northwestern border of ID4, Well 26 is critical to Plaintiff's ability

8     to distribute water to the Southeast Shafter Service Area.  Treated surface water purchased from

9     ID4 can only be used inside ID4, and groundwater quality in the Southeast Shafter Service Area

10     is generally poor.  So, Well 26, with its previously high quality water and optimal location,

11     provided Plaintiff with both the capacity and the needed water pressure to efficiently serve the

12     Southeast Shafter Service Area, where development and demand for water is growing rapidly.

13         32.     Due to Defendants' acts and omissions, Plaintiff's Well 26 has become

14     contaminated with nitrate at levels that violate California's Maximum Contaminant Level.  Prior

15     to October 11, 2010, measured nitrate concentrations in Well 26 were at levels below

16     California's 45 mg/L Maximum Contaminant Level.  In the seven years preceding 2010, nitrate

17     concentrations in Well 26 averaged 27 mg/L.

18         33.     On November 17, 2010, Plaintiff received the nitrate results from a sample taken

19     from Well 26 on October 11, 2010, and discovered that nitrate levels in Well 26 had risen

20     sharply.  In September 2009, during the prior Well 26 nitrate sampling event, the nitrate

21     concentration had been 24 mg/L, a level below the seven year average.  However, the nitrate

22     level detected in the October 11, 2010, sample was 47 mg/L, which constituted a Maximum

23     Contaminant Level violation and was nearly twice as high as the level detected the prior year.

24     Since October 2010, the nitrate concentration in Well 26 has remained above the Maximum

25     Contaminant Level, at times reaching a concentration as high as 80 mg/L.  No other well in

26     Plaintiff's system, including nearby upgradient wells, has experienced a similar nitrate spike.

27

28

34.     As a result of Well 26's nitrate Maximum Contaminant Level exceedences, since November 2010, Plaintiff has not been permitted by CDPH to pump water from Well 26 into its distribution system, thereby forcing Plaintiff to replace the lost capacity from the well with costly replacement water and suffer other consequential damages related to its inability to use Well 26.  Plaintiff has been able to replace the lost capacity from Well 26 on a provisional basis within ID4 by purchasing additional treated surface water, which is significantly more expensive on a per-acre-foot basis than the cost of pumping water from Well 26.  But, with the pace of development in the northwestern portion of its service area accelerating, Plaintiff's operational and supply problems associated with the loss of Well 26 will continue to grow increasingly acute.

35.     The ongoing presence of nitrate in Well 26 at levels above California's Maximum Contaminant Level has caused, and will continue to cause, significant physical injury to Plaintiff's property, and has caused, and will continue to cause, Plaintiff to sustain significant damages.

36.     The injury to Plaintiff's property and resulting damages sustained by Plaintiff caused by Defendants' conduct, as alleged herein, constitute an unreasonable interference with, and physical damage to, the limited subterranean supplies of fresh drinking water on which Plaintiff's Well 26 depends.  Plaintiff's interest in protecting the quality of its limited drinking water supplies constitutes a reason personal to the Plaintiff for seeking damages and injunctive relief sufficient to restore such drinking water supplies to their pre-contamination condition.

37.     As a proximate cause of Defendants' acts and/or omissions, Plaintiff has suffered and will suffer substantial damages that include, but are not limited to: (i) an interference with Plaintiff's use of its property interest in the water pumped by Well 26 and the real property on which the well is located; (ii) diminution in the value of those property interests; (iii) physical damage to water and real property over which Plaintiff has possessory interests; (iv) the past, current, and future costs associated with Plaintiff's loss of use of Well 26 caused by nitrate contamination and the resulting closure of the Well; (v) the costs of restoring Plaintiff's

contaminated water to its pre-contamination condition by, for example, removing or reducing nitrate via wellhead treatment (including both capital and operations and maintenance costs); and/or (vi) alternatively, the costs and risks associated with replacing Well 26 with a new, equivalent well, including but not limited to the costs of destroying Well 26, the costs of locating and constructing a suitable offsite replacement well, and the costs of getting the replacement well's water to a location where it can be effectively distributed to the northern and western portions of Plaintiff's service area.

38.     Plaintiff is informed and believes and based thereon alleges that it has suffered damages greatly in excess of $25,000.

**D.     The Defendants' Acts and Omissions.**

*i.     The CPS Facility*

39.     On information and belief, at the time Plaintiff's Well 26 was installed at its current location, the CPS Facility did not exist.  Defendant CPS (inclusive of its predecessors in interest, as stated *supra*) established the CPS Facility, which surrounds Plaintiff's Well 26, as of November 1996, and has owned and operated the CPS Facility ever since.  Despite the obvious attendant risks to public health and safety and Plaintiff's property interests, Defendant CPS elected to locate a dry fertilizer warehouse and liquid fertilizer and pesticide tank farm at the CPS Facility within approximately 50 to 250 feet of Well 26.

40.     As of August 2000, in a Risk Management Plan for the CPS Facility, Defendant CPS listed the "primary activity" at the site as "the storage, blending, and sales of fertilizer, in addition to, the sale of prepackaged agricultural chemicals to farmers."  Further, CPS noted therein that anhydrous ammonia, a Nitrogen Material, was received by rail car at the site two times per year, then mixed at the facility into commercial fertilizer.  On information and belief, Nitrogen Materials, including fertilizer products, were loaded onto trucks at the CPS Facility for transport to off-site locations.

41.     As of 2003, Defendant CPS described its business operations at the CPS Facility as "Farm Supplies Wholesaler/Fertilizer Manufacturer (Mixing Only)" and further noted that the

1    facility contained the following equipment:  "Dry fertilizer blending & bagging operation

2    including feed hopper/conditioner, bucket elevator & 2 blending lines – each w/a blender, a

3    screener, a bucket elevator – 2 bagging bins & bagging systems; all vented to fabric collectors

4    DC-1 & DC-2."

5           42.     As of 2005, Defendant CPS stated in a Spill Prevention, Control, and

6    Countermeasure Plan that operations at the CPS Facility had the potential to discharge liquids,

7    such as oil, into navigable waters of the State of California.

8           43.     According to Defendant CPS, in February 2010, it conducted "Nitrogen

9    Compound Testing" at the CPS Facility, "to determine if nitrogen compounds were present in

10   shallow soil and temporarily ponded surface water at the site."  Eleven soil samples and seven

11   surface water samples were collected and evaluated.  The soil samples revealed extremely high

12   levels of nitrate (as N), including concentrations (in mg/L) of: >2500, >2500, 2000, 1500, 500,

13   300, 250, 100, and 100.  As for the surface water samples, all seven detected nitrate, and all but

14   two found concentrations at levels above the Maximum Contaminant Level.  The Nitrogen

15   Compound Testing demonstrated that the highest nitrate concentrations at the site, of the

16   locations sampled, were in soil between the railroad spur and the dry fertilizer warehouse and in

17   soil adjacent to the liquid fertilizer and pesticide tank farm loading pad, all of which are within

18   approximately 50 to 250 feet of Plaintiff's Well 26.

19          44.     On November 7, 2011, Plaintiff received in the mail a handwritten letter,

20   postmarked from Colorado, stating as follows:  "High nitrates and sodium chlorate in your well

21   water on Norris Rd coming from CPS spills.  Beware!"

22          45.     On November 22, 2011 – nearly two years after Defendant CPS detected

23   extremely high nitrate levels in soil and surface water at the CPS Facility and, on information

24   and belief, with no apparent remedial action having been taken in the interim – Defendant CPS's

25   contactor, PSC Environmental Services, LLC ("PSC"), submitted a "Work Plan" to CPS for the

26   CPS Facility.  The stated objective of the Work Plan was to "produce the necessary tools to

27

28

complete several maintenance issues related to soil excavation, building repair, grading and new concrete placement."  Among other items, the Work Plan:

a)      Described several locations at the CPS facility that had soil "of concern" that should be excavated, including: (i) contaminated soil between the railroad tracks and dry fertilizer warehouse "that has been placed over the years to combat with drainage, spills, etc."; and (ii) contaminated soil from the area between the liquid fertilizer tank farm and Plaintiff's Well 26, which is adjacent to the truck loading pad.

b)      Identified the need to improve the drainage system at the CPS facility by installing new drainage infrastructure and re-grading portions of the site.

c)      Called for paving large areas of the CPS facility and installing a concrete "apron" around the truck loading pad.

46.      On January 9, 2012, Plaintiff received an email alert from USAN.org indicating that work would commence the week of January 11, 2012 (by PSC on behalf of CPS) at the CPS Facility, and that the work would involve "EXC TO REM CONTAMINATED SOIL."  Further, the email alert noted that the excavation work would not be done pursuant to a permit.

47.      Soon after receiving the email described in paragraph 44 above, Plaintiff provided a copy of the email to the Central Valley Regional Water Quality Control Board ("RWQCB"), along with, among other things, copies of recent nitrate sampling results from Well 26 and the anonymous note referenced in paragraph 42 above.  On May 4, 2012, the RWQCB issued to CPS a "Request for Additional Subsurface Investigation, Crop Production Services Facility, 2010 Norris Road, Oildale, Kern County."  Therein, the RWQCB: (i) noted that "[e]vidence implicating CPS in the groundwater degradation of [Plaintiff's] Well #26 is the proximity of the CPS facility to Well #26 and the type of business CPS conducts"; (ii) observed that "[s]everal other CPS facilities in California are currently under assessment for nitrate and pesticide impacts to groundwater"; and (iii) directed CPS to submit a historical site summary and work plan to

FIRST AMENDED COMPLAINT FOR DAMAGES, EQUITABLE & OTHER RELIEF; Case No. 1:13-cv-02054-AWI-JLT

1  investigate whether past business practices at the site caused soil and groundwater

2  contamination.

3      48.    On September 30, 2012, Defendant CPS responded to the RWQCB's request by

4  submitting a "Facility Improvement Report" for the CPS Facility.  Among other items, the

5  Report states that:

      a)    "CPS formerly received raw bulk fertilizer and pesticides at the facility,

7             blended and packaged fertilizer products, and sold bulk and packaged

8             fertilizers and pesticides."

9        b)    "CPS currently utilizes the facility as a terminal for receiving, storing, and

10            distributing pre-packaged fertilizers and pesticides to other CPS facilities."

11       c)    Site "improvements" were performed by PSC in 2012, "which consisted

12            of nitrogen-impacted soil removal, storm water system upgrades, building

13            repair, grading and concrete placement."  Some of the excavated material

14            was "stained soil" and soil to a depth of, at most, three feet was removed

15            from contaminated locations.  These "improvements" were supposed "to

16            limit the potential for nitrogen compounds to impact groundwater."

17       d)    "Approximately 230 cubic yards (cyds) of soil were removed from the

18            site, and over 6,000 square feet of concrete was installed to limit surface

19            water infiltration and vertical migration of nitrogen compounds in soil and

20            to provide impermeable areas for facility truck traffic."

21       e)    "If nitrate concentrations in [Well 26] are related to the site, the facility

22            improvements should reduce the concentrations over time."

23     49.    In August 2012, CPS submitted a "Hazardous Materials Business Inventory" for

24 the CPS Facility to the Kern County Environmental Health Services Department, which included

25 the following items on its list of "Hazardous Materials" stored at the site: Ammonium Phosphate

26 Solution, Fertilizers-Dry, Fertilizers-Liquid, Fertilizers-LPI Inventory (Lokomotive), Potassium

27 Nitrate, and UN Liquid Fertilizer.

28

50.     Based on the foregoing, and on information and belief, Defendant CPS:

a)      Has been responsible, since November 1996, for multiple and/or routine spills, leaks, discharges, disposals, and/or releases of Nitrogen Materials, at, from, or in the vicinity of the CPS Facility, which have created extensive plumes of nitrate contamination in soil and groundwater and, thereby, fouled the aquifer from which Plaintiff's Well 26 draws its water.

b)      Knew as of at least February 2010 that soil and surface water in multiple locations at the CPS Facility was heavily contaminated with nitrate, that this contamination posed a significant threat to Plaintiff's Well 26 and public health, and, yet, took no material steps to remediate the contamination for almost two years.  Thus, CPS knowingly permitted nitrate, which had been spilled, leaked, discharged, disposed of and/or otherwise released at the CPS Facility (by CPS and/or other Defendants) to leach, unabated, from the soil down to the groundwater aquifer, for approximately 23 months, despite the immediate proximity of Plaintiff's Well 26, a public water supply well.

c)      Failed to report to the proper authorities known spills, leaks, discharges, disposals  and/or releases of waste and/or hazardous substances at the CPS Facility that resulted in contamination of soil and surface water with Nitrogen Materials, which posed a clear, obvious, known, and direct threat to waters of the State of California and, in particular, Plaintiff's Well 26, in violation of, at minimum, the following statutes: California Water Code §§ 13260, 13264, and 13271; and California Health & Safety Code § 5411.5.

d)      Attempted an "improvement" of its CPS Facility, without proper regulatory oversight or consultation, and, in the process, destroyed and/or

1    altered evidence relevant to the cause, nature, extent, and/or duration of

2    the environmental contamination that it has caused at the site.

3        **ii.**       **The Property Owner/Operator Defendants (other than CPS)**

4        51.      DOES 1 through 100, inclusive, either: (i) previously owned and/or operated the

5    CPS Facility or the property on which the CPS facility is located; or (ii) are the current and/or

6    former owners and/or operators of property in close proximity to Plaintiff's Well 26.

7        52.      On information and belief, DOES 1 through 100, inclusive, spilled, leaked,

8    discharged, disposed of and/or otherwise released Nitrogen Materials at or from the CPS

9    Facility, the property on which it is located, and/or property in close proximity to Plaintiff's Well

10   26, and thereby caused or substantially contributed to the nitrate contamination of Plaintiff's

11   Well 26 and water supply.

12       **iii.**      **The Railroad Defendants**

13       53.      On information and belief, Nitrogen Materials, including fertilizers, were

14   delivered to and/or from the CPS Facility via the rail spur on and/or adjacent to the site.

15       54.      The February 2010 Nitrogen Compound Testing at the CPS Facility found that the

16   highest levels of nitrate contaminated soil were located adjacent to the rail spur.

17       55.      In November 2011, it was noted that soil adjacent to the rail spur was

18   contaminated because there had been "spills" in that area.  Contaminated soil was removed from

19   that location during the remedial work conducted at the CPS Facility in January 2012.

20       56.      Thus, on information and belief, the Railroad Defendants transported, delivered,

21   loaded, offloaded and/or handled Nitrogen Materials at, or in the vicinity of, the CPS Facility

22   and/or the property on which it is located and, in carrying out such activities, spilled, leaked,

23   discharged, disposed of and/or otherwise released Nitrogen Materials at, from, or in the vicinity

24   of the CPS Facility and/or the property on which it is located, and thereby caused or substantially

25   contributed to the nitrate contamination of Plaintiff's Well 26 and water supply.

26

27

28

### iv.    The Trucking Defendants

57.    On information and belief, Nitrogen Materials, including fertilizer products, were delivered to and/or from the CPS Facility by the Trucking Defendants and, in the process thereof, Nitrogen Materials were transported, delivered, loaded, offloaded and/or handled at, to, or in the vicinity of the CPS Facility and/or the property on which it is located.

58.    The February 2010 Nitrogen Compound Testing at the CPS Facility found nitrate contaminated soil and surface water at the site adjacent to both the "truck loading ramp" and "load pad" area around the liquid fertilizer and pesticide tank farm.  During the January 2012 remedial work conducted at the site, contaminated soil was excavated from areas adjacent to the load pad and a concrete berm or "apron" was installed around it so run-off from the pad would not continue to contaminate site soil.

59.    Thus, on information and belief, the Trucking Defendants transported, delivered, loaded, offloaded and/or handled Nitrogen Materials at, to, or in the vicinity of the CPS Facility and/or the property on which it is located and, in carrying out such activities, spilled, leaked, discharged, disposed of and/or otherwise released Nitrogen Materials at, from, or in the vicinity of the CPS Facility and/or the property on which it is located, and thereby caused or substantially contributed to the nitrate contamination of Plaintiff's Well 26 and water supply.

### E.    The Defendants' Knowledge of the Hazards of Nitrogen Materials.

60.    On information and belief, it has been common knowledge for decades, particularly in the farming and agricultural chemicals industries, that Nitrogen Materials, once released into the environment, can migrate down through the soil, into groundwater aquifers, and contaminate drinking water resources, thereby posing a threat to public health and safety.

61.    At all times relevant to this action, on information and belief, Defendants, and each of them, knew or should have known that spilling, leaking, discharging, disposing of and/or otherwise releasing Nitrogen Materials into the environment can pose a grave threat to public health and the environment, especially when the release occurs in close proximity to a public water supply well.

62.     At all times relevant to this action, on information and belief, Defendants, and each of them, knew or should have known that the risks posed by environmental releases of Nitrogen Materials include, among other things: (i) that nitrate from the Nitrogen Materials would readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, and cause widespread groundwater contamination; (ii) that nitrate would contaminate nearby public and private water supplies; (iii) that nitrate in drinking water poses an acute threat to public health and, especially, to babies and pregnant women; (iv) that nitrate contamination can cause a water supply to be rendered unfit and/or unusable for human consumption; and/or (v) that nitrate contamination burdens public water suppliers and their ratepayers with significant costs, such as costs associated with supply disruption, wellhead treatment to remove contamination (including both capital and operations and maintenance costs), and/or the costs and risks associated with attempting to replace a contaminated well with a new water supply.

63.     The Defendants, and each of them, had a duty and breached their duty to manufacture, formulate, mix, package, handle, store, distribute, and/or transport Nitrogen Materials in such a way as to eliminate the potential for these materials to be discharged, spilled, leaked, disposed of and/or otherwise released into the environment, especially in close proximity to public water supply wells.

64.     On information and belief, the Defendants, and each of them, failed to adequately ensure that the Nitrogen Materials that they manufactured, formulated, mixed, packaged, handled, stored, distributed, and/or transported would not contaminate drinking water.  As a direct, indirect and proximate result of these failures, nitrate has contaminated, and continues to contaminate, the drinking water supply pumped by Plaintiff's Well 26.

65.     Despite knowing or having reason to know that long-term groundwater contamination, pollution of drinking water supplies, and threats to public health and safety were inevitable consequences of the foreseeable and intended results of their methods of manufacturing, formulating, mixing, packaging, handling, storing, distributing, and/or

1   transporting Nitrogen Materials, the Defendants, and each of them, failed to make the necessary

2   alterations to their operations, facilities and/or transportation infrastructure, and/or take the

3   necessary precautionary measures to avoid causing such harm.

4     66. At all times relevant herein, the Defendants, and each of them, knew or should

5   have known that feasible measures could have been implemented to remove or substantially

6   reduce the potential that their actions or failures to act could result in the discharge, spillage,

7   leakage, disposal, and/or otherwise release of Nitrogen Materials, into the environment,

8   especially in close proximity to a public drinking water well, but failed to implement such

9   measures.

10     67. On information and belief, Defendant CPS acted knowingly, willfully and with

11   oppression, fraud, and/or malice.  As of at least February 2010, CPS had confirmed the presence

12   of extensive nitrate contamination in soil and surface water at the CPS Facility, in close

13   proximity to Plaintiff's Well 26, a public water supply well.  Despite also knowing, as of at least

14   February 2010, that nitrate in drinking water can pose an acute threat to public health and,

15   especially, the health of babies and pregnant women, CPS: (i) failed to take action to remove or

16   otherwise remediate the nitrate contamination at its CPS Facility until January 2012 and,

17   therefore, knowingly and willfully permitted nitrate to leach unabated for 23 months from soil

18   and surface water at its CPS Facility into groundwater and contaminate the water pumped by

19   Plaintiff's Well 26; (ii) failed to notify Plaintiff and the proper regulatory authorities, in violation

20   of State law, when it first became aware that the CPS Facility was contaminated by extremely

21   high levels of nitrate, despite the obvious threat the contamination posed to waters of the State of

22   California and, in particular, water pumped by Well 26; and (iii) attempted to benefit from its

23   failure to report the nitrate contamination at its CPS Facility to Plaintiff and the authorities by

24   destroying, spoiling, covering up, and/or altering evidence at the CPS Facility relevant to the

25   cause, nature, extent, and/or duration of the nitrate contamination that it has caused and

26   continues to cause.  Such conduct is reprehensible, despicable, and was performed by CPS with

27   conscious disregard of Plaintiff's rights and interests and the probable dangerous consequences

28

FIRST AMENDED COMPLAINT FOR DAMAGES, EQUITABLE & OTHER RELIEF; Case No. 1:13-cv-02054-AWI-JLT

of that conduct to public health, the environment, and property, in order to maximize profits and avoid the attendant costs and reputational damage associated with causing environmental contamination.

**F.      Summary of Allegations.**

68.    On information and belief, at all times relevant to this action:

(a)    The Defendants, and each of them, spilled, leaked, discharged, disposed of and/or otherwise released Nitrogen Materials into or onto the CPS facility and/or other lands in the vicinity of Plaintiff's Well 26.  Such spills, leaks, discharges, disposals and/or releases of Nitrogen Materials occurred at various times, in varying quantities and in different locations.

(b)    The nitrate contained in, or formed as a byproduct of the release of, Nitrogen Materials takes time to migrate from points of spills, leaks, discharges, disposals and/or releases to locations within the subsurface at which it has an appreciable impact on groundwater.

(c)    Due to Defendants acts and omissions, nitrate plumes have over time migrated in the subsurface from various spill, leak, discharge, disposal and/or release points at or near the surface, at the CPS Facility and/or otherwise in the vicinity of Plaintiff's Well 26, causing pollution, contamination, and substantial and continuing damage to that Well and the groundwater that supplies it, causing appreciable injury to Plaintiff and damaging Plaintiff at such times and in amounts to be proved at trial.

(d)    The Defendants, and each of them, knew or should have known that their spills, leaks, discharges, disposals and/or releases of Nitrogen Materials at the CPS Facility, and/or otherwise in the vicinity of Plaintiff's Well 26, would threaten public health, contaminate the groundwater that supplies Well 26, and cause significant harm to Plaintiff.

69.     At all times relevant to this action, Nitrogen Materials spilled, leaked, discharged, disposed of and/or otherwise released by Defendants caused and/or was a substantial factor in causing the nitrate contamination of Plaintiff's Well 26 and water supply.

70.     Defendants, and each of them, are jointly and severally liable for the damages alleged herein.

71.     In engaging in the acts set forth above, Defendant CPS was guilty of malice, fraud, and/or oppression as defined in California Civil Code § 3294, and Plaintiff should recover, in addition to actual damages, damages to make an example of and punish CPS, in an amount to be determined.

72.     Plaintiff has incurred and, during the pendency of this action, will incur expenses for attorneys' fees and costs herein.  Such attorneys' fees are necessary for the prosecution of this action.  The exact sum of such attorneys' fees and costs is presently unascertained and Plaintiff requests the Court's permission to amend this claim for costs and attorneys' fees when the amounts are determined.

## FIRST CAUSE OF ACTION
### (Negligence Against All Defendants)

73.     Plaintiff realleges and incorporates herein by reference the allegations contained in each of the preceding paragraphs.

74.     Defendants, and each of them, had a duty and breached their duty to use reasonable care in the manufacture, formulation, mixing, packaging, handling, storage, distribution, and/or transportation of Nitrogen Materials.  Defendants, and each of them, had a duty and breached their duty to avoid manufacturing, formulating, mixing, packaging, handling, storing, distributing, and/or transporting Nitrogen Materials in a manner that would cause injury to Plaintiff, the public health, and the environment.

75.     Defendants, and each of them, negligently, carelessly, and/or recklessly manufactured, formulated, mixed, packaged, handled, stored, distributed, and/or transported Nitrogen Materials and, thereby, breached their duty to use reasonable care to prevent harm to property, the public health and the environment, by spilling, leaking, discharging, disposing of

and/or otherwise releasing Nitrogen Materials into or onto land in the vicinity of Plaintiff's Well 26, thus causing the nitrate contamination of Plaintiff's Well 26 and water supply.  In light of the special hazards and environmental risks associated with the handling and release of Nitrogen Materials, Defendants were engaged in extremely dangerous activities where the risk of harm was so great that their failure to use extreme caution, in addition to their failure to use reasonable care, constitutes a breach of their aforementioned duties.

76.     At all times relevant herein, the contamination of Plaintiff's Well 26 and the groundwater supply on which it relies was a foreseeable consequence of Defendants' acts and omissions, because, among other things, Defendants, and each of them, knew or should have known that: (i) spilling, leaking, discharging, disposing of and/or otherwise releasing Nitrogen Materials into or onto land and/or temporarily ponded surface water creates a risk of nitrate groundwater contamination; (ii) a public drinking water supply well was and is located in the immediate vicinity of the CPS Facility and groundwater underlying the CPS Facility was and is being used as a source of public water supply; and (iii) nitrate contamination of a public water supply can render such water supply unfit and/or unusable for human consumption, pose an acute threat to public health and, especially, to babies and pregnant women, and burden public water suppliers and their ratepayers with significant remedial costs.

77.     Despite Defendants' knowledge of the threat posed by nitrate contamination, Defendants, and each of them, negligently, carelessly, and/or recklessly manufactured, formulated, mixed, packaged, handled, stored, distributed, and/or transported Nitrogen Materials, and, in doing so, breached their duty to use reasonable care, by, among other things:

      a)     Failing to adequately control, manage, and/or maintain their operations, facilities, and/or transportation infrastructure so as to avoid spilling, leaking, discharging, disposing of and/or otherwise releasing Nitrogen Materials into or onto land in the vicinity of Plaintiff's Well 26.

      b)     Failing to take the necessary precautionary measures and/or make the necessary improvements and/or alterations to their operations, facilities,

1    and/or transportation infrastructure to avoid and/or mitigate against spills,

2    leaks, discharges, disposals, and/or releases of Nitrogen Materials into or

3    onto land in the vicinity of Plaintiff's Well 26.

4         c)    Failing to take measures to investigate (the source and extent of), remove,

5    and/or remediate contamination caused by Nitrogen Materials spilled,

6    leaked, discharged, disposed of and/or otherwise released by Defendants

7    into or onto land in the vicinity of Plaintiff's Well 26.

8         d)    Failing to notify Plaintiff and the proper regulatory authorities when CPS

9    became aware that the CPS Facility was contaminated by nitrate, despite

10    the obvious and immediate threat that contamination posed and still poses

11    to Plaintiff, public health, and the environment.

12        78.    As a direct and proximate result of Defendants' negligent acts and omissions as

13    alleged herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and continue

14    to be, contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing

15    significant injury and damage to property in which Plaintiff has a possessory interest.  As a direct

16    and proximate result of such injury and damage to Plaintiff's property, Plaintiff has suffered, and

17    will continue to suffer, substantial damages, including but not limited to past, current and future

18    costs and expenses associated with the loss of use, restoration, repair, remediation, and/or

19    replacement of the damaged property, as alleged herein, in an amount to be proved at trial.

20    Defendants, and each of them, are jointly and severally liable for all such damages, and Plaintiff

21    is entitled to recover all such damages in this action.

22        79.    Defendant CPS committed the above-described acts and omissions knowingly,

23    willfully, and with oppression, fraud, and/or malice.  Such acts and omissions include, but are

24    not limited to, the following.  In February 2010, CPS confirmed the presence of extensive nitrate

25    contamination in soil and surface water at the CPS Facility, in close proximity to Plaintiff's Well

26    26, a public water supply well.  Despite also knowing, as of at least February 2010, that nitrate in

27    drinking water can pose an acute threat to public health and, especially, the health of babies and

28

pregnant women, CPS: (i) failed to take action to remove or otherwise remediate the nitrate contamination at its CPS Facility until January 2012 and, therefore, knowingly and willfully permitted nitrate to leach unabated for 23 months from soil and surface water at its CPS Facility into groundwater and contaminate the water pumped by Plaintiff's Well 26; (ii) failed to notify Plaintiff and the proper regulatory authorities, in violation of State law, when it first became aware that the CPS Facility was contaminated by extremely high levels of nitrate, despite the obvious threat the contamination posed to waters of the State of California and, in particular, water pumped by Well 26; and (iii) attempted to benefit from its failure to report the nitrate contamination at its CPS Facility to Plaintiff and the authorities by destroying, spoiling, covering up, and/or altering evidence at the CPS Facility relevant to the cause, nature, extent, and/or duration of the nitrate contamination that it has caused and continues to cause.  Such conduct is reprehensible, despicable, and was performed to maximize profits and avoid the attendant costs and reputational damage associated with causing environmental contamination, in conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon public health, the environment, and property, including the water pumped by Plaintiff's Well 26.  Therefore, Plaintiff requests an award of exemplary damages in an amount that is sufficient to punish Defendant CPS and that fairly reflects the aggravating circumstances alleged herein.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

## SECOND CAUSE OF ACTION
### (Negligence *Per Se* Against All Defendants)

80.    Plaintiff realleges and incorporates herein by reference the allegations contained in each of the preceding paragraphs.

81.    Defendants, and each of them, had a duty to comply with, and to refrain from violating, statutes and regulations governing the spillage, leakage, discharge, disposal and/or release of Nitrogen Materials.  Defendants, and each of them, violated applicable statutes and regulations and, thereby, failed to exercise reasonable care.

82.     Defendants, and each of them, negligently, carelessly, and/or recklessly manufactured, formulated, mixed, packaged, handled, stored, distributed, and/or transported Nitrogen Materials and, in the process of so doing, spilled, leaked, discharged, disposed of and/or otherwise released Nitrogen Materials into or onto land in the vicinity of Plaintiff's Well 26, thus causing the nitrate contamination alleged herein.

83.     Defendants' negligent, careless, and/or reckless acts and omissions, which directly and proximately caused the nitrate contamination of Plaintiff's Well 26 and water supply, constitute violations of State statutes and regulations – including but not limited to California Water Code §§ 13260, 13264, and 13350; California Health & Safety Code § 5411; and California Fish & Game Code § 5650 – which set a standard of care or conduct to protect public health and the environment.

84.     Defendants, and each of them, failed to report to the proper authorities their known spills, leaks, discharges, disposals and/or releases of waste and/or hazardous substances that resulted in nitrate contamination, which posed a clear, obvious, known, and direct threat to waters of the State of California and, in particular, Plaintiff's Well 26, in violation of State statutes and regulations, including but not limited to the following: California Water Code §§ 13260, 13264, and 13271; and California Health & Safety Code § 5411.5.  Defendants' failure to comply with these statutes directly and proximately caused and/or contributed to the nitrate contamination of Plaintiff's Well 26 and water supply.

85.     Based on Defendants' aforementioned statutory and regulatory violations, Defendants' acts and omissions, as alleged herein, constitute negligence *per se*.  Plaintiff's investigation and discovery are not yet complete and, therefore, Plaintiff will seek leave of Court to amend the complaint to allege additional violations or, in the alternative, to give notice to Defendants of any additional statutory violations, when determined.

86.     As a direct and proximate result of Defendants' acts and omissions, as alleged herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and continue to be, contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing

significant injury and damage to property in which Plaintiff has a possessory interest.  As a direct and proximate result of such injury and damage to Plaintiff's property, Plaintiff has suffered, and will continue to suffer, substantial damages, including but not limited to past, current and future costs and expenses associated with the loss of use, restoration, repair, remediation, and/or replacement of the damaged property, as alleged herein, in an amount to be proved at trial. Defendants, and each of them, are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages in this action.

87.    The damage resulting from Defendants' statutory and regulatory violations is of the type the statutes and regulations were designed to prevent.  Plaintiff is and has been a member of a class of persons intended to be protected under said statutes and regulations.

88.    For the reasons set forth and specifically alleged in paragraph 79, Plaintiff is entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish CPS and that fairly reflects the aggravating circumstances alleged herein.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

## THIRD CAUSE OF ACTION
### (Continuing Private Nuisance Against All Defendants)

89.    Plaintiff realleges and incorporates herein by reference the allegations contained in each of the preceding paragraphs.

90.    Plaintiff is the owner of land, easements and water rights which permit it to extract groundwater for use in its Water System, including the groundwater it extracts from Well 26.

91.    The negligent, reckless, intentional and/or ultrahazardous acts and omissions of Defendants, and each of them, as alleged herein, have resulted in the continuing contamination of Plaintiff's Well 26 and the groundwater that supplies it by nitrate, and constitutes a nuisance under California Civil Code §§ 3479 and 3481.  Each such Defendant has caused, maintained, assisted and/or participated in such nuisance, and is a substantial contributor to such nuisance.

92.    Defendants have caused and/or permitted the nuisance to Plaintiff's Well 26 and water supply as a result of unnecessary, unreasonable, and injurious methods of manufacturing,

1    formulating, mixing, packaging, handling, storing, distributing, and/or transporting Nitrogen

2    Materials at, to, or from the CPS Facility, or otherwise in close proximity to Plaintiff's Well 26.

3           93.    The nuisance caused, contributed to, maintained, assisted in and/or participated in

4    by Defendants, and each of them, has caused substantial injury to Plaintiff's Well 26 and the

5    groundwater that supplies it, in which Plaintiff has a significant, possessory property interest.

6    The nuisance alleged herein has and continues to substantially and unreasonably interfere with,

7    obstruct, and/or disturb Plaintiff's right to extract, use, and enjoy groundwater from its Well 26.

8           94.    Plaintiff did not consent to Defendants' acts and omissions, as alleged herein,

9    which constitute a nuisance.

10          95.    An ordinary person would be reasonably annoyed and/or disturbed if, as has

11   happened to Plaintiff, Defendants' acts and omissions caused his/her/its drinking water supply to

12   become contaminated to the point where it could no longer be used.

13          96.    The contamination of Plaintiff's Well 26 and water supply, as alleged herein, has

14   varied over time and has not yet ceased.  Nitrate continues to migrate into and enter Plaintiff's

15   Well 26 and water supply.  The contamination alleged herein is reasonably abatable.

16          97.    In creating the nuisance alleged herein, Defendants, and each of them, acted with

17   full knowledge of the consequences and damages that would foreseeably be caused by their acts

18   and omissions.

19          98.    As a direct and proximate result of Defendants' acts and omissions as alleged

20   herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and continue to be,

21   contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing

22   significant injury and damage to property in which Plaintiff has a possessory interest.  As a direct

23   and proximate result of such injury and damage to Plaintiff's property, Plaintiff has suffered, and

24   will continue to suffer, substantial damages, including but not limited to past, current and future

25   costs and expenses associated with the loss of use, restoration, repair, remediation, and/or

26   replacement of the damaged property, as alleged herein, in an amount to be proved at trial.

27

28

Defendants, and each of them, are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages in this action.

99.    Unless Defendants, and each of them, abate the nuisance that they have caused, through their acts and omissions, Plaintiff will continue to incur harm related to the ongoing nitrate contamination of Plaintiff's Well 26 and water supply.

100.    For the reasons set forth and specifically alleged in paragraph 79, Plaintiff is entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish CPS and that fairly reflects the aggravating circumstances alleged herein.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

## FOURTH CAUSE OF ACTION
### (Continuing Public Nuisance Against All Defendants)

101.    Plaintiff realleges and incorporates herein by reference the allegations contained in each of the preceding paragraphs.

102.    Plaintiff is the owner of land, easements, and water rights which permit it to extract groundwater for use in its Water System, including Well 26.

103.    The negligent, reckless, intentional, and/or ultrahazardous acts and omissions of Defendants, and each of them, as alleged herein, have resulted in the continuing contamination of Plaintiff's Well 26 and the groundwater that supplies it by nitrate, and constitutes a nuisance under California Civil Code §§ 3479, 3480, and 3493.  Each such Defendant has caused, maintained, assisted and/or participated in such nuisance, and is a substantial contributor to such nuisance.

104.    Defendants have caused and/or permitted the nuisance to Plaintiff's Well 26 and water supply as a result of unnecessary, unreasonable, and injurious methods of manufacturing, formulating, mixing, packaging, handling, storing, distributing, and/or transporting Nitrogen Materials at, to, or from the CPS Facility, or otherwise in close proximity to Plaintiff's Well 26.

105.    The nuisance caused, contributed to, maintained, assisted in and/or participated in by Defendants, and each of them, affects at the same time an entire community and/or a considerable number of persons, in that, among other things, (i) the nuisance perpetrated by

1   Defendants has caused harm to waters of the State of California, which are a quintessential

2   public resource; and (ii) Defendants' pollution has fouled a source of public drinking water used

3   by as many as 26,000 people with harmful levels of a toxic compound, and thus created a

4   significant risk to public health.

5        106.    The nuisance caused, contributed to, maintained, assisted in and/or participated in

6   by Defendants, and each of them, is especially injurious to Plaintiff, who has suffered harm that

7   is different from the type of harm suffered by others, as the nuisance has contaminated Plaintiff's

8   Well 26 and water supply, in which Plaintiff has a significant, possessory property interest.  The

9   nuisance alleged herein has and continues to substantially and unreasonably interfere with,

10  obstruct and/or disturb Plaintiff's right to extract, use and enjoy groundwater from Well 26.

11       107.    Plaintiff did not consent to Defendants' acts and omissions, as alleged herein,

12  which constitute a nuisance.

13       108.    An ordinary person would be reasonably annoyed and/or disturbed if, as has

14  happened to Plaintiff, Defendants' acts and omissions caused his/her/its drinking water supply to

15  become contaminated to the point where it could no longer be used.

16       109.    The contamination of Plaintiff's Well 26 and water supply, as alleged herein, has

17  varied over time and has not yet ceased.  Nitrate continues to migrate into and enter Plaintiff's

18  Well 26 and water supply.  The contamination alleged herein is reasonably abatable.

19       110.    In creating the nuisance alleged herein, Defendants, and each of them, acted with

20  full knowledge of the consequences and damages that would foreseeably be caused by their acts

21  and omissions.

22       111.    As a direct and proximate result of Defendants' acts and omissions as alleged

23  herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and continue to be,

24  contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing

25  significant injury and damage to property in which Plaintiff has a possessory interest.  As a direct

26  and proximate result of such injury and damage to Plaintiff's property, Plaintiff has suffered, and

27  will continue to suffer, substantial damages, including but not limited to past, current and future

28

1   costs and expenses associated with the loss of use, restoration, repair, remediation, and/or

2   replacement of the damaged property, as alleged herein, in an amount to be proved at trial.

3   Defendants, and each of them, are jointly and severally liable for all such damages, and Plaintiff

4   is entitled to recover all such damages in this action.

5          112.    Unless Defendants, and each of them, abate the nuisance that they have caused,

6   through their acts and omissions, Plaintiff will continue to incur harm related to the ongoing

7   nitrate contamination of Plaintiff's Well 26 and water supply.

8          113.    For the reasons set forth and specifically alleged in paragraph 79, Plaintiff is

9   entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish

10   CPS and that fairly reflects the aggravating circumstances alleged herein.

11          WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

12                              **FIFTH CAUSE OF ACTION**
13                **(Continuing Private Nuisance *Per Se* Against All Defendants)**

14          114.    Plaintiff realleges and incorporates herein by reference the allegations contained

15   in each of the preceding paragraphs.

16          115.    Plaintiff is the owner of land, easements and water rights which permit it to

17   extract groundwater for use in its Water System, including Well 26.

18          116.    The negligent, reckless, intentional and/or ultrahazardous acts and omissions of

19   Defendants, and each of them, as alleged herein, have resulted in the continuing contamination

20   of Plaintiff's Well 26 and the groundwater that supplies it by nitrate, and constitutes a nuisance

21   pursuant to State statutes and regulations – including but not limited to California Water Code §

22   13050(m) and California Health & Safety Code § 5410(f) – which set a standard of care or

23   conduct to protect public health and the environment.  Each Defendant has caused, maintained,

24   assisted and/or participated in the aforementioned nuisance *per se*, and is a substantial

25   contributor to such nuisance.

26          117.    Based on Defendants' aforementioned statutory and regulatory violations,

27   Defendants' acts and omissions, as alleged herein, constitute nuisance *per se*.  Plaintiff's

28   investigation and discovery are not yet complete and, therefore, Plaintiff will seek leave of Court

1   to amend the complaint to allege additional violations or, in the alternative, to give notice to

2   Defendants of any additional statutory violations, when determined.

3       118.    The damage resulting from Defendants' statutory and regulatory violations is of

4   the type the statutes and regulations were designed to prevent.  Plaintiff is and has been a

5   member of a class of persons intended to be protected under said statutes and regulations.

6       119.    The nuisance *per se* caused, contributed to, maintained, assisted in and/or

7   participated in by Defendants, and each of them, has caused substantial injury to Plaintiff's Well

8   26 and the groundwater that supplies it, in which Plaintiff has a significant, possessory property

9   interest.  The nuisance *per se* alleged herein has and continues to substantially and unreasonably

10  interfere with, obstruct, and/or disturb Plaintiff's right to extract, use, and enjoy groundwater

11  from its Well 26.   Plaintiff is specially and adversely affected by the nuisance.

12      120.    Plaintiff did not consent to Defendants' acts and omissions, as alleged herein,

13  which constitute a nuisance *per se*.

14      121.    The contamination of Plaintiff's Well 26 and water supply, as alleged herein, has

15  varied over time and has not yet ceased.  Nitrate continues to migrate into and enter Plaintiff's

16  Well 26 and water supply.  The contamination alleged herein is reasonably abatable.

17      122.    In creating the nuisance *per se* alleged herein, Defendants, and each of them,

18  acted with full knowledge of the consequences and damages that would foreseeably be caused by

19  their acts and omissions.

20      123.    As a direct and proximate result of Defendants' acts and omissions as alleged

21  herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and continue to be,

22  contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing

23  significant injury and damage to property in which Plaintiff has a possessory interest.  As a direct

24  and proximate result of such injury and damage to Plaintiff's property, Plaintiff has suffered, and

25  will continue to suffer, substantial damages, including but not limited to past, current and future

26  costs and expenses associated with the loss of use, restoration, repair, remediation, and/or

27  replacement of the damaged property, as alleged herein, in an amount to be proved at trial.

28

1    Defendants, and each of them, are jointly and severally liable for all such damages, and Plaintiff

2    is entitled to recover all such damages in this action.

3          124.    Unless Defendants, and each of them, abate the nuisance *per se* that they have

4    caused, through their acts and omissions, Plaintiff will continue to incur harm related to the

5    ongoing nitrate contamination of Plaintiff's Well 26 and water supply.

6          125.    For the reasons set forth and specifically alleged in paragraph 79, Plaintiff is

7    entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish

8    CPS and that fairly reflects the aggravating circumstances alleged herein.

9          WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

## SIXTH CAUSE OF ACTION
### (Continuing Public Nuisance *Per Se* Against All Defendants)

12         126.    Plaintiff realleges and incorporates herein by reference the allegations contained

13   in each of the preceding paragraphs.

14         127.    Plaintiff is the owner of land, easements and water rights which permit it to

15   extract groundwater for use in its Water System, including Well 26.

16         128.    The negligent, reckless, intentional and/or ultrahazardous acts and omissions of

17   Defendants, and each of them, as alleged herein, have resulted in the continuing contamination

18   of Plaintiff's Well 26 and the groundwater that supplies it by nitrate, and constitutes a nuisance

19   pursuant to State statutes and regulations – including but not limited to California Water Code §

20   13050(m) and California Health & Safety Code § 5410(f) – which set a standard of care or

21   conduct to protect public health and the environment.  Each Defendant has caused, maintained,

22   assisted and/or participated in the aforementioned nuisance *per se*, and is a substantial

23   contributor to such nuisance.

24         129.    Based on Defendants' aforementioned statutory and regulatory violations,

25   Defendants' acts and omissions, as alleged herein, constitute nuisance *per se*.  Plaintiff's

26   investigation and discovery are not yet complete and, therefore, Plaintiff will seek leave of Court

27   to amend the complaint to allege additional violations or, in the alternative, to give notice to

28   Defendants of any additional statutory violations, when determined.

130.     The damage resulting from Defendants' statutory and regulatory violations is of the type the statutes and regulations were designed to prevent.  Plaintiff is and has been a member of a class of persons intended to be protected under said statutes and regulations.

131.     The nuisance *per se* caused, contributed to, maintained, assisted in and/or participated in by Defendants, and each of them, affects at the same time an entire community and/or a considerable number of persons, in that, among other things, (i) the nuisance perpetrated by Defendants has caused harm to waters of the State of California, which are a quintessential public resource; and (ii) Defendants' pollution has fouled a source of public drinking water used by as many as 26,000 people with harmful levels of a toxic compound, and thus created a significant risk to public health.

132.     The nuisance *per se* caused, contributed to, maintained, assisted in and/or participated in by Defendants, and each of them, is especially injurious to Plaintiff, who has suffered harm that is different from the type of harm suffered by others, as the nuisance has contaminated Plaintiff's Well 26 and the groundwater that supplies it, in which Plaintiff has a significant, possessory property interest.  The nuisance *per se* alleged herein has and continues to substantially and unreasonably interfere with, obstruct and/or disturb Plaintiff's right to extract, use and enjoy groundwater from Well 26.

133.     Plaintiff did not consent to Defendants' acts and omissions, as alleged herein, which constitute a nuisance *per se*.

134.     The contamination of Plaintiff's Well 26 and water supply, as alleged herein, has varied over time and has not yet ceased.  Nitrate continues to migrate into and enter Plaintiff's Well 26 and water supply.  The contamination alleged herein is reasonably abatable.

135.     In creating the nuisance *per se* alleged herein, Defendants, and each of them, acted with full knowledge of the consequences and damages that would foreseeably be caused by their acts and omissions.

136.     As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and continue to be,

contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing significant injury and damage to property in which Plaintiff has a possessory interest. As a direct and proximate result of such injury and damage to Plaintiff's property, Plaintiff has suffered, and will continue to suffer, substantial damages, including but not limited to past, current and future costs and expenses associated with the loss of use, restoration, repair, remediation, and/or replacement of the damaged property, as alleged herein, in an amount to be proved at trial. Defendants, and each of them, are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages in this action.

137.    Unless Defendants, and each of them, abate the nuisance *per se* that they have caused, through their acts and omissions, Plaintiff will continue to incur harm related to the ongoing nitrate contamination of Plaintiff's Well 26 and water supply.

138.    For the reasons set forth and specifically alleged in paragraph 79, Plaintiff is entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish CPS and that fairly reflects the aggravating circumstances alleged herein.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

## SEVENTH CAUSE OF ACTION
### (Continuing Trespass Against All Defendants)

139.    Plaintiff realleges and incorporates herein by reference the allegations contained in each of the preceding paragraphs.

140.    Plaintiff is the owner and actual possessor of its Water System, which includes drinking water production wells, including Plaintiff's Well 26. Plaintiff owns, possesses and actively exercises rights to extract and use groundwater drawn from Well 26.

141.    Defendants, and each of them, negligently, recklessly and/or intentionally failed to properly manufacture, formulate, mix, package, handle, store, distribute, and/or transport Nitrogen Materials, such that they proximately caused nitrate to enter, invade, intrude upon, and injure Plaintiff's possession of property, by contaminating Plaintiff's Well 26 and water supply.

142.    Plaintiff has not consented to, and does not consent to, the contamination alleged herein.  Defendants, and each of them, knew or reasonably should have known that Plaintiff would not consent to this trespass.

143.    The trespass caused, contributed to, maintained, assisted in and/or participated in by Defendants, and each of them, has caused substantial injury to Plaintiff's Well 26 and the groundwater that supplies it, in which Plaintiff has a significant, possessory property interest. The trespass alleged herein constitutes a physical invasion of Plaintiff's property and has and continues to substantially and unreasonably interfere with, obstruct and/or disturb Plaintiff's property interest in the groundwater drawn by Well 26.

144.    The contamination of Plaintiff's Well 26 and water supply, as alleged herein, has varied over time and has not yet ceased.  Nitrate continues to migrate into and enter Plaintiff's Well 26 and water supply.  The contamination alleged herein is reasonably abatable.

145.    In creating the trespass alleged herein, Defendants, and each of them, acted with full knowledge of the consequences and damages that would foreseeably be caused by their acts and omissions.

146.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and continue to be, contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing significant injury and damage to property in which Plaintiff has a possessory interest.  As a direct and proximate result of such injury and damage to Plaintiff's property, Plaintiff has suffered, and will continue to suffer, substantial damages, including but not limited to past, current and future costs and expenses associated with the loss of use, restoration, repair, remediation, and/or replacement of the damaged property, as alleged herein, in an amount to be proved at trial. Defendants, and each of them, are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages in this action.

147.    Unless Defendants, and each of them, abate the trespass that they have caused, through their acts and omissions, Plaintiff will continue to incur harm related to the ongoing nitrate contamination of Plaintiff's Well 26 and water supply.

148.    Due to Defendants' trespass, as alleged herein, Plaintiff is entitled to damages pursuant to California Civil Code § 3334, which include the value of the use of the property at issue for the duration of the wrongful occupation, the reasonable cost of repair or restoration of the property to its original condition, and the costs, if any, of recovering the possession.

149.    For the reasons set forth and specifically alleged in paragraph 79, Plaintiff is entitled to an award of exemplary damages against Defendants that is sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

## EIGHTH CAUSE OF ACTION
### (Permanent Private Nuisance Against All Defendants)

150.    Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 88 above.

151.    Plaintiff is the owner of land, easements and water rights which permit it to extract groundwater for use in its Water System, including Well 26.

152.    The negligent, reckless, intentional and/or ultrahazardous acts and omissions of Defendants, and each of them, as alleged herein, have resulted in the permanent contamination of Plaintiff's Well 26 and the groundwater that supplies it by nitrate, and constitutes a nuisance under California Civil Code §§ 3479 and 3481.  Each such Defendant has caused, maintained, assisted and/or participated in such nuisance, and is a substantial contributor to such nuisance.

153.    Defendants have caused and/or permitted the nuisance to Plaintiff's Well 26 and water supply as a result of unnecessary, unreasonable, and injurious methods of manufacturing, formulating, mixing, packaging, handling, storing, distributing, and/or transporting Nitrogen Materials at, to, or from the CPS Facility, or otherwise in close proximity to Plaintiff's Well 26.

154.    The nuisance caused, contributed to, maintained, assisted in and/or participated in by Defendants, and each of them, has caused substantial injury to Plaintiff's Well 26 and the

1  groundwater that supplies it, in which Plaintiff has a significant, possessory property interest.

2  The nuisance alleged herein has and will permanently, substantially and unreasonably interfere

3  with, obstruct, and/or disturb Plaintiff's right to extract, use, and enjoy groundwater from its

4  Well 26.

5      155.   Plaintiff did not consent to Defendants' acts and omissions, as alleged herein,

6  which constitute a nuisance.

7      156.   An ordinary person would be reasonably annoyed and/or disturbed if, as has

8  happened to Plaintiff, Defendants' acts and omissions caused his/her/its drinking water supply to

9  become contaminated to the point where it could no longer be used.

10     157.   The contamination of Plaintiff's Well 26 and water supply, as alleged herein, is

11 not capable of being reasonably abated.  Defendants have not and cannot provide assurances of

12 abatement of the nitrate contamination of Plaintiff's Well 26 and water supply or that the past,

13 present, or future harm to Plaintiff, caused by their acts and omissions, can or will be abated.

14     158.   In creating the nuisance alleged herein, Defendants, and each of them, acted with

15 full knowledge of the consequences and damages that would foreseeably be caused by their acts

16 and omissions.

17     159.   As a direct and proximate result of Defendants' acts and omissions as alleged

18 herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and are permanently,

19 contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing

20 significant injury and damage to property in which Plaintiff has a possessory interest.  As a direct

21 and proximate result of such permanent injury and damage to Plaintiff's property, Plaintiff has

22 suffered, and will continue to suffer, substantial damages, including but not limited to past,

23 current and future costs and expenses associated with the loss of use and replacement of the

24 damaged property, as alleged herein, in an amount to be proved at trial.  Defendants, and each of

25 them, are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all

26 such damages in this action.

27

28

160.     For the reasons set forth and specifically alleged in paragraph 79, Plaintiff is entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish CPS and that fairly reflects the aggravating circumstances alleged herein.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter

## NINTH CAUSE OF ACTION
### (Permanent Public Nuisance Against All Defendants)

161.     Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 88 and 150 through 160 above.

162.     Plaintiff is the owner of land, easements and water rights which permit it to extract groundwater for use in its Water System, including Well 26.

163.     The negligent, reckless, intentional and/or ultrahazardous acts and omissions of Defendants, and each of them, as alleged herein, have resulted in the permanent contamination of Plaintiff's Well 26 and the groundwater that supplies it by nitrate, and constitutes a nuisance under California Civil Code §§ 3479, 3480, and 3493.  Each such Defendant has caused, maintained, assisted and/or participated in such nuisance, and is a substantial contributor to such nuisance.

164.     Defendants have caused and/or permitted the nuisance to Plaintiff's Well 26 and water supply as a result of unnecessary, unreasonable, and injurious methods of manufacturing, formulating, mixing, packaging, handling, storing, distributing, and/or transporting Nitrogen Materials at, to, or from the CPS Facility, or otherwise in close proximity to Plaintiff's Well 26.

165.     The nuisance caused, contributed to, maintained, assisted in and/or participated in by Defendants, and each of them, affects at the same time an entire community and/or a considerable number of persons, in that, among other things, (i) the nuisance perpetrated by Defendants has caused harm to waters of the State of California, which are a quintessential public resource; and (ii) Defendants' pollution has fouled a source of public drinking water used by as many as 26,000 people with harmful levels of a toxic compound, and thus created a significant risk to public health.

166.   The nuisance caused, contributed to, maintained, assisted in and/or participated in by Defendants, and each of them, is especially injurious to Plaintiff, who has suffered harm that is different from the type of harm suffered by others, as the nuisance has contaminated Plaintiff's Well 26 and the groundwater that supplies it, in which Plaintiff has a significant, possessory property interest.  The nuisance alleged herein has and will permanently, substantially and unreasonably interfere with, obstruct and/or disturb Plaintiff's right to extract, use and enjoy groundwater from Well 26.

167.   Plaintiff did not consent to Defendants' acts and omissions, as alleged herein, which constitute a nuisance.

168.   An ordinary person would be reasonably annoyed and/or disturbed if, as has happened to Plaintiff, Defendants' acts and omissions caused his/her/its drinking water supply to become contaminated to the point where it could no longer be used.

169.   The contamination of Plaintiff's Well 26 and water supply, as alleged herein, is not capable of being reasonably abated.  Defendants have not and cannot provide assurances of abatement of the nitrate contamination of Plaintiff's Well 26 and water supply or that the past, present, or future harm to Plaintiff, caused by their acts and omissions, can or will be abated.

170.   In creating the nuisance alleged herein, Defendants, and each of them, acted with full knowledge of the consequences and damages that would foreseeably be caused by their acts and omissions.

171.   As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and will permanently be, contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing significant injury and damage to property in which Plaintiff has a possessory interest.  As a direct and proximate result of such permanent injury and damage to Plaintiff's property, Plaintiff has suffered, and will continue to suffer, substantial damages, including but not limited to past, current and future costs and expenses associated with the loss of use and replacement of the damaged property, as alleged herein, in an amount to be proved at trial.  Defendants, and each of

them, are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages in this action.

172.    For the reasons set forth and specifically alleged in paragraph 79, Plaintiff is entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish CPS and that fairly reflects the aggravating circumstances alleged herein.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

## TENTH CAUSE OF ACTION
### (Permanent Private Nuisance *Per Se* Against All Defendants)

173.    Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 88 and 150 through 172 above.

174.    Plaintiff is the owner of land, easements and water rights which permit it to extract groundwater for use in its Water System, including Well 26.

175.    The negligent, reckless, intentional and/or ultrahazardous acts and omissions of Defendants, and each of them, as alleged herein, have resulted in the permanent contamination of Plaintiff's Well 26 and the groundwater that supplies it by nitrate, and constitutes a nuisance pursuant to State statutes and regulations – including but not limited to California Water Code § 13050(m) and California Health & Safety Code § 5410(f) – which set a standard of care or conduct to protect public health and the environment.  Each Defendant has caused, maintained, assisted and/or participated in the aforementioned nuisance *per se*, and is a substantial contributor to such nuisance.

176.    Based on Defendants' aforementioned statutory and regulatory violations, Defendants' acts and omissions, as alleged herein, constitute nuisance *per se*.  Plaintiff's investigation and discovery are not yet complete and, therefore, Plaintiff will seek leave of Court to amend the complaint to allege additional violations or, in the alternative, to give notice to Defendants of any additional statutory violations, when determined.

177.    The damage resulting from Defendants' statutory and regulatory violations is of the type the statutes and regulations were designed to prevent.  Plaintiff is and has been a member of a class of persons intended to be protected under said statutes and regulations.

178.    The nuisance *per se* caused, contributed to, maintained, assisted in and/or participated in by Defendants, and each of them, has caused substantial injury to Plaintiff's Well 26 and the groundwater that supplies it, in which Plaintiff has a significant, possessory property interest.  The nuisance *per se* alleged herein has and will permanently, substantially and unreasonably interfere with, obstruct and/or disturb Plaintiff's right to extract, use and enjoy groundwater from Well 26.

179.    Plaintiff did not consent to Defendants' acts and omissions, as alleged herein, which constitute a nuisance *per se*.

180.    The contamination of Plaintiff's Well 26 and water supply, as alleged herein, is not capable of being reasonably abated.  Defendants have not and cannot provide assurances of abatement of the nitrate contamination of Plaintiff's Well 26 and water supply or that the past, present, or future harm to Plaintiff, caused by their acts and omissions, can or will be abated.

181.    In creating the nuisance *per se* alleged herein, Defendants, and each of them, acted with full knowledge of the consequences and damages that would foreseeably be caused by their acts and omissions.

182.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and will permanently be, contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing significant injury and damage to property in which Plaintiff has a possessory interest.  As a direct and proximate result of such permanent injury and damage to Plaintiff's property, Plaintiff has suffered, and will continue to suffer, substantial damages, including but not limited to past, current and future costs and expenses associated with the loss of use and replacement of the damaged property, as alleged herein, in an amount to be proved at trial.  Defendants, and each of them, are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages in this action.

183.    For the reasons set forth and specifically alleged in paragraph 79, Plaintiff is entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish CPS and that fairly reflects the aggravating circumstances alleged herein.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

## ELEVENTH CAUSE OF ACTION
### (Permanent Public Nuisance *Per Se* Against All Defendants)

184.    Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 88 and 150 through 183 above.

185.    Plaintiff is the owner of land, easements and water rights which permit it to extract groundwater for use in its Water System, including Well 26.

186.    The negligent, reckless, intentional and/or ultrahazardous acts and omissions of Defendants, and each of them, as alleged herein, have resulted in the permanent contamination of Plaintiff's Well 26 and the groundwater that supplies it by nitrate, and constitutes a nuisance pursuant to State statutes and regulations – including but not limited to California Water Code § 13050(m) and California Health & Safety Code § 5410(f) – which set a standard of care or conduct to protect public health and the environment.  Each Defendant has caused, maintained, assisted and/or participated in the aforementioned nuisance *per se*, and is a substantial contributor to such nuisance.

187.    Based on Defendants' aforementioned statutory and regulatory violations, Defendants' acts and omissions, as alleged herein, constitute nuisance *per se*.  Plaintiff's investigation and discovery are not yet complete and, therefore, Plaintiff will seek leave of Court to amend the complaint to allege additional violations or, in the alternative, to give notice to Defendants of any additional statutory violations, when determined.

188.    The damage resulting from Defendants' statutory and regulatory violations is of the type the statutes and regulations were designed to prevent.  Plaintiff is and has been a member of a class of persons intended to be protected under said statutes and regulations.

189.    The nuisance *per se* caused, contributed to, maintained, assisted in and/or participated in by Defendants, and each of them, affects at the same time an entire community

and/or a considerable number of persons, in that, among other things, (i) the nuisance perpetrated by Defendants has caused harm to waters of the State of California, which are a quintessential public resource; and (ii) Defendants' pollution has fouled a source of public drinking water used by as many as 26,000 people with harmful levels of a toxic compound, and thus created a significant risk to public health.

190.   The nuisance *per se* caused, contributed to, maintained, assisted in and/or participated in by Defendants, and each of them, is especially injurious to Plaintiff, who has suffered harm that is different from the type of harm suffered by others, as the nuisance has contaminated Plaintiff's Well 26 and the groundwater that supplies it, in which Plaintiff has a significant, possessory property interest.  The nuisance *per se* alleged herein has and will permanently, substantially and unreasonably interfere with, obstruct and/or disturb Plaintiff's right to extract, use and enjoy groundwater from Well 26.

191.   Plaintiff did not consent to Defendants' acts and omissions, as alleged herein, which constitute a nuisance *per se*.

192.   The contamination of Plaintiff's Well 26 and water supply, as alleged herein, is not capable of being reasonably abated.  Defendants have not and cannot provide assurances of abatement of the nitrate contamination of Plaintiff's Well 26 and water supply or that the past, present, or future harm to Plaintiff, caused by their acts and omissions, can or will be abated.

193.   In creating the nuisance *per se* alleged herein, Defendants, and each of them, acted with full knowledge of the consequences and damages that would foreseeably be caused by their acts and omissions.

194.   As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and will permanently be, contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing significant injury and damage to property in which Plaintiff has a possessory interest.  As a direct and proximate result of such permanent injury and damage to Plaintiff's property, Plaintiff has suffered, and will continue to suffer, substantial damages, including but not limited to past,

current and future costs and expenses associated with the loss of use and replacement of the damaged property, as alleged herein, in an amount to be proved at trial.  Defendants, and each of them, are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages in this action.

195.    For the reasons set forth and specifically alleged in paragraph 79, Plaintiff is entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish CPS and that fairly reflects the aggravating circumstances alleged herein.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

## TWELFTH CAUSE OF ACTION
### (Permanent Trespass Against All Defendants)

196.    Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 88 and 150 through 195 above.

197.    Plaintiff is the owner and actual possessor of its Water System, which includes drinking water production wells, including Plaintiff's Well 26.  Plaintiff owns, possesses and actively exercises rights to extract and use groundwater drawn from Well 26.

198.    Defendants, and each of them, negligently, recklessly and/or intentionally failed to properly manufacture, formulate, mix, package, handle, store, distribute, and/or transport Nitrogen Materials, such that they proximately caused nitrate to enter, invade, intrude upon and injure Plaintiff's possession of property, by contaminating Plaintiff's Well 26 and water supply.

199.    Plaintiff has not consented to, and does not consent to, the contamination alleged herein.  Defendants, and each of them, knew or reasonably should have known that Plaintiff would not consent to this trespass.

200.    The trespass caused, contributed to, maintained, assisted in and/or participated in by Defendants, and each of them, has caused substantial injury to Plaintiff's Well 26 and the groundwater that supplies it, in which Plaintiff has a significant, possessory property interest.  The trespass alleged herein constitutes a physical invasion of Plaintiff's property and has and will permanently, substantially and unreasonably interfere with, obstruct and/or disturb Plaintiff's property interest in the groundwater drawn by Well 26.

201.    The contamination of Plaintiff's Well 26 and water supply, as alleged herein, is not capable of being reasonably abated.  Defendants have not and cannot provide assurances of abatement of the nitrate contamination of Plaintiff's Well 26 and water supply or that the past, present, or future harm to Plaintiff, caused by their acts and omissions, can or will be abated.

202.    In creating the trespass alleged herein, Defendants, and each of them, acted with full knowledge of the consequences and damages that would foreseeably be caused by their acts and omissions.

203.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff's Well 26 and the groundwater that supplies it have been, and will permanently be, contaminated with nitrate, causing physical damage to Plaintiff's water supply and causing significant injury and damage to property in which Plaintiff has a possessory interest.  As a direct and proximate result of such permanent injury and damage to Plaintiff's property, Plaintiff has suffered, and will continue to suffer, substantial damages, including but not limited to past, current and future costs and expenses associated with the loss of use and replacement of the damaged property, as alleged herein, in an amount to be proved at trial.  Defendants, and each of them, are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages in this action.

204.    Due to Defendants' trespass, as alleged herein, Plaintiff is entitled to damages pursuant to California Civil Code § 3334, which include the value of the use of the property at issue for the duration of the wrongful occupation.

205.    For the reasons set forth and specifically alleged in paragraph 79, Plaintiff is entitled to an award of exemplary damages against Defendant CPS that is sufficient to punish CPS and that fairly reflects the aggravating circumstances alleged herein.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

### THIRTEENTH CAUSE OF ACTION
**(Declaratory Relief Against All Defendants)**

206.    Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 149 above.

207.    An actual controversy has arisen and now exists between Plaintiff and Defendants concerning the parties' respective obligations and liabilities arising from the presence of nitrate contamination in Plaintiff's Well 26 and water supply and the attendant hazards posed thereby to the public and environment.  Plaintiff contends and Defendants deny that Defendants have obligations and potential obligations under law for:

a)    the costs that will be incurred for future investigation, characterization, treatment, removal, replacement and/or remediation activities; and

b)    such other and further costs and liabilities as hereafter arise from the presence  of nitrate contamination in Plaintiff's Well 26 and water supply.

208.    Unless a judicial declaration is issued, setting forth the parties' rights and obligations with respect to the costs, damages, and liabilities identified above, a multiplicity of actions will result.  Plaintiff therefore requests a judicial determination of the rights, duties, and obligations of the parties with respect to the costs, damages, duty to defend, and liabilities identified above.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

### FOURTEENTH CAUSE OF ACTION
**(Preliminary and Permanent Injunction and
Abatement of Nuisance Against All Defendants)**

209.    Plaintiff realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 149 and 206 through 208 above.

210.    To date, the Nitrogen Materials that Defendants spilled, leaked, discharged, disposed of and/or otherwise released at the CPS facility and/or otherwise in the immediate vicinity of Well 26, which have caused the nitrate contamination alleged herein, have not been

removed or the property at issue remediated, and the nuisance has not been abated by the Defendants.

211.    Plaintiff is informed and believes, and based thereon alleges, that Defendants, and each of them, will not abate such nuisance unless affirmatively required to do so by an order of this Court requiring such abatement or by preliminary or permanent injunction herein.

212.    Unless Defendants, and each of them, are so ordered by this Court, nitrate that Defendants released into the subsurface will continue to leach into the aquifer that supplies Plaintiff's Well 26 for years and/or decades to come, substantially increasing Plaintiff's long-term treatment costs and other damages.

213.    Plaintiff has no plain, speedy, or adequate remedy at law, and injunctive relief is expressly authorized by Code of Civil Procedure §§ 526 and 731.  Accordingly, Plaintiff requests that the Court issue an injunction directing Defendants, and each of them, to abate the nuisance that they have caused, as alleged herein.

WHEREFORE, Plaintiff prays judgment against Defendants as set forth hereafter.

## FIFTEENTH CAUSE OF ACTION
**(Unlawful Business Practices Pursuant to Business & Professions Code §§ 17200 et seq.)**

214.    Plaintiff realleges and incorporates herein by reference the allegations contained in each of the preceding paragraphs.

215.    Plaintiff has standing to pursue this claim because Plaintiff has suffered injury in fact and has suffered damage to its property as a result of Defendants' unlawful business practices.

216.    By spilling, leaking, discharging, disposing of, and/or otherwise releasing Nitrogen Materials into or onto land in the vicinity of Plaintiff's Well 26, and/or failing to properly report such spills, leaks, discharges, disposals, and/or releases of Nitrogen Materials, Defendants, and each of them, violated California statutes and regulations, including but not limited to the following: California Water Code §§ 13050(m), 13260, 13264, 13271, and 13350; California Health & Safety Code §§ 5410(f), 5411, and 5411.5; and California Fish & Game Code § 5650.  All such violations have occurred in connection with and/or as a result of the

1   Defendants' normal business activities, rendering them unlawful business practices within the

2   meaning of California's Unfair Competition Laws, pursuant to California Business &

3   Professions Code §§ 17200 et seq.

4          217.    As a direct, proximate, and foreseeable result of Defendants' wrongful conduct, as

5   alleged herein, Defendants' business acts, omissions, and/or practices have caused injury to

6   Plaintiff and the public, and Plaintiff is entitled to relief.

7          218.    As a result of the violation by the Defendants, and each of them, of California's

8   Unfair Competition Laws, Plaintiff is entitled to injunctive relief: (i) directing Defendants to

9   fully comply with applicable California statutes and regulations relating to Defendants' unlawful

10  and improper spillage, leakage, discharge, disposal and/or release of Nitrogen Materials into or

11  onto land in the vicinity of Plaintiff's Well 26, and Defendants' attendant unlawful and improper

12  failure to report such releases; and/or (ii) enjoining similar future unlawful acts, omissions,

13  and/or practices by Defendants, as alleged herein.

14                                    **PRAYER FOR RELIEF**

15         WHEREFORE, Plaintiff respectfully requests a trial of this Action before a jury, and that,

16  upon a favorable verdict, this Court enter judgment in favor of Plaintiff and against Defendants,

17  jointly and severally, as follows:

18         a.      An award of compensatory and consequential damages, according to proof;

19         b.      An award of damages pursuant to California Civil Code § 3334, according to

20                 proof;

21         c.      An award of the necessary costs heretofore incurred, and that will be reasonably

22                 incurred in the future, by Plaintiff in responding to the nitrate contamination

23                 alleged herein, according to proof.

24         d.      An award of exemplary damages in an amount sufficient to punish Defendant

25                 CPS and to deter it from ever committing the same or similar acts;

26         e.      An order awarding Plaintiff the declaratory relief requested herein;

27

28

1    f.    An order awarding Plaintiff the preliminary and/or permanent injunctive relief

2          requested herein;

3    g.    An order awarding Plaintiff its costs in prosecuting this action;

4    h.    An order awarding Plaintiff its reasonable attorneys' fees in prosecuting this

5          action, according to proof, including but not limited to attorneys fees pursuant to

6          California Code  of Civil Procedure § 1021.5;

7    i.    An order awarding Plaintiff prejudgment interest to the full extent permitted by

8          law;

9    j.    An order permitting the Court to retain jurisdiction over this action after entry of

10         the requested equitable relief for the purpose of granting further relief as may be

11         necessary and/or proper to effectuate the will of the Court; and

12   k.    Such other and further relief as the Court may deem just and proper.

13

14   DATED:   August 18, 2014                    ROBINS BORGHEI LLP

15

16                                   By:    /s/ *Jed J. Borghei*
                                            TODD E. ROBINS

17                                          JED J. BORGHEI
                                            GENEVIEVE M. COYLE

18                                          Attorneys for Plaintiff,

19                                          OILDALE MUTUAL WATER COMPANY

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

Case:        *Oildale Mutual Water Company v. Crop Production Services, Inc., et al.*

Court:        United States District Court, Eastern District of California, Fresno Division

Case No.:        1:13-cv-02054-AWI-JLT

### FIRST AMENDED COMPLAINT FOR DAMAGES, EQUITABLE, AND OTHER RELIEF

I, Genevieve M. Coyle, hereby declare as follows:

1.        I am employed in the County of San Francisco, California.  I am over the age of 18 years and am not a party to this cause.  I am an associate with Robins Borghei LLP; my business address is 649 Mission Street, Suite 500, San Francisco, CA 94105.

2.        On the date listed below, I served the foregoing document(s), by the method indicated below on all current parties to this action:

**X  Electronic Service:**        By electronically filing the document via the CM/ECF system, which thereby constitutes automatic electronic service on all counsel of record.  Electronic service is complete at the time of transmission.

3.        I am a member of the bar of this Court.

4.        I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.  Executed on August 18, 2014, at San Francisco, California.


                                                    */s/ Genevieve M. Coyle*
                                                    Genevieve M. Coyle